**No. 13-4170**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

**UNITED STATES OF AMERICA,**
*Plaintiff/Appellee*

**v.**

**JAMES ROBERT COBLER,**
*Defendant/Appellant*

————————

On Appeal from the United States District Court
for the Western District of Virginia
Harrisonburg Division (Hon. Michael F. Urbanski)

————————

JOINT APPENDIX
VOLUME I of II
Pages 1-215

————————

TIMOTHY J. HEAPHY
United States Attorney
   for the Western District of Virginia

JEAN HUDSON
United States Attorney's Office
255 West Main Street
Charlottesville, Virginia 22902
(434) 293-4283
*Counsel for Appellee*

LARRY W. SHELTON
Federal Public Defender
   for the Western District of Virginia

CHRISTINE MADELEINE LEE
Research and Writing Attorney
Office of the Federal Public Defender
   for the Western District of Virginia
210 First Street, SW, Suite 400
Roanoke, Virginia 24011
(540) 777-0880
*Counsel for Appellant*

<u>TABLE OF CONTENTS</u>

VOLUME  I of II

<u>Appendix Page</u>

Docket Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Indictment
     entered June 21, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  09

Transcript of Guilty Plea Hearing
     held October 29, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Statement of Facts
     filed October 29, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

Guilty Plea Form
     entered October 29, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  45

Report and Recommendations on Plea of Guilty
     entered December 4, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46

Motion to Seal Defendant's Sentencing Memorandum
     filed January 30, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  58

Sentencing Memorandum by Government
     filed January 30, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  61

Supplemental Sentencing Memorandum by Government
     filed February 11, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  85

Transcript of Sentencing Hearing
     held February 14, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  98

Judgment
     entered February 25, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  199

Amended Judgment
     entered June 7, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  207

Notice of Appeal
        Filed March 4, 2013  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 215

## VOLUME II - SEALED

Letter from Dr. Caryn Morse
        dated January 22, 2013  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 216

Presentence  Investigation Report
        revised January 28, 2013  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 217

Victim Impact Statements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 237

Sealed Defendents Sentencing Memorandum
        filed January 30, 2013  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 260

Letter from Robert Lancaster
        dated February 7, 2013  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 274

Statement of Reasons
        entered February 25, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 276

Statement of Reasons
        entered June 7, 2013  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 281

CLOSED,APPEAL,FORFEITURE

# U.S. District Court
# Western District of Virginia (Harrisonburg)
## CRIMINAL DOCKET FOR CASE #: 5:12-cr-00026-MFU-JGW-1

Case title: USA v. Cobler                          Date Filed: 06/21/2012
Magistrate judge case number: 5:12-mj-00043-BWC     Date Terminated: 02/25/2013

Assigned to: District Judge Michael F.
Urbanski
Referred to: Magistrate Judge James G.
Welsh

Appeals court case number: 13-4170
4th Circuit

**Defendant (1)**

**James Robert Cobler**              represented by  **Joel Christopher Hoppe**
*TERMINATED: 02/25/2013*                            Federal Public Defenders Office
                                                    Suite 106
                                                    401 E Market Street
                                                    Charlottesville, VA 22902
                                                    434-220-3380
                                                    Fax: 434-220-3390
                                                    Email: joel_hoppe@fd.org
                                                    *TERMINATED: 06/07/2013*
                                                    *ATTORNEY TO BE NOTICED*
                                                    *Designation: Public Defender or*
                                                    *Community Defender Appointment*

**Pending Counts**                                  **Disposition**

18:2251.F SEXUAL EXPLOITATION              CBOP 360 months on counts 1-3 to run
OF CHILDREN 18:2251(a) and (e) -           consecutively; S/R life on all counts to
Production of Child Pornography (5/12)     run concurrently; S/A $100 per count
(1-3)

18:2252A.F ACTIVITIES RE
MATERIAL
CONSTITUTING/CONTAINING                    CBOP 240 months to run
CHILD PORNO 18:2252(a)(1) & (b)(1)         consecutively; S/R life on all counts to
- Transportation of Child Pornography      run concurrently; S/A $100 per count
(4/12)
(4)

18:2252A.F ACTIVITIES RE
MATERIAL
CONSTITUTING/CONTAINING                    CBOP 120 months to run

**1**

USCA4 Appeal: 13-4170      Doc: 22        Filed: 07/30/2013      Pg: 5 of 218

| | |
|---|---|
| CHILD PORNO 18:2252(a)(4)(B) & (b)(2) - Possession of Child Pornography (5/3/12) (5) | consecutively; S/R life on all counts to run concurrently; S/A $100 per count |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 18:2252.F - SEXUAL EXPLOITATION OF MINORS - 18:2252(a)and 2251(e); 18:2252A(a)(1) and 2252A(b)(1)-(5/2012) | |

---

| **Plaintiff** | | |
|---|---|---|
| **USA** | represented by | **Lea Ashley Shannon Wright** United States Attorneys Office Western District of Virginia 116 N. Main Street, Room 130 Harrisonburg, VA 22802 540-432-6636 Fax: 540-433-9296 *ATTORNEY TO BE NOTICED* |
| | | **Nancy Spodick Healey** United States Attorneys Office Room 104 255 West Main Street Charlottesville, VA 22902 434-293-4283 Fax: 293-4910 Email: nancy.healey@usdoj.gov *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 05/30/2012 | 1 | COMPLAINT as to James Robert Cobler (1). (Attachments: # 1 Affidavit) (jat) [5:12-mj-00043-BWC] (Entered: 05/31/2012) |

**2**

| | | |
|---|---|---|
| 05/31/2012 | 3 | NOTICE OF HEARING as to James Robert Cobler (custody) Initial Appearance set for 6/5/2012 11:15 AM in Harrisonburg before Magistrate Judge B. Waugh Crigler.(jat) [5:12-mj-00043-BWC] |
| 06/04/2012 | 4 | NOTICE OF ATTORNEY APPEARANCE Lea Ashley Shannon Wright appearing for USA. (Wright, Lea Ashley) [5:12-mj-00043-BWC] |
| 06/05/2012 | 5 | ORAL ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to James Robert Cobler. Entered by Magistrate Judge B. Waugh Crigler on 6/5/2012. (mab) [5:12-mj-00043-BWC] |
| 06/05/2012 | 6 | Minute Entry for proceedings held before Magistrate Judge B. Waugh Crigler:Initial Appearance as to James Robert Cobler held on 6/5/2012, Preliminary Hearing as to James Robert Cobler held on 6/5/2012, Bond Hearing as to James Robert Cobler held on 6/5/2012 (Court Reporter FTR, M. Bottiglieri) (mab) [5:12-mj-00043-BWC] |
| 06/05/2012 | 7 | ORDER OF DETENTION PENDING TRIAL as to James Robert Cobler. Signed by Magistrate Judge B. Waugh Crigler on 6/5/2012. (mab) [5:12-mj-00043-BWC] |
| 06/05/2012 | 8 | Oral Order Finding Probable Cause as to James Robert Cobler. Entered by Magistrate Judge B. Waugh Crigler on 6/5/2012. (mab) [5:12-mj-00043-BWC] |
| 06/08/2012 | 9 | MOTION for Reconsideration re 7 Order of Detention Pending Trial *(Motion for U.S. District Court to Review Detention Order)* by James Robert Cobler. (Hoppe, Joel) [5:12-mj-00043-BWC] |
| 06/11/2012 | 10 | NOTICE OF HEARING ON MOTION in case as to James Robert Cobler (custody) 9 MOTION for Reconsideration re 7 Order of Detention Pending Trial *(Motion for U.S. District Court to Review Detention Order)* : Motion Hearing set for 6/14/2012 09:00 AM in Harrisonburg before District Judge Michael F. Urbanski.(jat) [5:12-mj-00043-BWC] |
| 06/12/2012 | 11 | Copy request/CD of FTR tape by USA as to James Robert Cobler for proceedings held on June 5, 2012 reported by Court Reporter Bottiglieri before Judge Crigler. (Healey, Nancy) (Main Document 11 replaced on 6/14/2012) (slt). Modified on 6/14/2012 (slt). [5:12-mj-00043-BWC] |
| 06/13/2012 | 12 | First Motion for Detention *in Support of Affirming Detention Decision of June 5, 2012* by USA as to James Robert Cobler. Responses due by 6/28/2012 (Healey, Nancy) [5:12-mj-00043-BWC] |
| 06/14/2012 | 13 | Minute Order for proceedings held before District Judge Michael F. Urbanski: denying 9 Motion for Reconsideration as to James Robert Cobler (1); granting 12 Motion for Detention as to James Robert Cobler (1); Motion Hearing as to James Robert Cobler held on 6/14/2012 (Motion for U.S. District Court to Review Detention Order) filed by James Robert Cobler. Defendant remanded to USM custody. (Court Reporter Sonia Ferris.) (jat) [5:12-mj-00043-BWC] |
| 06/14/2012 | | Notice of Correction: Document 14 was deleted due to Deputy Clerk incorrectly advising attorney to refile Document 12 as a Response in Support. Judge Urbanski construed Document 12 as a Motion and ruled on it at a hearing held this date. (ham) [5:12-mj-00043-BWC] |

**3**

| | | |
|---|---|---|
| 06/21/2012 | 15 | INDICTMENT as to James Robert Cobler (1) count(s) 1-3, 4, 5. (kld) (Entered: 06/22/2012) |
| 06/22/2012 | 17 | NOTICE OF HEARING as to James Robert Cobler (custody) Arraignment set for 6/28/2012 01:00 PM in Harrisonburg before Magistrate Judge James G. Welsh.(kld) |
| 06/22/2012 | 18 | PRETRIAL ORDER as to James Robert Cobler. Signed by District Judge Michael F. Urbanski on 6/22/12. (kld) |
| 06/28/2012 | 19 | Minute Entry for proceedings held before Magistrate Judge James G. Welsh:Arraignment as to James Robert Cobler (1) Count 1-3,4,5 held on 6/28/2012, Bond Hearing as to James Robert Cobler held on 6/28/2012. Dft remanded to USM custody. (Court Reporter Karen Dotson, FTR) (kld) (Entered: 06/29/2012) |
| 06/28/2012 | 21 | ORDER OF DETENTION PENDING TRIAL as to James Robert Cobler. Signed by Magistrate Judge James G. Welsh on 6/28/12. (kld) (Entered: 06/29/2012) |
| 06/29/2012 | 20 | NOTICE OF HEARING as to James Robert Cobler (custody) Jury Trial set for 8/27/2012 09:30 AM in Harrisonburg before District Judge Michael F. Urbanski.(kld) |
| 07/12/2012 | 22 | Joint Discovery & Inspection Order Filed as to James Robert Cobler. Signed by District Judge Michael F. Urbanski on 7/12/12. (kld) |
| 08/13/2012 | 23 | First MOTION to Continue-Ends of Justice for Jury Trial by James Robert Cobler. (Attachments: # 1 Text of Proposed Order)(Hoppe, Joel) |
| 08/14/2012 | 24 | ORDER granting 23 Motion to Continue-Ends of Justice as to James Robert Cobler (1). Signed by District Judge Michael F. Urbanski on 8/13/2012. (jat) |
| 08/14/2012 | 25 | Notice Rescheduling Hearing as to James Robert Cobler (custody) previously set for 8/27/2012 at 9:30 a.m. before Judge Urbanski in Harrisonburg: Jury Trial reset for 9/24/2012 09:30 AM in Harrisonburg before District Judge Michael F. Urbanski.(jat) |
| 09/07/2012 | 26 | Second MOTION to Continue-Ends of Justice for Jury Trial by James Robert Cobler. (Attachments: # 1 Text of Proposed Order)(Hoppe, Joel) |
| 09/10/2012 | 27 | ORDER granting 26 Motion to Continue-Ends of Justice as to James Robert Cobler (1). Signed by District Judge Michael F. Urbanski on 9/7/2012. (jat) |
| 09/10/2012 | 28 | Notice Rescheduling Hearing as to James Robert Cobler (custody) previously set for 9/24/2012 at 9:30 a.m. before Judge Urbanski in Harrisonburg: Jury Trial reset for 12/3/2012 - 12/5/2012 09:30 AM in Harrisonburg before District Judge Michael F. Urbanski.(jat) |
| 09/26/2012 | 29 | Arrest Warrant Returned Executed on 9/26/2012 in case as to James Robert Cobler. (mab) |
| 10/25/2012 | 30 | ORDER REFERRING CASE to Magistrate Judge James G. Welsh for gulity plea hearing as to James Robert Cobler. Signed by District Judge Michael F. Urbanski on 10/25/12. (kld) |

**4**

| 10/25/2012 | 31 | Notice Rescheduling Hearing as to James Robert Cobler (custody) previously set for jury trial 12/3/12-12/5/2012 at 9:30 AM before Judge Urbanski in H'burg: Change of Plea Hearing set for 10/29/2012 01:30 PM in Harrisonburg before Magistrate Judge James G. Welsh.(kld) |
| 10/29/2012 | 33 | Minute Entry for proceedings held before Magistrate Judge James G. Welsh:Guilty Plea Hearing as to James Robert Cobler held on 10/29/2012 Plea entered by James Robert Cobler (1) Guilty Count 1-3,4,5. Dft remanded to USM custody. (Court Reporter Carol Jacobs, OCR) (kld) (Entered: 10/30/2012) |
| 10/29/2012 | 34 | WAIVER of Rule 11 Hearing by James Robert Cobler (kld) (Entered: 10/30/2012) |
| 10/29/2012 | 35 | Guilty Plea Form as to James Robert Cobler. (kld) (Entered: 10/30/2012) |
| 10/29/2012 | 36 | Factual Basis - Proffer filed by USA as to James Robert Cobler. (kld) (Entered: 10/30/2012) |
| 10/30/2012 | 37 | NOTICE OF HEARING as to James Robert Cobler (custody) Sentencing set for 2/6/2013 11:30 AM in Harrisonburg before District Judge Michael F. Urbanski.(kld) |
| 10/30/2012 | 38 | Judge Urbanski Sentencing Scheduling Order as to James Robert Cobler. Responses due by 1/30/2013. Signed by District Judge Michael F. Urbanski on 10/30/12. (kld) |
| 11/01/2012 |  | Notice of Appearance - Probation Officer: Mike Sheffield as to James Robert Cobler (ch) |
| 12/04/2012 | 39 | REPORT AND RECOMMENDATIONS on Plea of Guilty as to James Robert Cobler. Objections to R&R due by 12/21/2012. Signed by Magistrate Judge James G. Welsh on 12/4/12. (kld) |
| 01/04/2013 | 40 | ORDER amended report to reflect sentencing date of 2/6/2013; taking under advisement 39 Report and Recommendations on Plea of Guilty as to James Robert Cobler (1). Signed by District Judge Michael F. Urbanski on 1/4/2013. (jat) (Entered: 01/07/2013) |
| 01/30/2013 | 41 | MOTION to Seal *Defendant's Sentencing Memorandum* by James Robert Cobler. (Attachments: # 1 Text of Proposed Order)(Hoppe, Joel) |
| 01/30/2013 | 42 | SENTENCING MEMORANDUM by USA as to James Robert Cobler (Healey, Nancy) |
| 01/30/2013 | 44 | ORDER granting 41 Motion to Seal Sentencing Memorandum as to James Robert Cobler (1). Signed by District Judge Michael F. Urbanski on 1/30/13. (kld) (Entered: 01/31/2013) |
| 01/31/2013 | 43 | MOTION to Seal by USA as to James Robert Cobler. (Attachments: # 1 Text of Proposed Order)(Healey, Nancy) |
| 01/31/2013 | 46 | ORDER granting 43 Motion to Seal Transcript of Interview as to James Robert Cobler (1). Signed by District Judge Michael F. Urbanski on 1/31/13. (kld) |

**5**

USCA4 Appeal: 13-4170    Doc: 22      Filed: 07/30/2013      Pg: 9 of 218

| | | |
|---|---|---|
| 01/31/2013 | 47 | Sealed Document - Transcript of Interview with James Robert Cobler; pursuant to 46 Order granting 43 Motion to seal (mab) Modified on 2/1/2013-corrected text and document number (mab). (Entered: 02/01/2013) |
| 02/05/2013 | 48 | Notice Rescheduling Hearing as to James Robert Cobler (custody) previously set for 2/6/2013 at 11:30 a.m. before Judge Urbanski in Harrisonburg: Sentencing reset for 2/14/2013 10:30 AM in Harrisonburg before District Judge Michael F. Urbanski.(jat) |
| 02/11/2013 | 49 | SENTENCING MEMORANDUM by USA as to James Robert Cobler (Healey, Nancy) |
| 02/14/2013 | 50 | ORAL MOTION for a Variance by James Robert Cobler. (jat) (Entered: 02/15/2013) |
| 02/14/2013 | 52 | Minute Order for proceedings held before District Judge Michael F. Urbanski: adopting re 39 Report and Recommendations on Plea of Guilty as to James Robert Cobler (1); denying 50 Motion for Downward Departure as to James Robert Cobler (1); Motion Hearing as to James Robert Cobler held on 2/14/2013 re 50 MOTION for Downward Departure filed by James Robert Cobler, Sentencing held on 2/14/2013 for James Robert Cobler (1), Count(s) 1-3, CBOP 360 months on counts 1-3 to run consecutively; S/R life on all counts to run concurrently; S/A $100 per count; Count(s) 4, CBOP 240 months to run consecutively; S/R life on all counts to run concurrently; S/A $100 per count; Count(s) 5, CBOP 120 months to run consecutively; S/R life on all counts to run concurrently; S/A $100 per count. Defendant remanded to USM custody. (Court Reporter Sonia Ferris.) (jat) (Entered: 02/19/2013) |
| 02/15/2013 | 51 | PRESENTENCE INVESTIGATION REPORT (Sealed) as to James Robert Cobler (ch) |
| 02/19/2013 | 54 | PRELIMINARY ORDER OF FORFEITURE OF PROPERTY as to James Robert Cobler. Signed by District Judge Michael F. Urbanski on 2/19/13. (kld) |
| 02/25/2013 | 56 | JUDGMENT as to James Robert Cobler (1), Count(s) 1-3, CBOP 360 months on counts 1-3 to run consecutively; S/R life on all counts to run concurrently; S/A $100 per count; Count(s) 4, CBOP 240 months to run consecutively; S/R life on all counts to run concurrently; S/A $100 per count; Count(s) 5, CBOP 120 months to run consecutively; S/R life on all counts to run concurrently; S/A $100 per count. Signed by District Judge Michael F. Urbanski on 2/25/2013. (jat) (Additional attachment(s) added on 2/28/2013: # 1 Forfeiture Order) (jat). (Entered: 02/26/2013) |
| 02/28/2013 | 58 | Notice of Correction re 56 Judgment - Forfeiture Order attached to docket entry. (jat) |
| 03/04/2013 | 59 | NOTICE OF APPEAL to 4CCA by James Robert Cobler re 56 Judgment,, (Hoppe, Joel) |
| 03/04/2013 | 60 | Transmittal of Notice of Appeal as to James Robert Cobler to 4CCA re 59 Notice of Appeal - Final Judgment to 4CCA<br>NOTE: The Docketing Statement, Transcript Order Form and CJA-24(s) forms (if you are court appointed counsel) are available on the 4th Circuit Court of |

| | | |
|---|---|---|
| | | Appeals website at www.ca4.uscourts.gov. If CJA24(s) are applicable, complete items 1-14, 18 for each court reporter from whom you wish to order a transcript, and file each one separately in this case with the event *Appeal Transcript - Proposed CJA 24*. The CJA-24 forms will then be processed by the U.S. District Court Clerk's Office. (kld) |
| 03/05/2013 | 61 | NOTICE of Docketing Record on Appeal from USCA as to James Robert Cobler re 59 Notice of Appeal - Final Judgment to 4CCA filed by James Robert Cobler. USCA Case Number 13-4170. Case manager: S. Wiley. (kld) (Entered: 03/06/2013) |
| 03/05/2013 | 62 | ORDER of USCA appointing FPD as to James Robert Cobler re 59 Notice of Appeal - Final Judgment to 4CCA (kld) (Entered: 03/06/2013) |
| 03/12/2013 | 63 | APPEAL TRANSCRIPT REQUEST by James Robert Cobler for proceedings held on 2/14/13 before Judge Urbanski, re 59 Notice of Appeal - Final Judgment to 4CCA. Transcript due by 4/18/2013. (kld) |
| 03/12/2013 | 64 | Appeal Remark re 59 Notice of Appeal - Final Judgment to 4CCA : (kld) |
| 03/12/2013 | 65 | APPEAL TRANSCRIPT REQUEST by James Robert Cobler for proceedings held on 10/29/12 before Judge Urbanski, re 59 Notice of Appeal - Final Judgment to 4CCA. Transcript due by 4/18/2013. (kld) |
| 03/12/2013 | 66 | Appeal Remark re 59 Notice of Appeal - Final Judgment to 4CCA : (kld) |
| 04/12/2013 | 67 | Appeal Transcript filed as to James Robert Cobler for Sentencing Hearing for dates of 02/14/2013 before Judge Michael F. Urbanski, re 59 Notice of Appeal - Final Judgment to 4CCA Court Reporter/Transcriber: Sonia Ferris, Telephone number SoniaF@vawd.uscourts.gov 434.296.9284 Ext. 4. **NOTICE RE REDACTION OF TRANCRIPTS:The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vawd.uscourts.gov** *Does this satisfy all appellate orders for this reporter? Yes* `<br><br>` **Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/3/2013. Redacted Transcript Deadline set for 5/13/2013. Release of Transcript Restriction set for 7/11/2013. (sf)** |
| 04/15/2013 | 68 | Appeal Transcript filed as to James Robert Cobler for Guilty Plea Hearing for dates of 10/29/2012 before Judge James G. Welsh, re 59 Notice of Appeal - Final Judgment to 4CCA Court Reporter/Transcriber: Carol Jacobs, Telephone number carolj@vawd.uscourts.gov. **NOTICE RE REDACTION OF TRANCRIPTS:The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vawd.uscourts.gov** *Does this satisfy all appellate orders for this reporter? Yes* `<br><br>` **Transcript may be viewed** |

7

| | | |
|---|---|---|
| | | at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/6/2013. Redacted Transcript Deadline set for 5/16/2013. Release of Transcript Restriction set for 7/15/2013. (cj) |
| 04/16/2013 | 69 | Transcript Redaction Request in case as to James Robert Cobler re 68 For Proceeding Held on 10/29/2012 filed by attorney Joel Christopher Hoppe Court Reporter/Transcriber: Carol Jacobs. (Hoppe, Joel) |
| 04/16/2013 | 70 | Appeal Transcript Redaction re 68 Appeal Transcript Filed,,,, in case as to James Robert Cobler <P>**Pursuant to Judicial Conference Policy, this transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber for 90 days from the filing of the original unredacted transcript. After that date (see 68 Appeal Transcript Filed,,,, ), the transcript may be obtained through PACER.</P>** (cj) |
| 06/06/2013 | 71 | ORDER that no restitution will be ordered in this case as to James Robert Cobler re 56 Judgment. Amended Judgment to follow. Signed by District Judge Michael F. Urbanski on 6/6/2013. (jat) |
| 06/07/2013 | 72 | AMENDED JUDGMENT as to James Robert Cobler (1), Count(s) 1-3, CBOP 360 months on counts 1-3 to run consecutively; S/R life on all counts to run concurrently; S/A $100 per count; Count(s) 4, CBOP 240 months to run consecutively; S/R life on all counts to run concurrently; S/A $100 per count; Count(s) 5, CBOP 120 months to run consecutively; S/R life on all counts to run concurrently; S/A $100 per count. (Amended for restitution). Signed by District Judge Michael F. Urbanski on 6/6/2013. (Attachments: # 1 Order of Forfeiture) (jat) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/19/2013 12:12:47 | | |
| **PACER Login:** | pd1100 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** | 5:12-cr-00026-MFU-JGW |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

FILED IN OPEN COURT
DATE ___ 6/21/12 ___
BY ___ K. Horn ___
DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT HARRISONBURG DIVISION, W.D. of VA
FOR THE
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG  DIVISION
JUNE 2012 SESSION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.: 5:12CR00026 |
| | : | |
| v. | : | In violation of: |
| | : | |
| JAMES ROBERT COBLER | : | 18 U.S.C. §§ 2251(a) and 2251(e) |
| | : | 18 U.S.C. §§ 2252(a)(1) and 2252(b)(1) |
| | : | 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2) |

**INDICTMENT**

**<u>Count One</u>**

The Grand Jury charges:

That between in or about September 2011 and in or about May 2012, the exact date being unknown to the Grand Jury, in the Western Judicial District of Virginia, the defendant, JAMES ROBERT COBLER, did employ, use, persuade, induce, entice, or coerce a minor boy, who was then approximately four years old, to engage in sexually explicit conduct, including oral-genital contact with the defendant and masturbation of the minor boy by the defendant, for the purpose of producing a visual depiction of such conduct, namely, a video, and such visual depiction was produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means.

In violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

2012R00315

## Count Two

The Grand Jury charges:

That between in or about September 2011 and in or about May 2012, the exact date being unknown to the Grand Jury, but on a separate occasion as that set forth in Counts One and Three, in the Western Judicial District of Virginia, the defendant, JAMES ROBERT COBLER, did employ, use, persuade, induce, entice, or coerce a minor boy, who was then approximately four years old, to engage in sexually explicit conduct, including oral-genital contact with the defendant, and the lascivious exhibition of the minor's genitals or pubic area, for the purpose of producing one or more visual depictions of such conduct, namely, one or more digital images, and such visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means.

In violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

## Count Three

The Grand Jury charges:

That between in or about September 2011 and in or about May 2012, the exact date being unknown to the Grand Jury, but on a separate occasion as that set forth in Counts One and Two above, in the Western Judicial District of Virginia, the defendant, JAMES ROBERT COBLER, did employ, use, persuade, induce, entice, or coerce a minor boy, who was then approximately four years old, to engage in sexually explicit conduct, including the lascivious exhibition of the minor's genitals or pubic area, for the purpose of producing one or more visual depictions of such conduct, namely, one or more digital images, and such visual depictions were produced using materials that had been

2012R00315

2

mailed, shipped, or transported in or affecting interstate or foreign commerce by any means.

In violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

## Count Four

The Grand Jury charges:

That on or about April 20, 2012, in the Western Judicial District of Virginia, JAMES ROBERT COBLER did knowingly transport, using any means or facility of interstate or foreign commerce, one or more visual depictions, namely digital images, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and the visual depiction(s) were of such conduct.

In violation of Title 18, United States Code, Sections 2252(a)(1) and 2252(b)(1).

## Count Five

That on or about May 3, 2012, in the Western Judicial District of Virginia, JAMES ROBERT COBLER, did knowingly possess at least one matter which contained a visual depiction that had been shipped or transported using any means or facility of interstate or foreign commerce, or that had been shipped or transported in or affecting interstate or foreign commerce, or that was produced using materials which had been mailed, or shipped or transported using any means or facility of interstate or foreign commerce, including by computer, and the production of such visual depiction

2012R00315

3

**11**

involved the use of a minor engaging in sexually explicit conduct, and such visual depiction was of such conduct.

In violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2).

## NOTICE OF FORFEITURE

1.      Upon conviction of one or more of the felony offenses alleged in this Indictment, the defendant shall forfeit to the United States:

a.  any visual depiction described in 18 U.S.C. §§ 2251, 2251A, or 2252, 2252A, 2252B or 2260, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of law, pursuant to 18 U.S.C. § 2253(a)(1).

b.  any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from said violation of law, pursuant to 18 U.S.C. § 2253(a)(2).

c.  any property, real or personal used or intended to be used to commit or to promote the commission of said violation of law, or any property traceable to such property, pursuant to 18 U.S.C. § 2253(a)(3).

2.      The property to be forfeited to the United States includes but is not limited to the following property:

a.      **Money Judgment**

An undetermined sum of United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate was obtained directly or indirectly as a result of said offenses or is traceable to such property.

2012R00315

4

    **b.**      **Computer and/or Electronic Equipment**

    (1)    Gateway, Computer (Tower), Serial Number: 0028367262.

    (2)    ASUS, Laptop Computer, Model: G73J, Serial Number: A8N0AS77609135C.

    (3)    Hewlett-Packard, Pavilion, Laptop Computer, Serial Number: CNF6464194.

    (4)    Compaq, Presario, Laptop Computer, Serial Number: CNF3430KLF.

    (5)    Acer, Aspire X1700, Computer (Tower), Serial Number: PTSBF0X019848047943000.

    (6)    SiPix, StyleCam Pro, 1.3 Mega Pixel, Digital Camera, Serial Number: 0211053875.

    **c.**  All such material containing the above-described visual depictions;

    3.      If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendant up to

the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

A TRUE BILL, this _21_ day of June, 2012.

_Janet M. Battaglia_
FOREPERSON

_Timothy J. Heaphy (n s to)_
TIMOTHY J. HEAPHY
UNITED STATES ATTORNEY

2012R00315

5

**13**

```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF VIRGINIA
 2                 HARRISONBURG DIVISION

 3   UNITED STATES OF AMERICA,

 4                     Plaintiff,
                                      No. 5:12-CR-26
 5        vs.                         Harrisonburg, Virginia
                                      October 29, 2012
 6   JAMES ROBERT COBLER,

 7                     Defendant.

 8           TRANSCRIPT OF GUILTY PLEA HEARING
             BEFORE THE HONORABLE JAMES G. WELSH
 9              UNITED STATES MAGISTRATE JUDGE.

10   APPEARANCES:

11   For the Government:

12   LEA ASHLEY SHANNON WRIGHT
     United States Attorneys Office
13   116 N. Main Street, Room 130
     Harrisonburg, VA 22802
14   540-432-6636

15


16   For the Defendant:

17   JOEL CHRISTOPHER HOPPE
     Federal Public Defenders Office
18   401 E. Market Street, Suite 106
     Charlottesville, VA 22902
19   434-220-3380

20

21   Court Reporter:    Carol Jacobs, Official Court Reporter
                         Registered Diplomate, Realtime Reporter
22                       U.S. District Court
                         1101 Court Street
23                       Lynchburg, VA 24504
                         434-847-5722, ext. 3
24
          Proceedings recorded by mechanical stenography;
25   computer-assisted transcription.
```

1          (Call to Order of the Court at 3:45 p.m.)

2              THE CLERK:  Criminal Action No. 5:12-CR-00026-1,

3    *United States of America versus James Robert Cobler.*

4              THE COURT:  All right.  Mr. Hoppe, as I understand

5    it, the defendant is here because he has decided to change

6    his plea to the charges against him in this matter?

7              MR. HOPPE:  That's correct, Judge.

8              THE COURT:  And this is -- this is a change of plea

9    straight up?  There's no plea agreement involved?

10             MR. HOPPE:  That's correct.

11             THE COURT:  All right.  Mr. Cobler -- is it

12   "Cobler" or "Cobbler"?

13             THE DEFENDANT:  It is supposed to be pronounced

14   "Cobler," but everybody says "Cobbler."

15             THE COURT:  I'll try to pronounce it correctly.

16             Mr. Cobler, before a person's plea of guilty to any

17   offense can be accepted in this court, there are a number of

18   questions I have to ask in order to be assured that your

19   plea is fully voluntarily and has been made with the advice

20   and assistance of counsel, in other words, knowingly made.

21             The answers to my questions must be truthful.

22   Therefore, they must be given under oath and they must be

23   subject to the penalties of perjury or false statement if

24   you don't answer me truthfully.  Understood?

25             THE DEFENDANT:  Uh-huh.

```
1               THE COURT:  Madam Clerk, administer the oath.
2               THE CLERK:  Please stand and raise your right hand.
3                 JAMES ROBERT COBLER, DEFENDANT, SWORN
4               THE CLERK:  Thank you.
5               THE COURT:  The -- if you have any questions about
6    -- if you don't understand any of my questions, ask me to
7    repeat it.  I'll be happy to do so, because it is very
8    important for you to understand my questions.
9               What is your full name?
10              THE DEFENDANT:  James Robert Cobler.
11              THE COURT:  Is your name in all respects correctly
12   spelled in the indictment?
13              THE DEFENDANT:  Yes.
14              THE COURT:  What is your date of birth?
15              THE DEFENDANT:  September 15th, 1984.
16              THE COURT:  How far did you go in school?
17              THE DEFENDANT:  All of the way to college.
18              THE COURT:  So high school plus?  Did you finish
19   college?
20              THE DEFENDANT:  Yeah, two years.
21              THE COURT:  Two years?
22              THE DEFENDANT:  Yeah.  It took me four years,
23   but --
24              THE COURT:  That's all right.
25              And you can read, write, and understand English; is
```

```
1    that correct?
2               THE DEFENDANT:  Yes.
3               THE COURT:  Do you understand that you are under
4    oath and obligated to answer my questions truthfully and
5    that if you give false information, you may be prosecuted
6    for perjury or false statement, and in any such prosecution
7    the government is entitled to use against you any statements
8    you've made under oath?
9               THE DEFENDANT:  Can you repeat that?
10              THE COURT:  Sure.
11              You understand your obligation to answer me
12   truthfully?
13              THE DEFENDANT:  Yes.
14              THE COURT:  And you understand that if you don't
15   answer me truthfully, the government can prosecute you for
16   that false statement?
17              THE DEFENDANT:  Yes.
18              THE COURT:  And in any type of prosecution for
19   false statement, the government can present against you the
20   false statement you made?
21              THE DEFENDANT:  Yes.
22              THE COURT:  All right.  That just helps to better
23   explain it, doesn't it?
24              THE DEFENDANT:  Yeah.
25              THE COURT:  Do you have any medical or physical
```

```
1    problem that would prevent you from understanding and

2    participating fully today?

3              THE DEFENDANT:  No.

4              THE COURT:  Are you under the influence of alcohol,

5    medicines, or drugs of any sort at this time?

6              THE DEFENDANT:  No.

7              THE COURT:  Are you using any drugs or medicines

8    that you think might impair your ability to understand me

9    and to participate fully?

10             THE DEFENDANT:  No.

11             THE COURT:  Is your mind clear?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand you are here today to

14   enter pleas of guilty to felony offenses to which you may

15   not later withdraw them?  In other words, if you enter a

16   plea of guilty today, you are stuck with it?

17             THE DEFENDANT:  Yes.

18             THE COURT:  You understand that?

19             Have you received a copy of the indictment in this

20   case?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Have you talked to your attorney about

23   it?

24             THE DEFENDANT:  Yeah.

25             THE COURT:  Have the charges been fully explained
```

1  to you?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Have you discussed with your attorney

4  any defenses you might have?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Have you had enough time to discuss the

7  charges and prepare any defenses you have?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Is it only after you consulted with

10  your attorney that you decided you wanted to change your

11  plea in this case?

12          THE DEFENDANT:  Repeat that again?

13          THE COURT:  Yeah.  Did you decide to change your

14  plea before or after you talked to your attorney?  In other

15  words, did you -- was it only after you discussed the

16  charges and the defenses with your attorney that you decided

17  that you wanted to plead guilty?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  Do you understand you have

20  the right to have today's hearing before a federal district

21  judge or you may waive that right and specifically agree to

22  have it heard by me, a United States magistrate judge?  Do

23  you want me to ask that question again?

24          THE DEFENDANT:  Yeah.

25          THE COURT:  Do you understand you have an absolute

```
 1   right to have this guilty plea heard before a judge who has
 2   got a lifetime appointment or you can agree to have it heard
 3   before me, a federal judge who doesn't have a lifetime
 4   appointment?
 5        (Off-the-record discussion between the defendant and
 6   defense counsel.)
 7             THE DEFENDANT:  Yeah, I agree.
 8             THE COURT:  In other words, under the Constitution
 9   you have got a right to have a federal charge heard -- this
10   proceeding heard by a judge who has got a lifetime
11   appointment or you can agree to say it is okay to let the
12   magistrate judge hear it today and send a report to the
13   district judge as to what your answers were.
14             THE DEFENDANT:  Yeah, I agree.
15             THE COURT:  You agree.  Okay.
16             Do we have that form?
17             MR. HOPPE:  No, Judge.
18             THE COURT:  We need that form.
19        (Off-the-record discussion between the defendant and
20   defense counsel.)
21        (Form executed.)
22             THE COURT:  All right.  I find the waiver form is
23   voluntarily executed, with the advice and assistance of
24   counsel.
25             Madam Clerk, please file it and make it part of the
```

```
 1   record.
 2           To this point are you satisfied with Mr. Hoppe's
 3   assistance?
 4           THE DEFENDANT:  Yes.
 5           THE COURT:  And it continues to be your intention
 6   to change your plea in this case?
 7           THE DEFENDANT:  Yes.
 8           THE COURT:  Mr. Cobler, the indictment against you
 9   charges you with five separate felony offenses.  And you
10   understand that you are proposing today to plead guilty to
11   all five of those offenses?
12           THE DEFENDANT:  Yes.
13           THE COURT:  Ms. Wright, is there any mandatory
14   minimum sentence with any of these charges?
15           MS. WRIGHT:  Your Honor, yes.  Counts One through
16   Three, it is 15 to 30 years, a $250,000 fine, supervised
17   release five to life, and possible restitution and
18   forfeiture.
19           THE COURT:  Let's go through -- let's go through
20   One through Three.  It is 15 to 30?
21           MS. WRIGHT:  Yes, Your Honor.  Counts One through
22   Three are all the same charges, the production charges.
23           THE COURT:  Start that -- run that one by me again.
24           MS. WRIGHT:  Counts One through Three are all the
25   same charges, just on different -- there's different
```

```
 1   temporal times.  But Counts One through Three are all the
 2   production charges.
 3              THE COURT:  And there's a minimum 15 years on each
 4   one of those?
 5              THE DEFENDANT:  Yes, Your Honor.
 6              THE COURT:  And it is a maximum of 30?
 7              THE DEFENDANT:  Yes, Your Honor.
 8              THE COURT:  And what is the monetary penalty
 9   potential?
10              MS. WRIGHT:  250,000.
11              THE COURT:  And then supervised release?
12              MS. WRIGHT:  Five to life, Your Honor.
13              THE COURT:  All right.  And Count Four and Five?
14              MS. WRIGHT:  Count Four is a transportation charge.
15   And that is five to 20; and that is $250,000; supervised
16   release, five to life; and then there's also, of course, the
17   possibility of the restitution and forfeiture with those
18   charges as well.
19              THE COURT:  And what about five?
20              MS. WRIGHT:  That is zero to ten years, Your Honor.
21              THE COURT:  250?
22              MS. WRIGHT:  Yes.
23              THE COURT:  Any explicit --
24              MS. WRIGHT:  Five to life for supervised release
25   -- for supervised release.
```

```
1              THE COURT:  All right.  Thank you.

2              MS. WRIGHT:  Uh-huh.

3              THE COURT:  Mr. Cobler, do you understand that by

4    pleading guilty to Count One of the indictment that you face

5    a minimum sentence of 15 years, with a maximum sentence of

6    30 years, plus a fine of up to $250,000, and subsequent

7    supervision for a minimum of five years up to the rest of

8    your life?  Do you understand -- and that means that if you

9    don't -- if you do anything you are not supposed to do

10   during that period of supervised release, you could be sent

11   back to prison for more time?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And do you understand the same

14   sentencing range is available to the Court; that is, minimum

15   of five -- a minimum of 15, maximum 30, in Count Two?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Likewise, do you understand that you

18   face a minimum of 15 to a maximum of 30, plus $250,000, plus

19   five to life supervision for Count Three?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And in Count Four you face a minimum

22   sentence of five years, to a maximum sentence of four years,

23   plus a $250,000 fine, and, once again, supervision from five

24   to the remainder of your life?

25             THE DEFENDANT:  Yes.
```

1          THE COURT:  And, lastly, under Count Five do you

2   understand you face a sentence of anything from zero to ten

3   years, a $250,000 fine, and supervised release for a period

4   of five years to life?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.

7          Is there any -- is he eligible for any safety valve

8   or any substantial assistance?

9          MS. WRIGHT:  Your Honor, I don't believe so.  I'm

10  sure that anything that -- like that might be addressed at

11  sentencing, if there is.  But I don't believe that safety

12  valve or -- I don't believe any sort of substantial

13  assistance has been discussed.

14         THE COURT:  Mr. Hoppe, do you think that the safety

15  valve provision would be operable under the facts of this

16  case, with your client's history?

17         MR. HOPPE:  No, Judge.  The safety valve just

18  applies to drug offenses.

19         THE COURT:  Okay.  All right.

20         All right.  You understand, Mr. Cobler, that you'll

21  be obligated to pay $500 -- a $500 special assessment in

22  this case; that is, a hundred dollars for each of the five

23  offenses for which you are proposing to plead guilty?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Have you any question in your mind

```
1   about what the range of punishment you face in this case if

2   you are convicted, including sentences, supervised release,

3   fines, special assessments -- any question in your mind

4   about any of those?

5               THE DEFENDANT:  No.

6               THE COURT:  If your pleas are accepted, Mr. Cobler,

7   you will be adjudicated a convicted felon; and you are

8   pleading guilty to all of the elements of each of those five

9   criminal charges; and that that adjudication of guilt may

10  deprive you of valuable civil rights, including the right to

11  vote, the right to hold public office, the right to serve on

12  a jury, and the right to possess a firearm; do you

13  understand that?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Have you talked with your attorney

16  about how the sentencing guidelines may apply in your case?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Do you understand that those guidelines

19  are no longer mandatory, but that the Court may apply them

20  in an advisory fashion in determining a reasonable sentence

21  in your case?

22              THE DEFENDANT:  Yes.

23              THE COURT:  Do you understand that it is within the

24  Court's discretion not to apply the guidelines and impose a

25  sentence that is higher -- either higher or lower than what
```

1   the guidelines call for?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Do you understand that the Court will

4   not be able to determine a guideline sentencing range for

5   advisory purposes in your case until a presentence report

6   has been prepared and you and the government have each had

7   an opportunity to challenge the facts reported by the

8   probation office?

9           THE DEFENDANT:  Yes.

10          THE COURT:  In determining your sentence,

11  Mr. Cobler, the Court will take into account a number of

12  factors, including the nature and circumstances of your

13  offenses, your criminal history and characteristics, any

14  objectives of sentencing established by Congress, the need

15  for any sentence to reflect the seriousness of your

16  offenses, the need to promote respect for the law, the need

17  to provide for just punishment, the need to afford adequate

18  deterrence, the need to -- any need you may have for

19  educational or vocational training or for medical care or

20  other correctional treatment in the most efficient manner,

21  the kinds of sentences that are available, the pertinent

22  sentencing guidelines and policy statements, the need to

23  avoid unwarranted sentencing disparities, and any need there

24  may be to provide for restitution; do you understand all of

25  that?

1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you also understand that the Court

3    may order you to make full restitution to any victim?

4              THE DEFENDANT:  What does that mean?

5              THE COURT:  That means if there's any victim in

6    this case who has been damaged or injured and has expenses

7    or costs, you may be ordered to make restitution to that

8    victim?

9              THE DEFENDANT:  Yes.

10             THE COURT:  All right.  Now, the indictment against

11   you has a forfeiture provision in it at page -- at pages

12   four and five.  Ms. Wright?

13             MS. WRIGHT:  Your Honor, I just wanted -- something

14   has come to our attention right before this.  In Section B

15   of the forfeiture, 2 B, six computer and/or electronic

16   equipment is listed.

17             THE COURT:  Uh-huh.

18             MS. WRIGHT:  Subject to a final, I think, I

19   believe, analysis, numbers two and five don't appear to have

20   any evidence of criminal behavior on those computer systems,

21   so it is our understanding right now that those computers

22   will probably be returned back to the defendant and we will

23   not be looking to forfeit those two particular items.

24             THE COURT:  All right.  Now, is the -- Mr. Hoppe,

25   is the defendant agreeing to the forfeiture?  Is that going

 1  to be a separate contested --

 2         MR. HOPPE:  Judge, I think that he's agreeing to

 3  forfeiture for all of the items except for two and five.

 4  And at this point we're saying there isn't a nexus between

 5  two and five --

 6         THE COURT:  And they are agreeing with you.

 7         MR. HOPPE:  Right.

 8         THE COURT:  Are you-all -- is there going to be a

 9  forfeiture order?

10         MS. WRIGHT:  Yes, Your Honor.  What we're going to

11  -- it is our understanding from the report that we have now,

12  the forensic examination, that there is no evidence of

13  criminal behavior.  We're going to verify that.  And then

14  the -- we'll prepare an order of forfeiture and work out any

15  final details with Mr. Hoppe, to make sure we're all on the

16  same page.

17         THE COURT:  All right.

18         Mr. Cobler, do you understand what your attorney

19  and the United States Attorney have just said about the

20  forfeiture, that you are agreeing to a forfeiture of all of

21  the items except for two items listed in the forfeiture

22  agreement?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  And you understand if the

25  government is seeking forfeiture, they are also entitled to

```
 1   seek forfeiture of substitute assets pursuant to 18 U.S.C.
 2   941 -- I'm sorry, 981?  Do you understand that?
 3             THE DEFENDANT:  Yes.
 4             THE COURT:  Do you understand by pleading guilty
 5   you are waiving up your right to have a jury determine
 6   beyond a reasonable doubt the facts alleged in each of those
 7   five counts?
 8             THE DEFENDANT:  Yes.
 9             THE COURT:  You need to know that by pleading
10   guilty you are surrendering a number of important
11   constitutional rights, including your right to persist in
12   your pleas of not guilty, your right to a speedy trial, your
13   right to a jury trial, your right to the assistance of
14   counsel at trial, your right at trial to see, hear,
15   confront, and cross-examine witnesses, your protection
16   against compelled self-incrimination, your right to testify
17   and present evidence in your defense, your right to elect
18   not to testify, your right to the issuance of process to
19   compel the attendance of witnesses you want to testify for
20   you; you are giving up your presumption of innocence, the
21   government's obligation to prove your guilt beyond a
22   reasonable doubt, and your right to a unanimous guilty
23   verdict.  By entering pleas of guilty to these five
24   offenses, you are giving up each and every one of those
25   rights.
```

```
 1              As a consequence, Mr. Cobler, there will be no
 2    trial in your case.  If your guilty pleas are accepted, you
 3    will -- there will only be one more hearing, and that is
 4    when the district court determines whether there's a factual
 5    basis for your plea and what sentence to impose.
 6              Do you understand all of that?
 7              THE DEFENDANT:  Yes.
 8              THE COURT:  Do you understand that if you get a
 9    sentence that is more severe than you expect, you will still
10    be bound by your guilty pleas?
11              THE DEFENDANT:  Yes.
12              THE COURT:  You understand parole has been
13    abolished and that you will not be released on parole?
14              THE DEFENDANT:  Yes.
15              THE COURT:  And you understand that you will be
16    obligated to serve an extended period of supervised release
17    at the end of any prison sentence?
18              THE DEFENDANT:  Yes.
19              THE COURT:  And that if you violate the terms of
20    that release, you could be sent back to prison for more
21    time?
22              THE DEFENDANT:  Yes.
23              THE COURT:  Mr. Cobler, tell me in your own words
24    why you think you are guilty of these five offenses.
25              THE DEFENDANT:  Because I knew what I have done.
```

```
1              MR. HOPPE:  What did you do?

2              THE DEFENDANT:  I have admitted that I have

3     downloaded files from a peer-to-peer program, I've admitted

4     that they were being shared, and I have also admitted the

5     incident with a child.

6              THE COURT:  Is there any question in your mind,

7     after talking to Mr. Hoppe, that you committed each of the

8     five offenses alleged in this indictment?

9              THE DEFENDANT:  Yes.

10             THE COURT:  No question in your mind?

11             THE DEFENDANT:  No question.

12             THE COURT:  I have here, Mr. Cobler, a five-page

13    statement of facts that I need you to -- where is the

14    original of that?

15             MR. HOPPE:  Your Honor, I put it up -- did I get

16    it --

17             THE COURT:  I have got what is marked as a copy.

18             MR. HOPPE:  I thought I put it on the bench.

19             THE COURT:  Maybe -- there it is right there.  Look

20    on the bench right there.  Let me see what that is.  Yeah.

21    That's what it is.

22             Would you show that to Mr. Cobler, please?

23             Mr. Cobler, is that your signature?

24             MR. HOPPE:  This is not the signed -- there's no

25    signature on this last page.  I think there's a stapled copy
```

```
 1   that -- I think it is up there.
 2           THE COURT:  Well, I have signed what is listed as a
 3   copy.  Let's take it apart and make sure we have got the
 4   same thing here.
 5           THE CLERK:  That might be the original, I believe.
 6           THE COURT:  See, it says "copy."
 7           THE CLERK:  I know, but I wrote that.  That is your
 8   copy to have, but that may be the original.
 9           THE COURT:  Well, then let's -- all right.  I'm a
10   literalist.  If it said "copy," it is a copy.
11           THE CLERK:  I think we thought it was.
12           THE COURT:  Ms. Bailiff, would you show this to
13   Mr. Cobler.
14           Is that your signature?
15           THE DEFENDANT:  Yes.
16           THE COURT:  All right.
17           Mr. Cobler, did you have a chance to go over the
18   terms of that written statement of facts with Mr. Hoppe?
19           THE DEFENDANT:  Yes.
20           THE COURT:  Mr. Hoppe, do you feel like that fairly
21   summarizes the -- summarizes the evidence that the
22   government would be able to introduce in a trial --
23           THE DEFENDANT:  Yes, I do.
24           THE COURT:  -- against you in this case?
25           THE DEFENDANT:  Yes.
```

```
 1              THE COURT:  Mr. Cobler, do you agree that this
 2   fairly summarizes the evidence that the government would be
 3   able to introduce against you?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  Do you contest any of the facts that
 6   are set forth here in this statement of facts?
 7              THE DEFENDANT:  No.
 8              THE COURT:  Have you heard and understood all parts
 9   of this proceeding, Mr. Cobler?
10              THE DEFENDANT:  Yes.
11              THE COURT:  Before I ask you to enter your pleas,
12   do you have any questions to ask me or do you need to talk
13   further with Mr. Hoppe?
14              THE DEFENDANT:  No.
15              THE COURT:  Mr. Hoppe, does your client want me to
16   read the charges?
17              MR. HOPPE:  No, Judge.  We'll waive a formal
18   reading.
19              THE COURT:  I find the waiver of formal reading to
20   be made with the advice and assistance of counsel and to be
21   voluntary.
22              Mr. Cobler, would you stand with your attorney,
23   please.
24              As to the charge against you in Count One of the
25   indictment, that you -- I'm reading the wrong -- I'm reading
```

1    the statement of facts.  Do we have -- that on or about

2    September 2011, between then and May of 2012, that you did

3    employ and use a device -- a minor boy, who had been

4    approximately the age of four years, to engage in sexually

5    explicit conduct, as alleged in Count One?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Are you, in fact, guilty or not guilty

8    of that charge?

9              THE DEFENDANT:  I'm guilty.

10             THE COURT:  As to the charge that during the same

11   period of time that you employed or used to persuade or

12   induce a minor boy of approximately four years to engage in

13   oral and genital contact, as alleged in Count Two of the

14   indictment?

15             MR. HOPPE:  Judge, just so we're clear, Counts One

16   through Three contain those elements, but additional ones

17   that he used to produce --

18             THE COURT:  And I apologize for that.  That -- for

19   the purpose of producing a visual -- a visual depiction of

20   the conduct is what I should have said.  Do you plead guilty

21   to that in Count One?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Count Two, do you plead guilty to the

24   using or enticing a -- employing a device to depict a child

25   of approximately four years to engage -- to exhibit the

```
 1   minor's genitals in a public area for the purpose of
 2   producing a visual depiction?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  Do you plead guilty to that charge?
 5              THE DEFENDANT:  Yes.
 6              THE COURT:  And during and between the same dates
 7   did you engage in the same kind of conduct for the oral
 8   depiction of the minor's genitals or pubic area, as alleged
 9   in Count Three?
10              THE DEFENDANT:  Yes.
11              THE COURT:  Do you plead guilty to Count Four
12   -- I'm sorry.  What plea do you enter to Count Four,
13   alleging that on or about April 20, 2012, that you knowingly
14   transport in commerce one or more visual depictions of
15   digital images and productions used to depict a minor
16   engaged in sexually explicit conduct and visual depictions?
17              THE DEFENDANT:  Yes.
18              THE COURT:  That is a plea of guilty entered to
19   Count Four?
20              THE DEFENDANT:  Yeah.
21              THE COURT:  As to the charge that on or about 3 May
22   that you did knowingly possess at least one matter which
23   contained a variable depiction that had been shipped in
24   interstate commerce, including computers, for a visual
25   depiction involving a minor engaged in sexually explicit
```

1  conduct, what plea do you enter to that charge?

2         THE DEFENDANT:  Guilty.

3         THE COURT:  The Court notes the defendant's pleas

4  of guilty to each of the five charges against him.  And with

5  the exception of paragraphs B 2 and 5, that the pleas of

6  guilty are deemed to be statements against his interest as

7  to the actions contained in the notice -- as to the property

8  involved in the notice of forfeiture.

9         I find the defendant's pleas of guilty to be made

10  with the advice and assistance of counsel.

11         Madam Clerk, would you read the written plea.

12         THE CLERK:  In the United States District Court for

13  the Western District of Virginia, Harrisonburg Division,

14  *United States of America versus James Robert Cobler*,

15  Criminal Action No. 5:12-CR-00026.

16         In the presence of Joel Hoppe, your counsel, who

17  has fully explained the charges contained in the indictment

18  against you, and having received a copy of the indictment

19  from the United States Attorney before being called upon to

20  plead, you hereby plead guilty to the said indictment, and

21  Counts One, Two, Three, Four, and Five thereof.  You have

22  been advised of the maximum punishment which may be imposed

23  by the Court for this offense.  Your plea of guilty is made

24  knowingly and voluntarily and without threat of any kind or

25  without promises other than those disclosed here in open

```
 1   court.

 2          Is this true?

 3          THE DEFENDANT:  Yes.

 4      (Form executed.)

 5          THE CLERK:  Your Honor, the guilty plea form has

 6   been executed.

 7          THE COURT:  I order it filed and made a part of the

 8   record.

 9          Thank you, Mr. Cobler.  You may be seated.

10          It is my intention to recommend to the presiding

11   district judge, Mr. Cobler, that your pleas of guilty be

12   accepted and that you be adjudicated guilty of those five

13   offenses.  I intend to further report that you appear to be

14   fully competent and capable of entering informed pleas of

15   guilty, that you are fully aware of the nature of each of

16   the five charges, that you are aware of the consequences of

17   your pleas, that your pleas have each been knowingly and

18   voluntarily made, and that each of those pleas is supported

19   by an independent basis in fact as to each element of the

20   five offenses charged.

21          Before doing so, however, I have to ask you one

22   more time, has anybody forced you either to plead guilty

23   -- to plead guilty to any of these five charges?

24          THE DEFENDANT:  No.

25          THE COURT:  Other than -- has anybody promised you
```

```
 1   any leniency or light sentence in this case?
 2             THE DEFENDANT:  No.
 3             THE COURT:  Are you satisfied with Mr. Hoppe's
 4   services?
 5             THE DEFENDANT:  Yes.
 6             THE COURT:  Is there anything you want to say at
 7   this time about his services?
 8             THE DEFENDANT:  No.
 9             THE COURT:  A written presentence report will be
10   prepared.  I'm asking the probation office to begin the
11   preparation of that report.  You will be asked to give
12   information during its preparation.  You may have your
13   attorney present at the time you are interviewed for that
14   presentence report.  In addition, you and your attorney will
15   each have an opportunity to review the report once it is
16   prepared and you will have 14 days to file any objections
17   you have to any of the facts set forth in that report.
18             Sentencing in your case is set for February 6th,
19   2013, at 11:30 in the morning.
20             Mr. Hoppe, I think you are going to be here already
21   that day.
22             MR. HOPPE:  Yes, sir.
23             THE COURT:  And, Ms. Wright, I assume it is okay
24   with your office.
25             MS. WRIGHT:  It is fine with my office, Your Honor.
```

1          THE COURT:  All right.  And I'm asking that the

2  probation go ahead and start that report.

3          The defendant is presently in custody.  And I'll

4  continue his custody and remand him to the custody of the

5  United States Marshal pending preparation of the presentence

6  report.

7          Anything additional, Mr. Hoppe, at this time?

8          MR. HOPPE:  No, Judge.

9      (Thereupon, these proceedings were adjourned at

10  4:24 p.m.)

11

12

13

14

15

16      I certify that the foregoing is a correct transcript

17  from the record of proceedings in the above-entitled matter.

18

        _____/s/ Carol Jacobs_____              April 15, 2013

19      Official Court Reporter                  Date

20

21

22

23

24

25

IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

FILED IN OPEN COURT
DATE __10/29/12__
BY __K Booth__
DEPUTY CLERK
HARRISONBURG DIVISION, W.D. of VA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 5:12CR00026 |
| | ) | |
| JAMES ROBERT COBLER | ) | |

STATEMENT OF FACTS

On April 20, 2012, Investigator Michael R. Wagoner, Page
County Sheriff's Office, who is also assigned to the Northern
Virginia - District of Columbia Internet Crimes Against Children
Task Force (NOVA-DC ICAC) identified the defendant's computer as a
source for numerous files of apparent child pornography on a Peer-
to-Peer, file-sharing network.[1] Investigator Wagoner downloaded
three child pornography images depicting prepubescent minors,
including one entitled "(pthc lolifuck) 4 yr blowjob 2-10.jpg"[2]
which depicts a young girl with her hands holding an adult male
penis and with her mouth on the penis. There is a hand on top of
her head. Peer-to-peer programs utilize the Internet, which is a
means or facility of interstate commerce.

---

[1] The investigation identified the location of the computer
via the Internet Protocol (IP) address, which the investigation
revealed was associated with the defendant.

[2] "pthc" stands for pre-teen hard core and is a commonly
used child pornography term; "lolita" and "loli" are also
commonly used child pornography terms.

On May 3, 2012, a search warrant was executed at the defendant's home in Winchester, Virginia, and investigators learned that the defendant was responsible for the child pornography they were investigating.    A preview of the computers revealed significant child pornography, including images depicting very young children, including toddlers,  being vaginally and anally raped by adult males.

Investigators Galbreath and Wagoner taped an interview of the defendant while they were at his home.  The defendant admitted that he acquired child pornography using peer-to-peer software (including the particular program used by Investigator Wagoner to download from the defendant).    The defendant further admitted knowledge regarding how certain peer-to-peer programs worked, including the program used by Investigator Wagoner to download child pornography from the defendant.

Following the conclusion of the initial interview and around the time the investigators were preparing to leave the premises, the defendant initiated a conversation with the investigators about having molested and filming his sexual acts with a four-year old boy.  He admitted to molesting the child on four separate occasions, which he claimed occurred within the prior month, while he was babysitting the child at the home, located in the Western District of Virginia, of one of the child's parents.[3]  He stated

---

[3]  He claimed that the incidents all occurred within a week.

2

**41**

that he did not film him the first incident of molestation. He stated that on the second occasion, he gave the boy a "blow job," and made a 45-second video ("the max it can hold") during this second incident. He also admitted taking one picture of "mostly" the boy or his penis. Defendant stated that on the third occasion, he performed oral sex on the young child and took about nine more pictures, one of which depicted the oral sex. On the last occasion, the defendant claimed not to have taken any pictures or videos.

The Defendant only admitted producing images and or video on two occasions, but a later computer forensic examination revealed images were taken on at least three occasion; these pictures included pictures of the child's anus and penis.

The on-scene investigation confirmed his confession by revealing, during a preview of the digital evidence, not only numerous images and movies of child pornography depicting the sexual molestation and abuse of children but also his homemade child pornography (including the depictions described in the Indictment), at least some of which he had transferred to his computer in a folder with the child's first name. The defendant took the images and video with a SiPix digital camera (which contains labeling regarding being manufactured in China). As part of the production of the images, the defendant downloaded the depictions from the SiPix camera onto his computer, which was also manufactured outside of the United States. Investigators went to

3

**42**

the home where the abuse and images were taken and observed that the surroundings matched the depictions. One of the above-referenced child's parents provided information to the investigators relating to the time period during which the defendant babysat the young boy who was molested and filmed by the defendant.

A forensic examination conducted by the United States Secret Service revealed numerous child pornography images and videos, including images and videos of identified minors, on the defendant's Compaq Presario laptop. One video was found on the defendant's HP Pavilion laptop, hard disk drive. Approximately 21 images and one video of the child whom the defendant sexually abused were found on the Compaq Presario laptop. Peer-to-peer software was also found on this computer. A search of the most recent file list for Windows Media Player on the Compaq Presario laptop included the name of a video depicting the child the defendant molested; a file named "raping my toddler (good copy).asf;" and other file names indicative of images depicting the sexual abuse of prepubescent minors.

4

**43**

_JAMES ROBERT COBLER_

JAMES ROBERT COBLER

Defendant

10/29/12
_____
Date

_Joel S. Hoppe_

Joel S. Hoppe Esq.

Attorney for Defendant

10/29/12
_____
Date

**44**         5

FILED IN OPEN COURT
DATE _____10/29/12_____
BY _____
        DEPUTY CLERK
HARRISONBURG DIVISION, W.D. of VA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

UNITED STATES OF AMERICA

v.                                    Criminal Action No. 5:12CR00026-1

JAMES ROBERT COBLER


In the presence of Joel Hoppe, my counsel, who has fully explained the charges

contained in the indictment against me, and having received a copy of the indictment from

the United States Attorney before being called upon to plead, I hereby plead guilty to said

indictment and count(s) 1, 2, 3, 4 + 5 thereof. I have been advised of the maximum

punishment which may be imposed by the court for this offense. My plea of guilty is made

knowingly and voluntarily and without threat of any kind or without promises other than

those disclosed here in open court.


_____
Signature of Defendant


____10/29/12_____
Date


_____
Witness


**45**

# United States District Court
# For the Western District of Virginia
# Harrisonburg Division

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | Criminal No: 5:12cr00026-1 |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | **REPORT AND** |
| **v.** | ) | **RECOMMENDATION** |
| | ) | |
| | ) | |
| **JAMES ROBERT COBLER,** | ) | By:  James G. Welsh |
| | ) | U. S. Magistrate Judge |
| *Defendant* | ) | |
| | ) | |
| _____ | ) | |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's  informed and written consent, this case was referred to the undersigned for the purpose of conducting a plea hearing.

As set forth in more detail in the Indictment, the Grand Jury previously returned a multiple count Indictment charging in **Count One** that between September 2011 and in or about May 2012 the defendant did employ, use, persuade, induce, entice, or coerce a minor boy, then approximately four years of age, to engage in sexually explicit conduct, including oral-genital contact with the defendant and masturbation of the minor boy by the defendant, for the purpose of producing a visual depiction of such conduct, namely a video, and that such visual depiction was produced using material that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

charging in **Count Two** that during the same said period, but on an occasion separate from that set forth in Counts One and Three,  the defendant did employ, use, persuade, induce, entice, or coerce a minor boy, then approximately four years of age, to engage in sexually explicit conduct, including oral-genital contact with the defendant and the lascivious exhibition of the minor's genitals or pubic area, for the purpose of producing one or more visual depictions of such conduct, namely one or more digital images, and that such visual depictions were produced using material that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e); charging in **Count Three** that during the same said period, but on an occasion separate from that set forth in Counts One and Two,  the defendant did employ, use, persuade, induce, entice, or coerce a minor boy, then approximately four years of age, to engage in sexually explicit conduct, including the lascivious exhibition of the minor's genitals or pubic area, for the purpose of producing one or more visual depictions of such conduct, namely one or more digital images, and that such visual depictions were produced using material that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e); charging in **Count Four** that on or about April 20, 2012 the defendant did knowingly transport , using any means of interstate or foreign commerce, one or more visual depictions, namely digital images, and the production of such visual depictions involving the use of a minor engaging in sexually explicit conduct and visual depiction(s) were of such conduct, in violation of 18 U.S.C. §§ 2252(a)(1) and 2252(b)(1); and charging in **Count Five** that on or about May 3, 2012 the defendant did knowingly possess at least one matter which contained a visual depiction that had been shipped or transported, using any means or facility of interstate or foreign commerce, including by computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and such visual depiction was of such conduct,

2

in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2253(b)(2).    In addition, the Indictment contains a **Notice of Forfeiture** apprising the defendant that certain of his property was subject to forfeiture upon conviction of any one or more of the offenses alleged against him.

The plea hearing was conducted before the undersigned on October 29, 2012.    The defendant was at all times present in person and with his counsel, Joel C. Hoppe, Assistant Federal Public Defender.  The United States was represented by Lea Ashley Shannon Wright, Special Assistant United States Attorney.  The proceedings were recorded by a court reporter. *See* Rule 11(g), Federal Rules of Criminal Procedure.

With the defendant's informed and written consent, the undersigned made a Rule 11 inquiry; the government presented a written proffer of evidence for the purpose of establishing an independent basis for the defendant's pleas, and the defendant entered pleas of guilty to each of the five felony offenses charged in the Indictment.

### DEFENDANT'S RESPONSES TO RULE 11 INQUIRIES

The defendant was placed under oath and addressed personally in open court.  He expressly acknowledged that he was obligated to testify truthfully in all respects under penalty of perjury and that he understood the government's right, in a prosecution for perjury or false statement, to use against him any statement that he gives under oath.  *See* Rule 11(b)(1)(A).

The defendant testified to the following personal facts.  His full legal name is JAMES ROBERT COBLER.  He is twenty-seven (27) years of age, and he has more than a high school education.  He is able to read, write and understand English without difficulty.  He testified that

he had no medical condition, either physical or mental, which might interfere with his ability to understand and to participate fully in the proceeding; he stated he was using no alcoholic beverage, medication or drugs which might impair his ability to participate fully in the proceeding and that his mind was clear.  He stated that he understood he was in court for the purpose of entering pleas of guilty to five felony offenses which he could not later withdraw. Upon inquiry, the defendant's attorney represented that he had no reservations about the defendant's competency to enter a plea of guilty to each of the felony offenses charged in the Indictment.

The defendant acknowledged that he had received a copy of the Indictment; it had been fully explained to him; he had discussed all of the charges with his attorney, and he had been given enough time to do so.  He stated he understood the nature of the charges against him in the Indictment and specifically understood that each charged a felony offense.  *See* Rule 11(b)(1)(G).  He testified that he had discussed any possible defenses with his attorney and that he had been given adequate time to prepare any defenses he might have to the charges.  He stated that his decision to enter a plea of guilty to each of the charged felony offenses had been made after consulting with his attorney.  He stated he was fully satisfied with the services of his attorney, and it was his intention and desire to enter a guilty plea to each of the five charged felony offenses set forth in the Indictment.

The defendant confirmed that he fully recognized and understood his right to have the Rule 11 hearing conducted by a United States district judge, and he gave his verbal and written consent to proceed with the hearing before the undersigned United States magistrate judge.  The defendant's written consent was filed and made a part of the record.

4

**49**

Counsel for the parties formally informed the court that the **defendant's proposed pleas of guilty were to be made pursuant to no plea agreement or understanding**, (*See* Rule 11(c)(2)).

The attorney for the government then explained the range of punishment for each of the five offenses charged in Indictment. After which the defendant acknowledged that he understood the mandatory minimum penalty provided by law for conviction of the offense charged in **Count One** of the Indictment to be confinement in a federal penitentiary for a minimum of fifteen (15) years, and the maximum penalty provided by law for conviction of this offense to be confinement in a federal penitentiary for thirty (30) years, a $250,000 fine and a five year to life term of supervised release; [1] he acknowledged that he understood the mandatory minimum penalty provided by law for conviction of the offense charged in **Count Two** of the Indictment to be confinement in a federal penitentiary for a minimum of fifteen (15) years, and the maximum penalty provided by law for conviction of this offense to be confinement in a federal penitentiary for thirty (30) years, a $250,000 fine and a five year to life term of supervised release; he acknowledged that he understood the mandatory minimum penalty provided by law for conviction of the offense charged in **Count Three** of the Indictment to be confinement in a federal penitentiary for a minimum of fifteen (15) years, and the maximum penalty provided by law for conviction of this offense to be confinement in a federal penitentiary for thirty (30) years, a $250,000 fine and a five year to life term of supervised release; he acknowledged that he understood the mandatory minimum penalty provided by law for conviction of the offense charged in **Count Four** of the Indictment to be confinement in a

---

[1] The defendant additionally acknowledged that he could be sentenced to less than fifteen years imprisonment only if the government makes a substantial assistance motion pursuant to 18 U.S.C. § 3553(e).

federal penitentiary for a minimum of five (5) years, and the maximum penalty proved by law for conviction of this offense to be confinement in a federal penitentiary for twenty (20) years, a $250,000 fine and a five year to life term of supervised release; and he acknowledged that he understood the maximum penalty provided by law for conviction of the offense charged in **Count Five** of the Indictment to be confinement in a federal penitentiary for ten (10) years, a $250,000 fine and a five year to life term of supervised release. *See* Rule 11(b)(H)-(I). In addition, the defendant acknowledged that he understood that he would be required to pay a mandatory $500.00 special assessment. *See* Rule 11(b)(1)(L).

The defendant then acknowledged that he knew his pleas, if accepted, would result in him being adjudged guilty of five felony offenses and that such adjudication may deprive him of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess any kind of firearm.

The defendant was informed, and he expressly acknowledged, that the court's determination of his sentence would include consideration of multiple factors, including: the nature and circumstances of the offense; the defendant's history and characteristics; the seriousness of the offenses; the need to promote respect for the law; the need to provide for just punishment and afford adequate deterrence; the need to protect the public; any determined need to provide the defendant with educational or vocational training, medical care or other correctional treatment in the most efficient manner; the kinds of available sentences; the pertinent sentencing guidelines and policy statements; the need to avoid unwanted sentence disparities; and any need to provide for restitution. He also acknowledged that he understood the

court may order him to make full restitution to any victim and may require him to forfeit certain property to the government.  *See* Rule 11(b)(1)(J)–(K).

After also acknowledging that the Indictment contained a **Notice of Forfeiture** and that the government was in fact seeking forfeiture of property in this case, the defendant testified that by entering pleas of guilty to the five offenses charged in the Indictment he may be waiving his right to appeal any issues of proportionality or fairness and any right to a jury determination of forfeitability.  *See United States v. Austin*, 509 U.S. 602 (1993) and *Libretti v. United States*, 516 U.S. 29 (1995).  He also expressly acknowledged the government's right to seek forfeiture of substitute assets.  *See* 18 U.S.C. §§ 981(a)(1)(C) and 982

The defendant testified that he and his attorney had talked about how the Sentencing Commission Guidelines might apply to his case and the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Guidelines and other factors under 18 U.S.C. § 3553(a).  *See* Rule 11(b)(1)(M).  He stated that he understood that the court will not be able to determine the recommended guideline sentence for his case until after the pre-sentence report had been completed and he and the government each had an opportunity to challenge the facts reported by the probation officer.

The defendant then acknowledged that he knew the entry of a guilty plea constituted an admission of all of the elements of a formal felony charge, and he knew that irrespective of any sentence imposed by the court he would have no right to withdraw this guilty plea.  *See* Rule 11(c)(3)(B).  He acknowledged that he knew parole had been abolished and that he would not be released on parole.  He further acknowledged that he knew and understood any sentence of

incarceration imposed by the court would also include a period of "supervised release," and he knew any violation of the terms or conditions of such supervised release could result in his being returned to prison for an additional period of time.  *See* Rule 11(b)(1)(H).

Each of his procedural rights surrendered on a plea of guilty was also explained: including, his right to plead not guilty to any offense charged against him and his right to persist in any such  not guilty plea; his attendant right to a trial by an impartial jury; his right to counsel to assist in his defense; his presumption of innocence, the obligation of the government to prove his guilt beyond a reasonable doubt; his right at trial to see, to hear, to confront, and to have cross-examined all witnesses presented against him; his right to decline to testify unless he voluntarily elected to do so in his own defense; his right to remain silent; his right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in his defense; and his right to a unanimous guilty verdict.  *See* Rule 11(b)(1)(B)‒(E).  The defendant testified that he understood his right to plead not guilty and the attendant trial rights that he would waive by pleading guilty.  *See* Rule 11(b)(1)(F).

In direct response to further questioning, the defendant also testified that he was pleading guilty to the five offenses charged in the Indictment, because he had in fact engaged in activity with a minor boy of the type described in Counts One, Two and Three of the Indictment, and because he had downloaded and shared files as alleged in Counts Four and Five of the Indictment, and because there was no question of his guilt after discussing the charges with his attorney.

To permit the court to determine whether an independent basis in fact existed for the defendant's plea, counsel for the government submitted for filing as part of the record a written Statement of Facts which summarized the facts that the government was prepared to prove at trial to establish the five offenses charged against the defendant in the Indictment.  The defendant and his counsel each represented that the defendant had reviewed it, was fully aware of its contents, and did not contest any of the facts set forth therein.  With the signature of the defendant and with the acknowledgment of the defendant and his attorney that the written Statement of Facts fairly summarized the government's case, it was received, filed and made a part of the record.  *See* Rule 11(b)(3).

After testifying that he had heard and understood all parts of the proceeding and after consulting further with his attorney, the defendant stated that he remained ready to plead guilty pursuant to the terms of the plea agreement.  After voluntarily waiving a reading of the Indictment, the defendant entered the following pleas: a plea of GUILTY to the offense charged in Count One alleging his violation of Title 18, United States Code, Sections 2251(a) and 2251(e); a plea of GUILTY to the offense charged in Count Two alleging his violation of Title 18, United States Code, Sections 2251(a) and 2251(e); a plea of GUILTY to the offense charged in Count Three alleging his violation of Title 18, United States Code, Sections 2251(a) and 2251(e); a plea of GUILTY to the offense charged in Count Four alleging his violation of Title 18, United States Code, Sections 2252(a)(1) and 22521(b)(1); and a plea of GUILTY to the offense charged in Count Five alleging his violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2).  The clerk then read the written guilty plea form to the defendant; after acknowledging it to be correct, the defendant executed it, and it was filed and made a part of the record.

After entering his pleas of guilty and after an independent basis for the plea was established, the defendant was again addressed personally.  He reconfirmed that his decision to plead guilty to all five charged offenses was fully voluntary and did not result from any force, threats, promises of leniency or other inducement of any kind  *See* Rule 11(b)(2).  The defendant also reconfirmed his complete satisfaction with the services and assistance of his attorney.

The defendant was then informed that acceptance of his guilty pleas would be recommended to the presiding district judge, that a pre-sentence report would be prepared, that he would be asked to give information for that report, that his attorney may be present if he wished, and that he and his attorney would have the right to read the pre-sentence report and to file objections to it.  The defendant was then remanded to the custody of the United States Marshal pending preparation of a pre-sentence report and acceptance of his guilty pleas.

## GOVERNMENT'S EVIDENCE

The agreed written Statement of Facts referenced above is incorporated herein and made a part hereof by reference.

## FINDINGS OF FACT

Based on the evidence, representations of counsel, and the defendant's sworn testimony presented as part of the hearing, the undersigned submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed pleas to the charges set forth in Counts One, Two, Three, Four, and Five of the Indictment;

2. The defendant is fully aware both of the nature of each of the five charges set forth in the Indictment and of the consequences of each of his guilty pleas;

10

**55**

3.  The defendant is fully informed, and he understands, the applicable enumerated items set forth in Rule 11(b)(1)(A)–(N);

4.  The defendant's pleas of guilty were made pursuant to no plea agreement or other understanding of any type;

5.  The defendant's tender of his pleas of guilty to the five felony charges was made with the advice and assistance of counsel;

6.  The defendant knowingly and voluntarily entered each of his five guilty pleas;

7.  The defendant's pleas of guilty did not result from force, threats, inducements or promises of any kind; and

8.  The evidence presents an independent basis in fact containing each essential element of the five offenses to which the defendant has entered a plea of guilty.

## RECOMMENDED DISPOSITION

Based on the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's pleas of guilty to the offenses charged in Counts One, Two, Three, Four, and Five of the Indictment, that he be adjudged guilty of the said five felony offenses, and that a sentencing hearing be set for February 6, 2012 at 11:30 a.m. before the presiding district judge.

## NOTICE TO PARTIES

NOTICE is hereby given to the provisions of 28 U.S.C. § 636(b)(1)(c):  Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by the rules of court.  The presiding district judge shall make a *de novo* determination of those portions of the report or specified findings or recommendations to which an objection is made. The presiding district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned.  The presiding district judge may also receive

further evidence or recommit the matter to the undersigned with instructions.  **A failure to file timely written objections to these proposed findings and recommendations within fourteen (14) days could waive appellate review.**

The clerk is further directed to transmit a copy of this Report and Recommendation to all counsel of record, and at the conclusion of the fourteen-day period the clerk is directed to transmit the record in this matter to the presiding United States district judge.

DATED:  This 4th day of December 2012.

*s/  James G. Welsh*

United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:12cr26** |
| | ) | |
| **JAMES ROBERT COBLER,** | ) | |
| **Defendant.** | ) | |

## MOTION TO SEAL

Defendant James Robert Cobler, by counsel, moves the Court to seal his Sentencing Memorandum and accompanying attachments, which include his medical records. Cobler's Sentencing Memorandum contains personal, confidential information about his medical history, and his medical records are attached as exhibits. No alternative to sealing will adequately protect against the potential harm that could ensue from dissemination of the confidential information contained in the Sentencing Memorandum and attachments.

Accordingly, Cobler requests that the Sentencing Memorandum and attachments be filed under seal and remain under seal.

Respectfully submitted,

JAMES ROBERT COBLER

s/ Joel C. Hoppe
Virginia State Bar No. 48395
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market Street, Suite 106
Charlottesville, VA 22902
Telephone: (434) 220-3380
Fax: (434) 220-3390

<u>Certificate of Service</u>

This is to certify that a true and correct copy of the foregoing Motion was filed electronically and will be forwarded to Nancy Healey, Assistant United States Attorney, this 30th day of January 2013.

s/ Joel C. Hoppe
Assistant Federal Public Defender

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Case No. 5:12cr26** |
| **v.** | ) | |
| | ) | **ORDER** |
| **JAMES ROBERT COBLER,** | ) | |
| Defendant. | ) | **Judge Michael F. Urbanski** |

This matter is before the Court on Defendant James Robert Cobler's Motion to Seal. The Court finds that the Defendant's Sentencing Memorandum and accompanying attachments contain confidential information, sealing is necessary, and no alternative to sealing is adequate.

Accordingly, the Motion to Seal is GRANTED and the Defendant's Sentencing Memorandum and attachments shall be placed under seal until further order from the Court.

It is so ORDERED.

The Clerk of the Court is hereby ordered to send a certified copy of this Order to all counsel of record.

Entered this _____ day of January, 2013.


_____
MICHAEL F. URBANSKI
UNITED STATES DISTRICT JUDGE

IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

UNITED STATES OF AMERICA        )
                                )
                v.              )    Criminal No. 5:12CR00026
                                )
JAMES ROBERT COBLER             )

GOVERNMENT'S MEMORANDUM IN SUPPORT OF SENTENCING

Defendant, James Robert Cobler, faces sentencing after pleading guilty before this Court On June 21, 2012, to three counts of using a four year old boy to engage in sexually explicit conduct for the purpose of creating visual depictions of that conduct (commonly referred to as production of child pornography)in violation of 18 U.S.C. §§ 2251(a) and (e); one count of transportation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1); and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). He faces a statutory minimum of 15 years of imprisonment up to a maximum of 1440 months (120 years), to be followed by a period of supervised release between five years and life.[1]  He also faces a potential fine as well as forfeiture of various items (as set forth

---

[1]  The Guidelines recommend lifetime supervison for sex offense convictions.  <u>See</u> U.S.S.G. 5D1.2(b)(Policy Statement).

**61**

in the Indictment),[2] including his computer equipment and the camera he used to record his young male victim. The defendant's Sentencing Guidelines range is calculated as life, capped by the statutory maximum and thus the "range" is simply 1440 months.

In light of the defendant's heinous and risky conduct, especially concerning the molestation of a very young boy knowing that he (the defendant) had a dangerous communicable disease, the United States rerespectfully requests that this Court sentence the defendant to a sentence in accordance with the Guidelines calculations as set forth more fully below.

<u>FACTUAL BACKGROUND</u>

Defendant, who has been diagnosed with a significant communicable medical condition, as further described in the Presentence Report (PSR) engaged in multiple acts of molestation with a four-year old boy and produced video and images of child pornography depicting acts of oral sex and digital penetration of the boy as well as images focused on the young child's genital area. He also distributed and received other hard core child pornography by using a file sharing program by which he obtained other child pornography for his own gratification.

The investigation began on April 20, 2012, when an Internet Crimes Against Children (ICAC) investigator, operating in an

---

[2] The Government intends to return any property determined to neither have been used in the commission of the crime nor used to store contraband.

undercover    capacity,downloaded    child    pornography    from    the
defendant's    collection.    One    of    the    images    the    investigator
downloaded was named "(pthc lolifuck)4 yr blowjob 2-10.jpg.[3]"  This
image  depicted  a  young  girl  holding  an  adult  male  penis  and  with
her  mouth  on  the  penis.    PSR  ¶3.

Images  found  on  the  defendant's  computer  during  a  preview
search  at  his  home  on  May  3,  2012,  during  the  execution  of  a  search
warrant    that    day,    included    significant    disturbing    child
pornography,  including  images  depicting  very  young  children  such  as
toddlers  being  vaginally  and  anally  raped  by  adult  men.    PSR  ¶4.

Investigators  Galbreath  and  Wagoner  taped  an  interview  of  the
defendant  while  they  were  at  his  home.    See  PSR  ¶¶5-7.[4]    Besides
admitting  that  he  acquired  child  pornography  using  peer-to-peer
software  and  admitting  that  he  became  aroused  and  would  masturbate
when  he  looked  at  some  images  of  child  pornography,[5]  he  stated  that
he  preferred  pictures  of  males  depicting  "blow  jobs"  or  "penis  in
the  buttocks."  He  thereafter  described  prior  incidents  when  he  (the
defendant)  was  12  years  old  involving  another  boy,  whom  he  claimed

---

[3]  "pthc"  stands  for  pre-teen  hard  core  and  is  a  commonly
used  child  pornography  term;  "lolita"  and  "loli"  are  also
commonly  used  child  pornography  terms.

[4]  A  copy  of  the  interview  will  be  filed  under  seal  because
of  personal  information  that  would  reveal  information  about  a
minor  victim  in  violation  of  18  U.S.C.  3509(d)  as  well  as  certain
medical  information  about  the  defendant.

[5]  He  originally  suggested  he  disliked  all  pornography  and
was  interested  in  creating  a  virus  to  destroy  online  pornography.

3

was about five or six years younger, engaged with the defendant in
what he described as a sex game wherein he lay on top of the young
child and "basically, it's like, uh, penis in the butt but not, uh,
nothin' goes into the butt;" admitted he did this on four or five
occasions with this child; and stated that the other boy did the
same to the defendant.  The defendant stated that he got caught by
a babysitter performing oral sex on the younger child.  Transcript
of Interview, pp. 38-42.

   After admitting these earlier sexual acts, and then denying
further sexual contact with any other minor, the following colloquy
occurred between Investigator Galbreath ("JG") and the defendant
("JC"):

JC:  I think that's the one reason why I've downloaded this stuff
     is to-

JG:  Satisfy your interest, maybe?

JC:  Uh, protect me from the rest of the world.

JG:  Okay.  So-

JC:  So, that way, uh, you know, I'm not doin' it to anyone.  I'm
     not harmin' anyone.

JG:  So you're, you're basically sayin' that, just to make sure I
     understand, that by you downloading the images and using the
     images to-

JC:  Of course I do-

JG:  Let me finish.  Um, masturbate to then you don't have to go
     out and do something in person, is that what you're tryin' to
     say.

JC:  Um, I don't, you know, I don't end up, you know, rapin'
     someone.

4

**64**

Id. at pp. 43-44.  Following the conclusion of the initial interview and around the time the investigators were preparing to leave the premises, the defendant initiated a conversation with the investigators about having molested and filmed in the recent past the local four-year old victim of the offenses charged in Counts one through Three of the Indictment.  He admitted to molesting the child on three or four separate occasions within the prior month when he was babysitting the child at the home of the child's mother.[6]  He stated that during the first incident, he fondled the child's penis but did not film him that day.  He stated that on the second occasion, he gave the boy a "blow job," and made a 45-second video ("the max it can hold") during this second incident.  He also admitted taking one picture of "mostly" the boy or his penis. Defendant stated that on the third occasion, he performed oral sex on the young child and took about nine more pictures, one of which may have depicted the oral sex.  On the final occasion, the defendant again performed oral sex on the child but claimed not to have produced any images.  He claimed, in part, that the victim liked how the oral copulation felt.  See id. at pp. 62-87.

After denying any further types of acts of molestation involving this young child, the defendant admitted penetrating the child's anus "a tiny bit" ("[a]bout a quarter of an inch") with his

---

[6]  He claimed that the incidents all occurred within a week.

5

**65**

finger on each of the occasions that he performed oral sex on the child.  The defendant claimed that he stopped doing this when the child said that this hurt.  The defendant also admitted that he put his tongue on and licked the rim of the child's anus on the final occasion but stopped because the boy did not like it.  <u>Id</u>. at 88-95.

The defendant also admitted researching whether his communicable disease could be transmitted via saliva during oral sex after the first occasion that he put his mouth on the boy's penis.  He claimed that he learned it was either a very small or no chance of transmission unless he had a cut in his mouth and the child had a cut.  After learning there might be a possibility of transmission, he nevertheless performed oral sex on the child the two other times.  <u>Id</u>. at 103-05.

A forensic analysis confirmed that the defendant produced child pornography and had acquired other hard core images depicting the sexual abuse of young children, including penetration of young children by adult men.

<u>PRESENTENCE REPORT</u>

The Presentence Report (PSR) prepared by the Probation Office correctly shows that Counts One and Two are driven by the base offense level 32 for production of child pornography, the tender age of the victim child (+4 levels), the commission of a sexual act as defined in 18 U.S.C. § 2246(2) (+2 levels), and the fact that

6

**66**

the young boy was then in the defendant's care or supervisory control (+2 levels), resulting in offense levels of 40 for each of those counts. PSR ¶¶14-29. Count Three was similarly calculated but because that offense did not involve a sexual act or sexual contact, the offense level is 38. PSR ¶¶30-36.

Counts Four and Five (transportation and possession of child pornography) group together with a base offense level of 22, depictions of prepubescent minors (+2 levels); distribution via a Peer-to-Peer network (+5 levels)[7]; depictions of violence because the defendant's collection included young and small children being vaginally and anally raped by adult males (+4 levels); engaging in a pattern of activity involving the sexual abuse or exploitation of a minor as further defined in U.S.S.G. §2G2.2, Application Note 1 (+5 levels); offense involved more than 600 images of child pornography (+5 levels), for a total offense level of 45 for these two charges. PSR ¶¶37-47.

Because production counts do not group, an additional 3 levels are added. *See* PSR §§ 48-50. Subtracting 3 levels for acceptance of responsibility and then finally adding a Chapter 4 enhancement for qualifying as a repeat and dangerous sex offender under

---

[7]   Defendant, via an objection made January 29, 2013, to the recently revised PSR, argues that a two-point distribution enhancement and not a five-point enhancement should apply instead. The United States will be conducting further research on this issue and will present same to the Court by the time of the sentencing hearing.

7

U.S.S.G. §4B1.5(b), there is a final addition of 5 levels, for a final combined offense level of 43. <u>See</u> PSR §§ 52-56.

Based upon a Criminal History Category I and total offense level 43[8], defendant's advisory sentencing guideline term of imprisonment is life. Because the statutory maximum on each count is less than the advisory guidelines range of life imprisonment, the aggregated statutory maximum sentences on each count becomes the advisory guidelines range for each count, i.e., 30 years on each of Counts One, Two, and Three, 20 years on Count Four, and 10 years on Count Five. <u>See</u> U.S.S.G. §5G1.1(a).

Further, U.S.S.G. §5G1.2(d) provides that the statutory maximum sentences shall run consecutively:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.

U.S.S.G. §5G1.2(d). The "total punishment" under the sentencing guidelines in this case calls for life imprisonment. Because the aggregated statutory maximum sentences is less than the total guidelines punishment of life imprisonment, the sentences for the multiple counts should be run consecutively as the advisory guideline sentence. <u>See</u> <u>United States v. Schellenberger</u>, 246

---

[8] Defendant's actual total offense level is 50, but because 43 is the maximum potential offense level under the Guidelines, it is reduced to level 43 pursuant to U.S.S.G. Ch. 5, Pt. A, cmt. n.3.

8

**68**

Fed.Appx. 830, 833 (4th Cir. 2007)(unpublished)("the guidelines instruct that if the total punishment mandated by the guidelines exceeds the highest statutory maximum, the district court must impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment")(citation and internal quotations omitted).  Accordingly, the PSR correctly states that defendant's advisory guideline range is 1,440 months (i.e., 30+30+30+20+10 = 120 years).

A sentence called for by the sentencing guidelines (effectively a life sentence) would be reasonable under the circumstances in this case and meet the goals of 18 U.S.C. § 3553(a), in particular, based on the following factors:

<u>UNITED STATES' SENTENCING POSITION</u>

<u>Nature and Circumstances of the Offense and the History and Characteristics of the Defendant</u>

The production offenses in this case are especially despicable and egregious given the defendant's extraordinarily selfish exploitation of a very young child during which he risked transmitting to the child a potentially life-threatening condition. Indeed, despite his knowledge concerning his own medical situation, the defendant chose to put his own interests above that of a highly vulnerable child, who was then in his custody and control.  Simply stated, the defendant has demonstrated that he will stop at nothing to satisfy his own urges and interests.  His viewing and distribution of other vile images of young children being molested

9

**69**

- offenses characterized as crimes of violence in and of themselves
- were insufficient to satisfy his deviant sexual interests.

While defendant has no known criminal history in the sense that he has no prior prosecutions, he has an undeniable longstanding interest in the sexual abuse of young children. Besides the more recent molestations that resulted in some of the offenses of conviction in this case, the defendant also admitted during his interview that he had engaged in prior sexual acts with a young child (about half his age) when he was a minor himself. Moreover, the defendant's own statements suggest that he downloaded child pornography in an attempt to avoid raping a child. Even if he truthfully stated his intention, he obviously chose to personally exploit a young child. The fact that he even offered babysitting services is additionally disturbing given his history of being sexually attracted to young children.

<u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment</u>

As set forth above, the conduct by the defendant is especially reprehensible and there is nothing in his far-reaching conduct that would suggest that any type of variance should be considered. The risk that the defendant took in abusing this young child when he was entrusted with caring for him cannot justify any sort of downward variance as this conduct should be deemed to be on the more serious side of the offense charged. A variance would promote

10

a lack of respect for the law.  Moreover, the effects on the four-year old victim were significant as set forth in the victim questionnaire submitted by the child's mother.  As set forth in that document, the defendant's conduct has affected the child's behavior and adversely affected his family in various ways.

<u>The Need to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant</u>

The sentence in this case must constitute a loud message to other offenders that the most extreme consequences will result for such callous disregard of young victims.  Given the defendant's overall conduct, which includes deviant sexual behavior against at least one other young child that began when he was still a minor, a Guidelines sentence is wholly appropriate.  As stated above, the defendant's own statements and actions suggest that he is simply unable to control his urges and behavior.

Although he has no criminal history (like almost all of the child pornography defendants who have previously come before this Court), the defendant has harmed numerous children (in both producing his own child pornography and in searching for and distributing other child pornography) and poses a future danger to them, and his sentence should address both the seriousness of his offenses and his future dangerousness.  A long term of imprisonment, such as one that guarantees that he will remain incarcerated for the duration of his life, also reflects the seriousness of the offense, promotes respect for the law, and

11

**71**

provides just punishment.  Lifetime supervised release (if he is released from imprisonment) will help to prevent future harm by the defendant.

Likewise, the sentence needs to afford adequate general deterrence.  This would be true even if the defendant had not personally violated a child.  Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence.  See, e.g., United States v. Irey, 612 F.3d 1160, 1206 (11th Cir. 2010) (citing United States v. Ferber, 458 U.S. 747, 760 (1982)) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product");[9] Osborne v. Ohio, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); United States v. Goff, 501 F.3d 250, 261 (3rd Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006)

---

[9]  The Irey court noted that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses."  612 F.3d at 1206.

12

("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it."). In United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007), the Seventh Circuit opined that:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded – both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

The Sixth Circuit in part reversed a district court when the district court failed to see any importance in general deterrence. See United States v. Bistline, 665 F.3d 758, 767 (6th Cir. 2012).[10] The district court had stated, "general deterrence ... will have little [if] anything to do with this particular case." Id. The Sixth Circuit found the district court's statement "inexplicable and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]" Id. (citing United States v. Camiscione, 591 F.3d 823, 834 (6th Cir. 2010)).

_____

[10] While Bistline reversed an extremely short sentence, the opinion is a strongly worded opinion about the Guidelines and the seriousness of child pornography offenses.

13

**73**

The Need to Avoid Unwarranted Disparities

As will be further set forth below, many child pornography producers have received Guidelines and/or lengthy sentences that have been affirmed on appeal. The Guidelines understandably calculate long advisory sentences for people like the defendant because they have directly harmed children (and because of the prescribed goals of sentencing). A Guidelines sentence, as constrained, of course, by the statutory maximum in this case, would be a reasonable sentence and would reflect the seriousness of the defendant's offenses, promote respect for the law, deter future conduct, reflect the seriousness of the offense and provide the public with protection from future crimes. Such a sentence would be sufficient but not greater than necessary to punish the defendant for his conduct, promote respect for the law, address the seriousness of his offenses and would accurately reflect all other sentencing factors.

There are numerous examples of sentences that have involved long and/or effectively life sentences for production of child pornography. For example, in United States v. Sarras, 575 F.3d 1191 (2009), the Eleventh Circuit affirmed as reasonable a 100-year (1,200 months) sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim. Id. at 1220-21. The Sarras court noted several other child exploitation cases in which courts upheld lengthy sentences

14

**74**

as substantively reasonable. <u>Id</u>. <u>See</u> <u>United States v. Johnson</u>, 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for abusing and photographing three boys between the ages of 8 and 16 based on consecutive statutory maximums under 18 U.S.C. § 2251(e) and § 2252A(b)(1)); <u>United States v. Kapordelis</u>, 569 F.3d 1291, 1318-19 (upholding as reasonable a 420-month sentence, which represented an upward variance from the 262-327-month advisory guidelines range and included 240-month sentences on counts charging production of child pornography under § 2251(a) and 180-month consecutive sentences on counts charging receipt of child pornography under § 2252A(a)(2)(A)); <u>United States v. Huffstatler</u>, 561 F.3d 694, 698 (7th Cir. 2009) (upholding as reasonable an above-guidelines, 450-month sentence for producing pornographic pictures of a 14-year-old boy); <u>United States v. Raplinger</u>, 555 F.3d 687, 695 (8th Cir. 2009) (upholding as reasonable a 457-month sentence for photographing and having sexual intercourse with a 15-year-old girl), cert. denied, 129 S.Ct. 2814 (2009); <u>United States v. Betcher</u>, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters), <u>cert. denied</u>, 129 S.Ct. 962 (2009); <u>United States v. Vowell</u>, 516 F.3d 503, 511-13 (6th Cir. 2008) (upholding as reasonable a 780-month sentence for a 40-year-old man who had sexual intercourse with his

girlfriend's 8-year-old daughter while being videotaped by his girlfriend); see also United States v. Paton, 535 F.3d 829, 837-38 (8th Cir. 2008) (concluding that life sentence for five counts of production of child pornography was not cruel and unusual punishment in violation of the Eighth Amendment); United States v. Pugh, 515 F.3d 1179, 1202 ("[W]e have typically treated child sex offenses as serious crimes, upholding severe sentences in these cases").

Closer to home the Fourth Circuit has affirmed, *inter alia*, the following cases that involved, at least in part, production of child pornography convictions: United States v. Engle, 676 F.3d 405 (4th Cir. 2012)(affirming 480-month sentence which was the result of an upward variance); United States v. Mattocks, 408 Fed.Appx. 717 (4th Cir. 2011) (unpublished) (affirming 600-month sentence for one count of production of child pornography involving a 6-year old child and one count of transportation of child pornography); United States v. Ebersbach, 2012 WL 1743225 (4th Cir. 2011) (unpublished) (affirming 360-month Guidelines sentence); United States v. Martinez, 453 Fed.Appx. 342 (4th Cir. 2011) (affirming of denial of motion to withdraw guilty plea in case where defendant received 960-month sentence), cert. denied, 132 S.Ct. 1130 (2012).[11]

_____

[11] Two recent cases in this district, United States v. Bruffy, Criminal No. 6:11CR00006 and United States v. Miller, Criminal No. 6:11CR00004 (presently on appeal solely for rulings

16

**76**

As other recent examples, the Seventh Circuit affirmed a 396-month sentence for a 19-year old defendant who captured live-stream images of girls as young as 13 (he distributed at least one photo). The government had recommended a small break in his sentence for assistance and his sentence was below his guidelines range.  See United States v. Shea, 2012 WL 4373430 (7th Cir. 2012)(unpublished). The Eighth Circuit affirmed a 327 month sentence (the maximum potential sentence was 360 months which was reduced to reflect time served as part of a related state sentence) for a defendant's production of images depicting his 11-year old daughter.  See United States v. Schupp, 2012 WL 435 4350766 (8th Cir. 2012) (unpublished).

While each case has unique factors, some aggravating some mitigating, in this case, the defendant's offenses are aggravated and worthy of severe punishment in accordance with many of the examples that are set forth above.  It is difficult to quantify, much less fathom, the harm and tragedy perpetrated on the 4-year

---

on pretrial motions) resulted in 23-year and 25-year sentences respectively.  In Bruffy, the children were unaware that their images (which depicted primarily lascivious exhibition of the genitals and not sex acts between Bruffy and the minors) were taken since they were asleep for those images that clearly qualified as child pornography.  Miller, who was significantly older and also had health problems (indeed, he was arrested on a warrant from our district) in Rome after he had a heart attack) had filmed an approximately 14 or 15 year old girl performing oral sex on the defendant.  The crimes were discovered after the girl had asked the defendant to take her away with him and they were found driving in the National Park.

17

**77**

old child victim (and the victim's mother) by the defendant, and it is impossible to predict its long-term effects on the child victim. The defendant's callous and selfish disregard for the life and health of the child cannot be understated in this case. Defendant supplemented these horrific acts by downloading and collecting many graphic images and videos of other young children being raped and abused, including images similar in nature to the abuse he perpetrated on his local victim. Accordingly, the United States respectfully requests that, after considering the facts and circumstances of this case, the relevant guidelines, and the factors set forth in 18 U.S.C. § 3553(a), this Court sentence defendant in accordance with the Guidelines (and lifetime supervision should he be released from prison at some point). As set forth above, such a sentence would be substantively reasonable, serve the goals of general and specific deterrence, protect the public from future crimes by defendant by achieving his incapacitation, and afford justice to the child victim.

It bears noting that even if he had not engaged in contact offenses with a minor (and produced images of that conduct), the defendant's other child pornography activities demonstrate a danger to children as well. As explained by the Fifth Circuit:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons

like this defendant, we don't know how many child abuse cases
we could prevent. And as long as there is a demand to
purchase images of child pornography, there is going to be an
unending stream of child abuse of . . . children who are
forced into these roles.

...every image has a child who has been exploited and
abused, and that is the concern I have. It is the
concern that I have when people are engaged in serially
doing this, the effect it has on children throughout the
world and the effect it has on their future lives.

See United States v. Miller, 665 F.3d 114, 121-122 (5th Cir. 2011)

(quoting the district court), cert. denied, 132 S.Ct. 2773

(2012)(rejecting an attack on the child pornography sentencing

guidelines[12] and highlighting the grave harm caused to the victims

depicted in child pornography images and the evidence that

traffickers and possessors of child pornography are the impetus for

---

[12] This Court is undoubtedly aware that U.S.S.G. § 2G2.2,
the Guideline used for most non-production offenses has been a
recent favorite target of the defense bar. However, it is
important to note that the Fourth Circuit has not adopted - and
has indeed rejected - the view that the child pornography
guidelines are not worthy of a presumption of reasonableness
because they were developed pursuant to congressional dictates.
Indeed, in fairly recently affirming a Guidelines sentence, the
Fourth Circuit stated:

Strieper first contends that a presumption of
reasonableness should not apply to sentences for child
pornography offenses because the relevant Guideline was
developed pursuant to congressional dictates rather
than the Sentencing Commission's expertise. We have
previously rejected this view, however, and instructed
courts "to give respectful attention to Congress'[s]
view that [child pornography crimes] are serious
offenses deserving serious sanctions."

United States v. Strieper, 666 F.3d 288 (4th Cir. 2012)(citing
and quoting from Morace, 594 F.3d at 347 (4th Cir.)(internal
brackets in original).

the creation of more sexual abuse of minors).

In finding the district court's observations sound and relevant, the Fifth Circuit stated:

> The district court in this case was cognizant of the undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by Miller and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way. If a handful of pornographic images taken twenty years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today. No other child would be raped or sodomized or otherwise violated to produce pornographic images. Tragically, the reality is that there is a huge demand for "fresh" faces and images.

Id. at 123 (emphasis added). In the present case, the defendant is of course charged with not only being a consumer and distributor of previously produced images of child sexual abuse but also with producing his own child pornography, using a very young child to stoke his perverse sexual interests and choosing to memorialize the abuse. He is a sexual predator and should be sentenced accordingly.

Regarding his non-self produced collection, it is noteworthy that many qualify as depictions of violence and also depict very young children. "An offender's pornography and erotica collection is the single best indicator of what he wants to do." KENNETH V. LANNING, OFFICE OF JUVENILE JUSTICE AND DELINQUENCY PREVENTION, CHILD MOLESTERS: A BEHAVIORAL ANALYSIS—FOR PROFESSIONALS INVESTIGATING THE SEXUAL EXPLOITATION OF

CHILDREN, 107 (5TH ED. 2010).  As the <u>Miller</u> court stated:

> We also disagree that it is "illogical to differentiate
> between defendants who view or distribute images of
> prepubescent children being raped and sodomized, as one
> example under the Guidelines, and those defendants who
> view or distribute pornography that depicts minors who
> are not prepubescent engaged in sexual activity that is
> not violent or sadistic.  We reject the view that because
> there are many defendants who view images of children
> under the age of 12 being raped and sodomized, and
> because there are many defendants who obtain hundreds of
> pornographic images of children, the terms of
> imprisonment should be reduced for all who receive or
> transport child pornography, regardless of the content of
> those images and regardless of the number of images.  The
> Guidelines treat differing behavior differently, and in
> our view, that differentiation is not unreasonable.

665 F.3d at 123.  <u>See also</u> <u>United States v. Clogston</u>, 662 F.3d 588,

593 (1st Cir. 2011); ("Given the numerous images of very young

girls in the appellant's possession, the [district] court was

entitled to ponder, and to pass informed judgment on, questions

such as whether he could conform his future actions to the norms of

society and whether he posed a risk to young girls."); <u>United

States v. Aumais</u>, 656 F.3d 147, 157 (2d Cir. 2011) ("[G]iven the

violent nature of the images, the number of them, and other

considerations,... [t]he sentence is substantively reasonable.");

<u>United States v. Cunningham</u>, 2012 WL 593110 (6th Cir. Feb. 24,

2012); (affirming sentence where district judge reviewed all of the

images to judge the defendant's conduct, and considered, as  "the

nature of those images, the age of the children, [and] the conduct

depicted in the images" along with the other 3553 factors).

     For the reasons set forth above, the United States' position

is that a Guidelines sentence in this case should be imposed based on the seriousness and breadth of the defendant's offenses.

### Sentencing Exhibits and Testimony

As stated above, the United States intends to submit to this Court, under seal, a copy of the transcript of the recorded interview of the defendant on the day of his arrest. The United States also intends to present to this Court a sampling of images that were recovered during the investigation. The United States reserves the right to present testimony, other exhibits, and a supplemental filing in response to any memoranda or exhibits that the defendant files or chooses to introduce in furtherance of sentencing.

### Notice of Specific Sex Offender Conditions to be Imposed is Not Required at Time Guilty Plea is Entered

The Court has filed a written Order stating that the Court believes that the defendant should be provided with notice of the special supervised release conditions that may be imposed prior to accepting the guilty pleas. As will be discussed further at the sentencing hearing, the United States is aware of no requirement that the defendant be advised of specific potential supervised release conditions prior to entry of a guilty plea. The requirements set forth under Rule 11 do not contain any requirement that a defendant be so advised and states simply, in relevant part, that the defendant be advised of "the maximum possible penalty, including imprisonment, fine, and term of supervised release" as

22

**82**

well as "any mandatory minimum penalty." <u>See</u> Fed. R. Crim. P. 11(b)(1)(H) and (I).  To add a requirement that a defendant be advised of the potential special conditions (a requirement neither set forth in the Federal Rules of Criminal Procedure nor set forth in case law) might result in setting a precedent for the inclusion of other warnings or information that are also not legally required.  Moreover, questions might also arise as to whether a defendant should also then be allowed to withdraw a plea in the future if the is a subsequent modification of conditions (i.e., post-sentencing).


                    Respectfully submitted,

                    TIMOTHY J. HEAPHY
                    UNITED STATES ATTORNEY


                    <u>s/ Nancy S. Healey            </u>
                    Nancy S. Healey
                    Assistant United States Attorney
                    Virginia Bar No. 39447


                              23


                            **83**

CERTIFICATE

I hereby certify that on 30th day of January 2013, the forgoing Sentencing Memorandum was electronically filed using CM/ECF system.  This system  will send notification of such filing to all parties.

                                    /s/Nancy S. Healey
                                    Nancy S. Healey
                                    Assistant United States Attorney

24

**84**

IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

UNITED STATES OF AMERICA )
)
v. )    Criminal No. 5:12CR00026
)
JAMES ROBERT COBLER )

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

COMES NOW the United States of America, by undersigned counsel and submits the following in response to certain arguments made by the defendant in his memorandum. Understanding that the defendant's memorandum is under seal, the United States will avoid commenting about matters underlying the sealing of that memorandum that have not already been placed in the public record. There are, however, statements made therein that justify this response.

Preliminarily, it is unquestionable that the defendant has faced, in large part, a set of unfortunate circumstances through no fault of his own and the undersigned is very sorry about this reality. Thankfully, the defendant was cared for by his grandparents who apparently provided him with a good home and a nurturing environment.

The defendant's regrettable situation, however, does not in any way excuse the defendant's actions against a young, helpless child whom he was entrusted to take care of during the defendant's acts of molestation. The defendant engaged in this behavior on

**85**

multiple occasions despite his awareness of certain potential risks involved.

Whether or not the defendant's offenses constitute "crimes of opportunity," this was a reprehensible and dangerous crime. The very fact that he even molested a child who was only four-years old is deplorable in and of itself. Moreover, the purported mitigating excuse of a "crime of opportunity" seems to be worthy of little, if any, consideration given his collection of other vile images of young children being raped and molested (and certain statements he made on the day of his arrest) which demonstrate a clear sexual interest in young children. Indeed, perhaps the only mitigating factor in this case is the absence of evidence that the defendant distributed the child pornography that he produced.

Regarding any suggestion that his discovery of child pornography was inadvertent or that he disliked sadomasochistic child pornography, the forensic analysis of his laptop computer revealed not only his use of numerous search terms consistent with searches for child pornography depicting very young children, including children the same age as (and even younger than) his contact victim, but also his use of terms consistent with searches for hard core child pornography and searches that one would expect to result in the receipt of images depicting sadistic acts.[1]

Notably, the defendant had some proficiency in computers and

_____

[1]  The United States intends to introduce a document setting forth search terms used by the defendant.

computer programs, including a relevant degree (as noted by USPO
Mike Sheffield in response to the defendant's objection to a five
vs. two point enhancement for distribution).  As the transcript of
interview previously submitted to the Court reveals, when he was
interviewed by the investigators, the defendant discussed his
computer knowledge and his use of peer-to-peer programs.  While
claiming that he did not intend to share his files, he stated "...
I probably should've ... after downloading it, moved to a different
folder so it's not constantly being shared" although he thought it
was going to a default folder.  See Transcript of Interview at pp.
16-17.  He further claimed he did not like to share his folder but
acknowledged that he was but meant to turn off sharing; he also
talked about the types of search terms he claimed to have used,
including "rape" and "sex" and "little."  Id. at 20; 26-29. He
repeated his denial of his intent to share and claimed that he
tried to stop certain downloading from him.

     Regarding the defendant's contact offenses, the defendant
admitted that he researched the risk that his sexual acts with the
child might pose stating that "after the first time, I was
concerned because I realized what I did and I was hopin' that would
have been the only day that I snapped and did somethin' like that."
Id. at 104.  He proceeded to engage in similar acts thereafter.

     The Need for the Sentence to Reflect the Seriousness of the
     Offense, to Promote Respect for the Law, and to Provide Just
     Punishment

     As set forth previously, the conduct by the defendant is

**87**

especially reprehensible and created a risk of further physical harm (in addition to the harm described in the victim impact statement submitted by the mother). While the defendant seeks to convince this Court that a lesser sentence than what the Guidelines advise should be sufficient but not greater than necessary, the sentence in this case must reflect the seriousness of his offenses, promote respect for the law, and to provide just punishment. A Guidelines sentence is warranted in this case even though such a sentence is tantamount to a life sentence.

The goals set forth under 18 U.S.C. § 3553(a)(2)(A) embodies the "just desserts" concept and "carries the need for retribution, the need to make the punishment fit the crime, and the need not just to punish but to punish justly." <u>United States v. Irey</u>, 612 F.3d 1160, 1206 (11th Cir. 2010)(en banc). A longer sentence is warranted the more serious the conduct. <u>See</u> <u>id</u>. The Eleventh Circuit further noted that the less it takes to have the statutory minimum imposed, the hight the sentence should be for much worse conduct. <u>Id</u>. at 1209. A single image depicting the lascivious exhibition of a 17-year old minor would require a 15-year sentence. The present case of course involves much more serious conduct and thus should result in a much more serious sentence - one that would be sufficient to meet the goals of sentencing, including justly punishing the defendant considering the scope of his conduct.

<u>The Need for the Sentence to Accord General and Specific Deterrence</u>[2]

The more serious the crime, "the more important it is to send a strong and clear message that will deter others." <u>Irey</u> at 1212. Regarding any suggestion that counseling and strict supervised release conditions make recidivism unlikely, it should be noted that sex offenders often fail to completer their treatment programs and have high rates of dropping out or expulsion. <u>See</u> <u>id</u>. at 1215. Moreover the Supreme Court has found that sex offenders are much more likely than any other type of offender to be rearrested for rape or sexual assault. <u>See</u> <u>id</u>. (citations omitted).

<u>The Need to Avoid Unwarranted Disparities</u>

In its prior submission, the United States set forth examples of sentences consistent with the sentence the United States believes is merited in this case. Two other examples of significant sentences in this district include <u>United States v.</u>

---

[2] Regarding the deterrence article attached to the defendant's sentencing memorandum, it should be noted that the article appears to have little, if any, application in the context of sentencing sex offenders who are known to be a recidivism risk. The article discusses, among other things, the fact that half of the state prisoners were under the influence of drugs or alcohol at the time of their arrests and thus are unlikely to be deterred by the certainty or severity of punishment. Further noted are observations and studies relating to: 1) much less serious offenses than sex offenses; comparisons of 2.5 year sentences to 1-year sentences (clearly inapplicable in this case); and 3) research allegedly showing that "lower-risk offenders" being "more negatively affected by incarceration." Regarding the observation that "in order for sanctions to deter, potential offenders must be aware of sanction risks and consequences," many sex offenders are educated and well aware of the illegality and potential consequences of their crimes.

<u>Young</u>, Criminal No. 1:09CR00023 (420 months) and <u>United States v.</u>
<u>Gibson</u>, Criminal No. 1:06CR53 (540 months).

Regarding the two cases cited by the defendant in his
memorandum, <u>United States v. Crandon</u>, 173 F.3d 122 (3d Cir. 1999)
and <u>United States v. Irey</u>, *supra*, the United States notes the
following:

The offenses in the <u>Crandon</u> case occurred in 1996. At that
time, production of child pornography carried no mandatory minimum
sentence and was punished by up to 10 years of imprisonment.
Likewise, receipt of child pornography, the offense for which
Crandon was convicted, carried the same statutory penalty. (The
Child Pornography Prevention Act of 1996 changed the penalty for
production to a range of imprisonment between 10 and 20 years. The
statutory maximum penalty for receipt was increased to 15 years but
there was still no mandatory minimum sentence). The Guidelines
were also lower for these offenses in 1996. The base offense level
for an offense calculated under U.S.S.G. §2G2.1, as set forth in
the Sentencing Guidelines Manual (and effective November 1995) set
forth a base offense level of 25; a two-level enhancement if the
victim was between 12 and 16-years old (as was the <u>Crandon</u> victim)
and a two-level increase if the victim was in the care or custody
of the defendant (likely inapplicable in the <u>Crandon</u> case). Thus,
it appears that the sentence imposed in that case may well have
been within the Guidelines range. However, while that case also
involved the repeated exploitation of a minor, the facts in <u>Crandon</u>

**90**

are distinguishable.  Among other things, the victim in that case
was, at age 14, significantly older than the vulnerable 4-year old
in the present case.  Plus, there is no mention in the <u>Crandon</u> case
of any medical risk to the victim.

Regarding the <u>Irey</u> case, the defendant, who also engaged in
repeated, unthinkable, and reprehensible conduct was charged in a
single count, the maximum sentence for which was 30 years.  The
Eleventh  Circuit,  sitting  *en  banc*,  made  clear  its  strong
disagreement with the district court's original sentence, finding
that "no downward variance ... is reasonable in this case."  612
F.3d at 1222.  Indeed, a reading of the opinion as a whole leaves
the impression that the Eleventh Circuit may well have thought a
higher sentence than that allowed by the statutory maximum in that
case would have been warranted.  Defendant Irey was apparently 50-
years old at the time of his sentencing and the opinion makes clear
that his advanced age at the time of release did not justify a
shorter sentence.

Finally, it should be noted that the Federal Public Defender
routinely points out during sentencing proceedings any downward
variances imposed or leniency accorded in child pornography cases
in an attempt to justify variances in other cases.  Each case must
of course be evaluated on its own merits but it is important for a
case involving especially egregious conduct to receive a sentence
that acknowledges the scope of this conduct.

<u>Defendant's Other Child Pornography Crimes Justify a
Significant Sentence</u>.

As set forth in the United States' first sentencing
memorandum, the non-production crimes with which the defendant is
charged should also demand a substantial sentence.  The Fourth
Circuit has not rejected the validity of the Guideline used to
calculate non-production offenses.  Indeed, the Fourth Circuit has
noted that Congress views child pornography offenses as "serious
offenses deserving serious sanctions."  <u>See</u> <u>United States v.
Morace</u>, 594 F.3d 340, 347 (4th Cir. 2010), *cert. denied,* 131 S.Ct.
307 (2010).  Victims depicted in the defendant's images have
suffered abuse and trauma not only from the perpetrators of the
actual abuse but also by the knowledge and fact that people like
the defendant sexually enjoy images of these children during their
worst moments.  The victims and their parents continue to feel the
pain associated with the prior abuse as well as the knowledge that
their images are being widely traded.  They believe that child
pornography traffickers should be held fully accountable.  The
victim impact statements that were prepared by the children and/or
family members for some of the series of images with identified
victims that were collected by the defendant drive this point home.
The images he downloaded and made available for others to download
are not "just pictures."  Rather, each depicts a horrific crime
scene which has been memorialized and shared by people like the
defendant who are sexually aroused by children being molested and
traumatized.

Distribution Enhancement

Defendant agrees that his conduct qualifies for a distribution
enhancement under the Guidelines but states that the two-point
default distribution enhancement should be applied. Section
2G2.2(b)(3)(B) provides for a five-level enhancement where an
offense of receipt of child pornography involves "[d]istribution
for the receipt, or expectation of receipt, of a thing of value,
but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B). The phrase
"distribution for the receipt, or expectation of receipt, of a
thing of value, but not for pecuniary gain" means "any transaction,
including bartering or other in-kind transaction, that is conducted
for a thing of value, but not for profit." Id. "Thing of value"
means "anything of valuable consideration." Id. The commentary
firmly establishes that "in a case involving the bartering of child
pornographic material, the 'thing of value' is the child
pornographic material received in exchange for other child
pornographic material ...." Id.

The cases discussing this particular enhancement almost always
arise where, as here, the defendant used a file-sharing system such
as Limewire to obtain child pornography. See, e.g., United States
v. Griffin, 482 F.3d 1008, 1011 (8th Cir. 2007) (defendant used
peer-to-peer file sharing system Kazaa); United States v. Ultsch,
578 F.3d 827, 829-30 (8th Cir. 2009) (defendant used peer-to-peer
filing sharing system Limewire); United States v. Geiner, 498 F.3d
1104, 1111 (10th Cir. 2007) (defendant used peer-to-peer file

**93**

sharing system).

Various courts, including the Courts of Appeals in the Eighth Circuit, Tenth Circuit and the Eleventh Circuit have issued numerous opinions analyzing this particular distribution enhancement. See, e.g., Griffin, 482 F.3d at 1011; Ultsch, 578 F.3d at 829-30; Geiner, 498 F.3d at 1111; United States v. Mcelroy, 2009 WL 3807157, *2 (11th Cir. Nov. 16, 2009). In general, the cases uniformly conclude that whether a defendant qualifies for the five-level enhancement "must be decided on a case-by-case basis, with the government bearing the burden of proving that the defendant 'expected to receive a thing of value – child pornography – when he used the file-sharing network to distribute and access child pornography files.'" United States v. Stults, 575 F.3d 834, 849 (8th Cir. 2009); United States v. Bastian, 603 F.3d 460, 466 (8th Cir. 2010); see also Geiner, 498 F.3d at 1111 (concluding that "whether a defendant distributes files containing child pornography for the receipt, or expectation of receipt, of other files available on the network is a question of fact properly resolved on a case-by-case basis by the sentencing court."). A review of the Eighth Circuit cases shows that that court has generously upheld the five-point enhancement but has found the enhancement not to be applicable in situations where a defendant did not download the program or there was little evidence of knowledge of how a peer-to-peer program worked. See United States v. Durham, 618 F.3d 921 (8th Cir. 2010). The Tenth Circuit in Geiner, supra, found appropriate

a five-level enhancement based on the expectation of faster downloads but not based on expectation of more child pornography. The Eleventh Circuit, citing <u>Durham</u> and <u>Geiner</u> concluded that knowledge that other users could access a defendant's files was insufficient to show that use of a share feature was done with the expectation of receiving child pornography. <u>See</u> <u>United States v. Vadnais</u>, 667 F.3d 1206, 1209-10 (11th Cir. 2012); <u>see also</u> <u>United States v. Spriggs</u>, 666 F.3d 1284, 1287-89 (11th Cir. 2012) (acknowledging Eighth Circuit's different view); <u>but cf.</u> <u>United States v. Cote</u>, 482 Fed.Appx. 373 (11th Cir. 2011)(unpublished) and <u>United States v. Bailey</u>, 2012 WL 5199249 (11th Cir. 2012) (unpublished)(both finding, in Gigatribe cases, that no explicit *quid pro quo* required). As set forth more fully below, the Fourth Circuit has endorsed the view taken by the Eighth Circuit.

The Eighth Circuit noted that the government can establish a defendant's expectation to receive things of value in two ways:

> The government can meet its burden with direct evidence, such as an admission by the defendant that he knew he was using a file-sharing network, and could download files from others who could download files from him. The government can also meet its burden with indirect evidence such as the defendant's technical sophistication in computers, inferring that he knew that by using a filesharing network, he could download files from others who could also access his files.

<u>Bastian</u>, 603 F.3d at 466. In the instant case, it is undisputed that the defendant used a peer-to-peer program to distribute and receive images of child pornography. Further, the defendant admitted using ARES (and that he previously used LimeWire), and

admitted knowing that he was sharing files, even though he suggested that he did not intend to do so. He also acknowledged having a computer degree and would thus be expected to have some sophistication in the usage of computers and computer programs.

While in this case, the defendant faces the identical guidelines range whether this Court applies a five- or two-point enhancement for distribution under 2G2.2(b), the PSR has recommended a five-point enhancement, citing, in its response to a defense objection, United States v. Strieper, 666 F.3d 288 (4th Cir. 2012). In Strieper, the Fourth Circuit affirmed, under a plain error analysis, the application of a five-point enhancement. In so doing, the Fourth Circuit acknowledged that there was a circuit split but found that a district court does not commit plain error by following another circuit's reasoning. Id. at 295. The Fourth Circuit acknowledged that a prior holding United States v. Layton, 564 F.3d 330, cert. denied, 130 S.Ct. 290 (2009) had affirmed the application of the two-level enhancement but stated that it had "yet to address whether a district court may appropriately apply a five-level enhancement for sharing files through [a Peer-to-Peer] network." Id. There is nothing set forth in the Layton case, which involved a conviction for possession of child pornography, that suggests that a five-point enhancement was proposed. The district court in Strieper adopted the Eighth Circuit's approach. (Notably, the Layton court cited Griffin too).

In light of the above, it seems apparent that while cases have diverged on this issue, the Fourth Circuit appears to allow for a five-level enhancement in facts similar to those found in the present case.

Respectfully submitted,


/s/Nancy S. Healey
Nancy S. Healey
Assistant United States Attorney


### CERTIFICATE

I hereby certify that on 11th day of February 2013, the forgoing Government's Supplemental Sentencing Memorandum was electronically filed using CM/ECF system.  This system  will send notification of such filing to Joel Hoppe, Counsel for the defendant.


/s/Nancy S. Healey

1

```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF VIRGINIA
 2                   Harrisonburg Division

 3

 4   UNITED STATES OF AMERICA,      Criminal No. 5:12cr00026

 5              vs.                 Harrisonburg, Virginia

 6   JAMES ROBERT COBLER,

 7              Defendant.    February 14, 2013

 8         TRANSCRIPT OF SENTENCING HEARING
      BEFORE THE HONORABLE MICHAEL F. URBANSKI
 9           UNITED STATES DISTRICT JUDGE

10
     APPEARANCES:
11
     For the United States:
12                              U.S. Attorney's Office
                                NANCY HEALEY
13                              255 W. Main St.
                                Charlottesville, VA  22902
14

15   For the Defendant:
                                Federal Public Defender's
16                              Offc.
                                JOEL HOPPE
17                              401 E. Market St.
                                Charlottesville, VA  22902
18
     Court Reporter:            Sonia R. Ferris, RPR
19                              U.S. Court Reporter
                                255 W. Main St. Room 304
20                              Charlottesville, VA 22902
                                434-296-9284
21

22

23

24

25   Proceedings recorded by mechanical stenography;
     transcript produced by computer.
```

2

```
1              THE COURT:  Good morning.
2              Please call the case.
3              THE CLERK:  Yes, Your Honor.
4              This is Criminal Action No. 5:12cr00026,
5   United States of America vs. James Robert Cobler.
6              THE COURT:  Good morning, Ms. Healey.
7              Good morning, Mr. Hoppe.
8              We're here today for sentencing in this
9   case.
10              Is the United States ready to proceed?
11              MS. HEALEY:  Yes, Your Honor.
12              If I recall correctly, has the Court
13   accepted the guilty plea yet?
14              THE COURT:  No.  I took it under advisement.
15   I need to do that first.
16              Is the defendant ready to proceed?
17              MR. HOPPE:  Yes, sir.
18              THE COURT:  Here's where we stand in this
19   case.
20              The magistrate judge heard the Rule 11
21   colloquy and issued a Report and Recommendation on the
22   fourth of December, 2012, recommending the defendant's
23   pleas of guilty to Counts 1, 2, 3, 4, and 5 be accepted.
24   There were no objections to the Report and
25   Recommendation.
```

3

```
 1              The Court entered an order.  After reviewing
 2    the R&R, the Court entered an order on January 4, 2013,
 3    which I did a couple things. I corrected a couple
 4    typographical errors in the Report and Recommendation
 5    reflecting the specific charges in Counts 4 and 5 of the
 6    indictment and I amended the report to reflect those
 7    clerical errors.
 8              I also thought it necessary at the Rule 11
 9    hearing to let Mr. Cobler know a couple different
10    things.
11              One.  The maximum term of supervised release
12    in this case is a maximum term of life of supervised
13    release.  If indeed you were released from prison in
14    this case, that the Court could sentence you up to a
15    period of supervised release of up to life.  That's just
16    the way it is with the nature of these charges.
17              The other thing I thought, Mr. Cobler, it
18    was important for the Court to make sure you were clear
19    on, is that any term of supervised release has
20    associated with it very rigorous supervised release
21    conditions.  Those conditions are set forth in the
22    pre-sentence report and I think it's in Section D of the
23    pre-sentence report in this case.  Those are very
24    rigorous conditions of supervised release, imposing
25    significant limitations on anyone's life after they get
```

4

1    out of prison, associated with these charges.

2            Mr. Hoppe, have you gone over those terms of

3    supervised release set forth in Section D of the

4    pre-sentence report, with your client?

5            MR. HOPPE:  Yes, sir.

6            THE COURT:  Those conditions, Mr. Cobler,

7    include such things as you cannot associate with

8    children; you can't be alone with children; you can't be

9    in places where children are likely to be without

10   approval of probation; you can't be unsupervised with

11   children; you cannot view any sort of computer

12   information relating to children; anything like that.

13           Have you gone over all those conditions, Mr.

14   Cobler, with your lawyer?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Do you understand that the term

17   of supervised release in this case would be up to life?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Do you understand that if you

20   are released from prison, in connection with this case,

21   there would be rigorous sex offender terms of

22   supervision and included in that, you would be required

23   to register as a sex offender and you would be subject

24   to the Sex Offender Notification Act and the Adam Walsh

25   Act and all of these conditions that would be required

1  by that.

2          Have you been over all that with your

3  lawyer? Do you understand all that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Understanding all those

6  conditions and everything you went over with the

7  magistrate judge at the time of the guilty plea hearing,

8  is it still your intention to plead guilty to Counts 1,

9  2, 3, 4 and 5 of this indictment, without a plea

10  agreement?

11          THE DEFENDANT:  Yes.

12          THE COURT:  The Court accepts the plea of

13  guilty based on the information set forth in the Report

14  and Recommendation and further discussion we've had

15  today and after me advising you about the supervised

16  release term and conditions, the clerical corrections

17  I've made in the order of January 4th, the Court accepts

18  the plea of guilty to Counts 1, 2, 3, 4 and 5.

19          I find you are fully competent and capable

20  of entering an informed plea. You're aware of the nature

21  of the charges and the consequences of your plea.  Your

22  plea of guilty on all these counts, based on my review

23  of the Report and Recommendation and what I know about

24  this case, I find that you are fully capable of entering

25  an informed plea.  You're aware of the nature of the

6

1  charges and that the plea of guilty as to Counts 1, 2,

2  3, 4 and 5 is based on a factual basis consisting of the

3  essential elements of the offense in this case, as set

4  forth in the Information that was received in the

5  statement of facts at the Rule 11 hearing.

6          So I find you guilty of Counts 1, 2, 3, 4

7  and 5 of the charges in this indictment.

8          Now, anything further I need to do with

9  regard to the acceptance of the guilty plea, Ms. Healey?

10         MS. HEALEY:  No, Your Honor, but could I put

11  one thing on the record as to the government's position

12  on whether the Court is saying that in future pleas in

13  sex offender cases, if the Court is requiring that a

14  defendant be notified of the conditions?

15         THE COURT:  You can say what you want.

16         MS. HEALEY:  I understand.  I know we may

17  have a difference of opinion.  I'm just worried about

18  the Court setting a precedent that is unnecessary or --

19         THE COURT:  Rule 11 says that the defendant

20  is required to be notified of the maximum term of

21  imprisonment.

22         MS. HEALEY:  Yes.

23         THE COURT:  The maximum term of supervised

24  release.

25         MS. HEALEY:  That's correct.

**103**

7

1        THE COURT:  And the magistrate judge in this

2   case did not tell the defendant that the maximum term of

3   supervised release is life.  Okay?

4        MS. HEALEY:  Okay.

5        THE COURT:  It will be my practice when I do

6   Rule 11 colloquies, to advise defendants in sex offender

7   cases, that they will have terms of supervised release

8   that are rather rigorous.  The reason I'm doing -- the

9   rule doesn't say that I have to -- that I have to notify

10  defendants when I'm doing Rule 11 colloquy of how

11  rigorous the terms of supervised release are in sex

12  offender cases. But you know, there's been a bunch of

13  case law recently that talks about how rigorous these

14  conditions are and these conditions are, folks who are

15  charged in sex offender crimes, rigorous. I believe that

16  someone when they're entering a guilty plea, I want to

17  know -- I want to make sure that they know what they're

18  getting into and I believe the rigorous terms of

19  supervised release is part of what they're getting into.

20  So when I'm doing a Rule 11 colloquy in a case like this

21  that requires sex offender terms and conditions of

22  release, I'm going to go over it at the Rule 11 colloquy

23  and I'm going to be asking the United States to explain

24  those.

25        Maybe that's belt and suspenders. I'm not

1  suggesting the rule requires it.  That's just going to

2  be my practice.

3          MS. HEALEY:  Your Honor, to the extent the

4  magistrate -- I was not here for the guilty plea.  To

5  the extent that the maximum and mandatory minimum term

6  of five years of supervised release --

7          THE COURT:  It's five years to life.

8          MS. HEALEY:  It is five years to life and I

9  have no problem with those terms. I just wanted to make

10 sure the record is clear there's no case law that says

11 we have to give notice of conditions because I think

12 that would put the government and probation in a tenuous

13 position.  So for example, if a defendant is out on

14 supervised release and all of a sudden his terms are

15 changed, does that mean a defendant would necessarily

16 have a right to revisit his plea later? So I just wanted

17 to put it on the record.  I've searched the case law --

18         THE COURT:  No, I don't think so, but the

19 rule requires he be notified of the term of supervised

20 release.  That wasn't done.  I think very often in these

21 Rule 11 colloquies when they're done, and I had a couple

22 yesterday and I had to fix it, somebody said "and a term

23 of supervised release." I think it's incumbent upon the

24 Court, the rule says you have to tell them what the term

25 is.  So that's fine.

9

1           But regard to the sex offender conditions,

2    it's important to me that when I'm accepting somebody's

3    guilty plea that they know that there are rigorous sex

4    offender conditions associated with the term of

5    supervised release.  That's my only point. I'm not

6    saying that the law requires it.  I'm saying that when

7    I'm doing it, before I accept somebody's plea, I want to

8    make sure they know what they're getting into. That's

9    all.

10           MS. HEALEY:  I will say, whenever we have a

11   defendant who signs a plea agreement we frequently put

12   in suggested conditions of supervised release or agreed

13   upon conditions of supervised release.

14           THE COURT:  It's in the plea agreement in

15   this case -- no, no, there's no plea agreement in this

16   case. So it's not there, but it is in the pre-sentence

17   report.

18           MS. HEALEY: Correct.  And we always put in

19   also a Megan's Law provision that makes clear that a

20   defendant is on notice he has to register potentially

21   for the rest of his life as a sex offender under the Sex

22   Offender Notification Act.

23           THE COURT:  Ms. Healey, these conditions of

24   supervised release are rigorous.  They're rigorous for a

25   reason.  I'm not being critical of the rigor of them.

10

1   They're rigorous for a reason. I'm not going to impose a

2   term of supervised release that I don't believe is

3   necessary.  But I just think that a defendant in a court

4   of law, when pleading guilty, needs to know what they're

5   agreeing to and that's my only point in doing what I've

6   done.  I'm not saying what the magistrate judge did was

7   wrong. I'm just -- I think when I'm doing them, I just

8   want to make sure they know what they're getting into.

9              Anything else before we get into the

10  sentencing hearing?

11             MR. HOPPE:  No, Judge.

12             THE COURT:  Thank you.

13             Now, Mr. Cobler, do you remain fully

14  satisfied with the advice and representation given to

15  you by your counsel in this case?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Now, you have pled guilty to --

18  let's just recap where we are in connection with this

19  case.

20             You have pled guilty to five counts of this

21  indictment and the Court has accepted your guilty plea.

22  There is no plea agreement in this case.

23             I believe also Counts 1, 2, 3, 4 and 5 --

24  let me just go over them briefly.

25             Counts 1 and 2 are the same charge, but on

**107**

separate occasions.  Those are violations of 2251(A) and
2251(E) and those are the defendant employed, used,
persuaded, induced, enticed a minor boy, who was then
approximately four years old, to engage in sexually
explicitly conduct, including oral and genital conduct
with the defendant and masturbation of the minor boy by
the defendant for the purpose of producing a visual
depiction of such conduct, namely a video.  That's Count
1.

Count 2 is a little bit different.  It's a
separate occasion and it's the same language; employ,
use, persuade, induce, entice a minor boy, who was then
approximately four years old, to engage in sexually
explicit conduct, including oral-genital contact and
lascivious exhibition of the minor's genitals or pubic
area for the purpose of producing one or more visual
depictions.  That's Count 2.

Count 3 is the same charge, 2251(a) and
2151(e), on a separate occasion, engaging in conduct,
but in this case, without touching.  I think that's the
difference with regard to Count 3.

Count 4 charges a different crime,
2252(a)(1) and 2252(b)(1) and that is knowingly
transport, using any means or facility of interstate or
foreign commerce, of one or more visual depictions,

1  namely digital images, involving the use of a minor

2  engaging in sexually explicit conduct.

3              Count 5 charges possession of child

4  pornography, in essence.

5              Those are the five charges in the case.

6  We'll go over those in greater detail in a minute.

7              With regard to the pre-sentence report in

8  this case, as I understand it, the defendant has filed

9  one objection here to the pre-sentence report in this

10  case and that's in connection with the five-point

11  enhancement on -- with regard to whether or not there

12  was any expectation of receipt of a thing of value;

13  correct?

14              MR. HOPPE:  Yes, sir.

15              THE COURT:  Now, as I understand from

16  probation, from reviewing the pre-sentence report, that

17  particular objection is not going to have any impact

18  ultimately on the guidelines calculation in this case.

19              Is that correct?

20              MR. HOPPE:  That's correct, Judge.

21              THE COURT:  Regardless of that, would you

22  like to argue the issue?

23              MR. HOPPE:  Judge, really briefly.

24              The government and I have talked about just

25  a proffer.

13

1          THE COURT:  The Court believes the Court

2   needed to hear some evidence on this issue as to whether

3   or not -- whether the five-point or the two points apply

4   because -- let's hear what you both have to say and I

5   have some questions.

6          Go ahead, Mr. Hoppe.

7          You can sit down, Mr. Cobler.

8          MR. HOPPE:  Judge, the issue is whether the

9   distribution was for a thing of value and I think the

10  facts show --

11         THE COURT:  For a thing of value or with the

12  expectation of receiving a thing of value is what the

13  guideline says.

14         MR. HOPPE:  Right.

15         Judge, I think the facts show in this case

16  that Mr. Cobler signed up for a peer-to-peer network,

17  Aries, and that this peer-to-peer network allows people

18  to share information.

19         We agree that distribution enhancement

20  applies. We disagree that it was for a thing of value or

21  for the expectation.

22         Judge, the cases on it, I think, come down

23  in a couple different ways.  The Eighth Circuit says if

24  anyone signs up for peer-to-peer --

25         THE COURT:  That's Griffin.

1           MR. HOPPE:  Right, right.

2           They automatically get the five-level

3    enhancement.

4           THE COURT:  There's the McVey case out of

5    the Eastern District.

6           MR. HOPPE:  Eastern District, right, a 2007

7    case.

8           THE COURT:  Says the same thing.

9           MR. HOPPE:  Essentially.

10          THE COURT:  Judge Smith's case.

11          MR. HOPPE:  Then there's Spriggs from the

12   Eleventh Circuit, sort of at the other end of the

13   spectrum, and that's what I've cited in my sentencing

14   memo.

15          Then there are some cases in the middle.

16   The Tenth Circuit -- and there's another District Court

17   of Maine case called Rogers that I think -- Giner is in

18   the Tenth Circuit and Rogers and I think the Eleventh

19   Circuit would largely go along with this, too. It's not

20   just participating in peer-to-peer. There has to be some

21   additional benefit by sharing that makes something

22   distribution for an expectation of getting something

23   else.

24          THE COURT:  Isn't the benefit in this case

25   the receipt of -- the expectation of value is the

1    receipt of other pictures, other images?

2         MR. HOPPE:  Judge, I think that's what the

3    Eighth Circuit says and that's sort of the most

4    simplistic view of it.  I think all the other courts

5    that look at it say there has to be something more.  I

6    think a close reading of what the actual, the language

7    of the guideline, it matters.  I think the Tenth Circuit

8    and then the District Court in Maine say, these

9    defendants sign up for the peer-to-peer network with the

10   expectation of getting things.  So in actual, they're

11   signing up and then they have access to everybody else's

12   stuff, whether they share or not.  They can disable

13   sharing and still have access, so they're not

14   distributing.

15         THE COURT:  What's the evidence in this

16   case? Did this defendant disable sharing?

17         MR. HOPPE:  No, he didn't.

18         THE COURT:  Did this defendant share?

19         MR. HOPPE:  He did, and he knew that he

20   could share.  So we're not in disagreement about that.

21   But I think that that doesn't matter as far as the two

22   or the five-level enhancement because his sharing didn't

23   give him any additional access to anything.  It didn't

24   increase his download speed.  There was no benefit, no

25   additional benefit to the sharing.  He got everything

1  just by signing up on the peer-to-peer network.  So it's

2  really -- I think the Eighth Circuit, you almost have to

3  rewrite the guideline and say sign up for a peer-to-peer

4  network with the expectation of getting something or for

5  getting something and that's quite simply not what the

6  guideline says. That's where I think the Tenth Circuit

7  and District Court in Maine and Rogers would decide and

8  certainly the Eleventh Circuit, too.  That's the

9  distinction I would draw, Your Honor.

10          THE COURT:  Let's hear what the United

11  States would say and perhaps I may need to hear some

12  evidence on this issue.

13          MS. HEALEY:  Mr. Hoppe and I did talk about

14  trying to proffer some evidence to streamline things. I

15  don't think he has any problem with me proffering what I

16  know.  I have had extensive discussion with my

17  investigators who are sitting here.

18          I had thought about bringing in the forensic

19  examiner, although he's with Secret Service and was tied

20  up with other matters, things that happening this week

21  in Washington, to some extent.

22          I don't think there's any dispute as to the

23  facts in this case, so if the Court will accept a

24  proffer and I will ask the investigators sitting here,

25  Investigator Galbreath and Investigator Wagner, if I

```
 1   misstate the evidence or if Mr. Hoppe hears me misstate
 2   anything --
 3              THE COURT:  Mr. Hoppe, do you have any
 4   objection to a proffer?
 5              MR. HOPPE:  No, Judge.
 6              I think what we've each written in our
 7   sentencing memos, the facts are largely the same.  It's
 8   just how they apply to the guidelines.
 9              THE COURT:  If you hear anything you have
10   any objection to, just let me know.
11              Ms. Healey?
12              MS. HEALEY:  First of all, the forensic exam
13   revealed he not only used Aries, which is the program
14   that was used that Investigator Wagner was able to
15   download from the defendant, but also he had installed
16   and previously used Limewire, which is another
17   peer-to-peer program on a different network.
18              I think -- I've done a lot of reading of
19   these cases and I think it's an interesting thing.  I've
20   dealt with a lot of cases that have to deal with
21   peer-to-peer and a lot of cases recognize a peer-to-peer
22   program is intended for file sharing.  The bottom line
23   is they're intended for file sharing.  People know
24   they're going to share files.  I think the McVey case
25   out of the Eastern District of Virginia, I think that's
```

```
 1   the case Your Honor was referring to, talks about it
 2   being known to be a file-sharing network.
 3              What we do know --
 4              THE COURT:  What did this defendant do?
 5              MS. HEALEY:  We do know that he had images
 6   in his shared file.  We know that in a couple of ways.
 7   The first way we know that is because in April of last
 8   year, Investigator Wagner was able to download three
 9   particular files. I think two were in one session.  Then
10   a very brief time later, one was in the next one or the
11   other way around.  But he downloaded a total of three
12   child pornography images from the shared folder.  I have
13   for the Court actually a copy of the images that were in
14   his shared folder.  He had numerous images in his shared
15   folder, but that was --
16              Let me make sure I'm correct on this.
17              (Counsel conferred with the case agent).
18              Your Honor, if I may have this marked as
19   Government Exhibit 1. This is a copy of --
20              MR. HOPPE:  Judge, there's no dispute that
21   he had the stuff in the shared folder. He knew it was
22   being shared.  It's really just a legal question at this
23   point.  I think the facts are not in dispute.  He knew
24   how it worked.  The question is, was the distribution
25   that we don't deny happened, was it for something or
```

1  not?

2           I don't think there's any evidence there's

3  any additional benefit other than what he was able to

4  download by virtue of signing up for the peer-to-peer

5  network.

6           MS. HEALEY:  If I can continue, Mr. Hoppe

7  and I have spoken about this on a number of occasions.

8  I've queried my colleagues across the country. I don't

9  know if the Court knows, but I'm the Project Safe Child

10 Coordinator in this district, so I have access to all

11 the prosecutors who do these cases across the country. I

12 put the query out there about what they do in cases

13 where they're trying to determine whether there should

14 be a five-point or a two-point enhancement under

15 2G2.2(b) whatever. I just wanted to put that out there.

16           This is an interesting issue because there

17 is certainly a circuit split.  I know Your Honor was

18 asking what evidence we have.  We have the shared

19 images, the images in his shared file folder.

20           THE COURT:  If he downloaded images through

21 Aries or Limewire that are child pornographic images,

22 why aren't those images a thing of value that he

23 received?

24           MS. HEALEY:  I think what Mr. Hoppe is

25 trying to tell the Court, and I agree with him, other

1    courts have looked at this differently, which is why I

2    just want to explain.  They are a thing of value.  I

3    think the --

4             THE COURT:  That's the whole point of

5    getting on this peer-to-peer file sharing, so you can

6    swap child pornography.

7             MS. HEALEY:  Sure. I think that's what these

8    guys want to do.  Some guys are not that interested in

9    being generous to others. They definitely want to

10   receive the images, but they might not care so much

11   about other people getting images.

12            THE COURT:  This defendant though had both

13   sent images out and received images.

14            MS. HEALEY:  Yes, yes.

15            If the Court was able to review the

16   transcripts of interview that was attached to the

17   government's original sentencing memorandum, there were

18   certain statements he made about the knowledge that he

19   had concerning the images in his shared folder.  If you

20   believe part of what the defendant said, the defendant

21   indicated that he didn't -- he wanted to move them, he

22   should have moved them.  However, the fact is, he knew

23   people were downloading from him and he knew that he

24   hadn't moved all of them.  So combine that with the fact

25   he does have a two-year degree from Lord Fairfax in some

1  type of computer field.  He had some knowledge about how

2  computer systems work.

3          However, I think what Mr. Hoppe is saying,

4  it depends what circuit you're in.  I think in the

5  Streeper case --

6          THE COURT:  Streeper is simply a clear error

7  case.  Streeper doesn't get us there.  Plain error case.

8  Streeper says there's a circuit split and we hadn't, you

9  know -- we're not going to reverse on this basis.

10          MS. HEALEY:  I think they said also you

11  could not find plain error where there was a circuit

12  split and a District Court decided to go with one of the

13  circuits or one of the sides, and obviously, as this

14  Court knows, both the Streeper case and Layton case cite

15  to the Griffin case. I've looked at most of the Eighth

16  Circuit cases and I don't know that the Eighth Circuit

17  would agree it's an automatic enhancement, but I think

18  under Eighth Circuit reasoning, they would find this

19  case qualified for a five-point enhancement.

20          On the other hand, since the Fourth Circuit

21  hasn't really written on this, the only other case

22  they've really discussed the issue was Layton.  I

23  reached out to that AUSA and that AUSA said, I don't

24  think he even thought about asking for the five points,

25  so that issue didn't come up. It was just deciding

**118**

22

```
 1   whether the two-point enhancement was appropriate.
 2             I agree with Mr. Hoppe.  There are other
 3   circuits that have decided on facts such as ours.  We
 4   may not have shown enough to qualify for that five-point
 5   enhancement.  So there is a circuit split and I want to
 6   be frank about that to the Court.  I think the Court can
 7   adopt the Eighth Circuit's approach since the Fourth
 8   Circuit certainly hasn't written anything that would be
 9   binding on any Court at this point.  It has acknowledged
10   that it was okay for the District Court in the Eastern
11   District of Virginia to accept a five-point enhancement.
12             In that case, as I understand, Mr. Streeper
13   was an IT specialist and was sharing files.  He also had
14   a whole other -- a lot of other things going on.  That
15   AUSA has told me in other cases unless they get the
16   evidence, there's significant evidence that shows they
17   know they're sharing or you have a sophisticated
18   defendant, that type of thing, they haven't always asked
19   for the five points anymore and neither has their
20   probation office.
21             I just want to be full and clear on this,
22   Your Honor. I don't think it would be error for this
23   Court to accept that that's a five-point, as Mr.
24   Sheffield said.  But there is a circuit split and there
25   is no binding decision right now in the Fourth Circuit
```

1    to force this Court to accept one way or the other what

2    happened.  But I agree with the premise that

3    file-sharing networks are for file sharing. The cases

4    that hold that you should not get a five-point, some of

5    them have almost gone as far as to say you almost need a

6    quid pro quo. So if somebody is trading online and says,

7    "hey, I'll show you mine if you show me mine" --

8              THE COURT:  Is there any evidence in this

9    case from the interviews or e-mail traffic involved in

10   this defendant of that sort, quid pro quo, that sort of

11   expectation of receipt of value?

12             MS. HEALEY:  There was no -- I have no

13   evidence that he was chatting with other people on the

14   peer-to-peer network.  I don't think you need a quid pro

15   quo. I think there's some wiggle room in there, but we

16   don't have evidence that he actually said, "I will show

17   you my files, you send me yours."

18             Depending on what program you use, some

19   programs basically you have the stuff going in a shared

20   file and it's like some of the cases have likened things

21   like Limewire to a self-serve gas station.  The owner of

22   the gas station may not even be present, but he knows

23   his commodity is up for grabs for anybody who wants to

24   take it.  So he may not know that a specific person

25   takes stuff.

1           So it's absolutely a file-sharing program.

2    The question is whether this Court wants to take the

3    Eighth Circuit's approach or the other circuits approach

4    and I just want to be clear.

5           THE COURT:  This case at the end of the day

6    --

7           MS. HEALEY:  It doesn't matter in this case.

8           THE COURT:  It doesn't matter.

9           MS. HEALEY:  That's correct.

10          He clearly searched for -- one of the things

11   I will put into evidence after we get over the part

12   about the objection is that I do have evidence that

13   Investigator Galbreath has showed me, that will show the

14   search terms this defendant inputted.  But that would be

15   to receive files, of course.

16          He knew other people were getting things

17   from him. The bottom line is, this Court has to make a

18   decision whether his computer knowledge, by virtue of

19   the fact he had a degree in computers, the fact he had

20   used not only Aries, but Limewire, whether those things

21   -- and the fact he knew the people were taking his files

22   in trade.

23          THE COURT:  Where's the evidence that he

24   knew that folks were taking his files?

25          MS. HEALEY:  In his statement.  He admitted

```
 1  it.  He claimed, and it's fairly early on in the
 2  statement, I think it's in the first quarter of his
 3  statement where he basically starts talking with his
 4  knowledge about how it worked and he said, "well, I
 5  should have moved them.  I meant to move them."  But he
 6  also said at the same time -- he was minimizing his
 7  conduct because he said, "I don't like pornography.  I
 8  had hoped there would be a virus created to remove all
 9  pornography from the Internet."  That would be
10  inconsistent with the evidence that we have that he
11  wanted child pornography.  We have very strong evidence
12  in this case he actively searched for child pornography
13  and some of the images and movies he had on his computer
14  were some of the worst. He had extremely hard core with
15  young children.
16            THE COURT:  That's the whole point.  He had
17  these images in his shared folder and he knows what a
18  shared folder means and he didn't move them out of there
19  and folks had access to them.
20            MS. HEALEY:  They did.
21            THE COURT:  He also downloaded child
22  pornography images by virtue of the same peer-to-peer
23  network.
24            MS. HEALEY:  Sure.
25            Some of the prosecutors or cases are
```

26

1    distinguishing some of the different types of programs.

2    So Limewire and Aries, you can get into this dialogue

3    and download files without knowing who you're getting

4    them from.  I don't know if the Court has heard of

5    Gigatribe, but Gigatribe is a little bit different

6    because you have to actually friend someone in order to

7    have access to their files.  So there is actually more

8    of a dialogue between users often or more of an active

9    role in enabling somebody to get to your files.  And

10   Gigatribe has a very "useful to law firm" chat function

11   where we find a lot of things where these guys are

12   talking about the images they're sharing.  Not so much

13   in Aries and Limewire. But the Court has I think

14   acknowledged, what we have here would be sufficient in

15   Eighth Circuit for sure.  Would it be sufficient in the

16   Eleventh Circuit or Tenth Circuit? I don't know.  Maybe

17   not.

18            I know that's not a satisfaction response,

19   but my duty as a prosecutor is to let the Court know

20   what I know about the cases where there's no clear

21   circuit precedence on a particular case.

22            THE COURT:  Why are you asking me to make

23   this decision if it doesn't matter? It doesn't matter.

24   In this case, his total offense level is a 43.  That's

25   whether the two-point enhancement applies or the

1  five-point enhancement applies. So why does it matter?

2            MS. HEALEY:  Because it is a legal issue

3  that has to do with the determination of the guidelines

4  and the Court has the responsibility of making sure the

5  guidelines are properly calculated.

6            The Court in this case may choose to punt on

7  this issue with the option of actually having this issue

8  come back in other cases that I'm sure this Court will

9  preside over that have to do with whether a five or a

10  two-point enhancement is appropriate.

11            THE COURT:  Mr. Hoppe, anything else you'd

12  like to say on this issue?

13            MR. HOPPE:  Judge, very briefly.

14            THE COURT:  Please.

15            MR. HOPPE:  He knew he was distributing.

16  The point of joining a peer-to-peer network is to access

17  other people's files and sometimes to share your own

18  files. He was distributing through this sort of passive

19  distribution.  Had he chosen not to, he would have been

20  able to access other people's files just the same.

21  There was no benefit to his distributing.  His rights to

22  access other people's files were not diminished or

23  enhanced by the distributing.  That's the distinction

24  I'm drawing.

25            THE COURT:  He didn't turn off the file

```
 1   sharing.  That was available, right?
 2               MR. HOPPE:  Judge, had he done that, then
 3   there would be no distribution enhancement.  If he had
 4   turned it off, then you get a zero in this column.
 5   Keeping it on, you get a two because you're
 6   distributing, but not getting anything additional for
 7   the distribution.
 8               THE COURT:  It doesn't say additional.  It
 9   says distribution for the receipt or expectation of
10   receipt of a thing of value.  He received child
11   pornography by use of the peer-to-peer and his child
12   pornography that was on his computer was available to be
13   shared by others.
14               MR. HOPPE:  But, Judge, it wasn't by virtue
15   of his distribution that he was able to access other
16   child pornography.  It was because he just signed up,
17   plain and simple, for peer-to-peer.  He could access
18   everybody's stuff once he signed up.  Had he signed up
19   and said "I'm not sharing," he could have accessed
20   everyone's. He did share and he still had the exact same
21   access. It was just the act of signing up for this type
22   of peer-to-peer.
23               THE COURT:  But he didn't just sign up.  He
24   downloaded and his were available.  It wasn't just like
25   he signed up and therefore -- I mean, he distributed.
```

1   All you're saying is there's no evidence in this case

2   that he said, "hey, I'll give you this, you give me

3   that;" right?

4              MR. HOPPE:  Right.

5              THE COURT:  That would be enough.

6              MR. HOPPE:  If there had been some sort of

7   quid pro quo -- the comments address that.  They say if

8   there was some sort of barter, I think that certainly

9   would qualify as distributing with the expectation or

10  for something of value.  The line I'm drawing is that

11  the act of distribution was not for something.  It was

12  just signing up was for something.

13             THE COURT:  The provision you're talking

14  about in the commentary is distribution for the receipt

15  or expectation of receipt of a thing of value.  But not

16  for pecuniary gain means any transaction including

17  bartering or any kind of transaction that's conducted

18  for a thing of value, but not for profit.

19             MS. HEALEY:  Judge, the Courts though have

20  been clear.  Most say it does not have to be a quid pro

21  quo, just to clarify that.  It's all over the place on

22  the cases, but it does also say you can use

23  circumstantial, not just direct evidence.

24             THE COURT:  It's an academic question in

25  this case.

1          MS. HEALEY:  Yes.

2          THE COURT:  The Court is going to apply the

3    five-point enhancement in this case.  The reason I'm

4    applying the five-point enhancement in this case, based

5    on the specific facts of this case, as he had these

6    images in his shared file.  He signed up for Aries and

7    Limewire.  He downloaded three child pornography images.

8    He knew it was there. He made it available.

9          I tend to agree with the Eighth Circuit.

10   The point of these file-sharing programs are to make

11   your child pornography available and have it -- others

12   access yours.  There's the expectation of a receipt of a

13   thing of value.  I tend to agree with the Eighth

14   Circuit.

15         The evidence is clear in this case that he

16   knew it was in the share folder.  He had the images in

17   his share file.  He downloaded.  He's someone who has a

18   degree in Information Technology.

19         Although it's academic, although it does not

20   impact the Sentencing Guidelines in this case, I'm going

21   to apply the five-point enhancement.

22         So let me do my guidelines calculations.

23         Any other objections I need to rule on?

24         MS. HEALEY:  No, Your Honor.

25         MR. HOPPE:  No, Judge.

1          THE COURT:  The charges in this case bear --
2    the first three charges, Counts 1, 2 and 3, bear
3    statutory terms of imprisonment of 15 to 30 years each.
4          Count 4 and Count 5, the statutory maximums
5    are 10 and 20 years, respectively.
6          For Count 4, the maximum term of
7    imprisonment is a mandatory minimum of five, up to 20
8    years.
9          For Count 5, it's just up to ten years.
10          Those are the statutory maximums.
11          Counts 1 through 5 are a $250,000 fine.
12          There can be restitution in this case and
13    we'll have to talk about that and of course, a mandatory
14    special assessment of $100.
15          I'm going to run through -- is there any
16    other objection to the guideline calculations as set
17    forth in the pre-sentence report, other than that one,
18    five versus two-point enhancement, and that would be on
19    -- I think that was on Count 5.
20          Is that correct?
21          MR. HOPPE:  No further objections, Judge.
22          THE COURT:  As to Count 1, the base level
23    offense is a 32.  As to both Counts 1 and 2 -- I'm going
24    to do these together because the guideline calculations
25    are the same.

32

1              The base offense level is 32 and that is

2    production of child pornography.  There's a four-level

3    enhancement for involving a minor that is under the age

4    of 12.

5              There's a two-level enhancement for

6    commission of a sexual act or sexual conduct.

7              There's a two-level enhancement for

8    involvement of someone for which you are responsible,

9    had some care over or responsibilities.

10             So for both Counts 1 and 2, the adjusted

11   offense level is a 40.

12             For Count 3, the adjusted offense level is

13   -- because Count 3 does not involve actual touching,

14   there is not the two-point enhancement for that under

15   2G2.1(b)(2)(A), so Count 3 is a base offense level of

16   32.  Increase of four, for the under 12 years.  Increase

17   of two for the supervision or under the care of.

18             So Count 3 has an adjusted offense level of

19   38.  It differs from Counts 1 and 2 because there's no

20   touching.

21             Counts 4 and 5 are grouped together in group

22   four in the pre-sentence report.  Starts out with a

23   smaller base offense level because this is not the

24   production of child pornography, but the transportation

25   of child pornography.  It's a base level offense of 22.

1  Specific offense characteristic of two because it

2  involved someone under the age of 12.  I'm applying the

3  five-level enhancement under 2G2.2(b)(3)(B), following

4  McVey, from Judge Rebecca Smith in the Eastern District,

5  and Griffin. I believe the nature of these peer-to-peer

6  and the evidence in this case of actual sharing in this

7  case demonstrates the expectation of receipt.  So I'm

8  applying the five-level enhancement in this case.

9          I'm going to apply a four-level enhancement

10  because under 2G2.2(b)(4) because a review of the

11  defendant's computers revealed child pornography

12  involving very young children being vaginally and anally

13  raped by adult males, so there is images portraying

14  sadistic or masochistic conduct.

15          There's a pattern of activity involving sex

16  abuse under 2G2.2(b)(5) for an additional five-point

17  enhancement.

18          There's a two-point enhancement for the use

19  of computer.  Because of the number of images, there's

20  an additional five-point enhancement.

21          This yields a total adjusted offense level

22  of 45.

23          Now, because of the four groups and under

24  the multiple count adjustment, factoring in the units as

25  done in the pre-sentence report, there is an additional

```
 1   three-level enhancement above the 45, for a total of 48.
 2            Applying the three-level reduction for
 3   acceptance of responsibility, let me just ask counsel
 4   for the United States, do you believe the defendant has
 5   demonstrated sufficiently the acceptance of
 6   responsibility?
 7            MS. HEALEY:  While I have not spoken with
 8   him, he did plead guilty straight up and he did it early
 9   enough that I did not have to prepare for trial, so I
10   would think that in this case, he has demonstrated --
11            THE COURT:  And he met with the
12   investigators and he fully disclosed what he was
13   involved in. In fact, the involvement with this
14   four-year old, he revealed.
15            MS. HEALEY:  That's correct.  He came
16   forward.
17            THE COURT:  Mr. Hoppe, do you believe he
18   qualifies for the three-level reduction for acceptance
19   of responsibility?
20            MR. HOPPE:  I do.
21            THE COURT:  Anything you want to add about
22   that?
23            MR. HOPPE:  No, Your Honor.
24            THE COURT:  So that leaves a subtotal
25   offense level of 45, under group four.
```

1          There's an additional Chapter Four

2     enhancement under 4B1.5(b)(1) of five, yielding a

3     calculated total offense level of 50.  However, under

4     the guidelines, anything above 43 reverts to 43, under

5     Chapter Five, Part A, Comment Note Two.

6          So the offense level in this case is a 43.

7     That's true whether you apply the disputed five versus

8     two-level enhancement.

9          Any objection to the Court's determination

10    that the total offense level is 43?

11          MR. HOPPE:  No, Judge.

12          MS. HEALEY:  No, Your Honor.

13          THE COURT:  This gentleman has no prior

14    criminal history whatsoever.  He is in -- his Criminal

15    History Category is no criminal history points.  His

16    Criminal History Category is I.  When you plot that on

17    the sentencing guideline grid, that yields a -- with an

18    offense level of 43 and a Criminal History Category of

19    I, that yields a sentence of life, under the guidelines.

20          Now, I want to talk to you all about

21    paragraph 78 of the pre-sentence report.  I want to see

22    whether there's any objection or disagreement to the

23    probation's calculation of the guideline range because

24    in this case, none of the sentences that are -- none of

25    the counts he's charged under statutorily authorize a

1    sentence of life as is called for by the guidelines.

2    The guidelines, therefore, under the application of

3    5(g)1.2(b) and 5(g)1.2(d) require that some of these

4    sentences be run consecutively to achieve the total

5    punishment and what probation does, therefore, is

6    probation runs the max term on each of these five counts

7    to reach 1440 months.

8              Is there any objection to paragraph 78 and

9    the way probation does that, from the United States?

10              MS. HEALEY:  No, Your Honor.

11              MR. HOPPE:  No, Judge.

12              THE COURT:  The Court, therefore, finds --

13    the Court therefore finds pursuant to the guideline

14    calculation that under 5G1.2(b) and 5G1.2(d), the

15    guideline range in this case is 1440 months.

16              I do that without objection.

17              Now, is there any request in this case from

18    either party for a departure or variance?

19              First, let me ask from the United States?

20              MS. HEALEY:  No, Your Honor.

21              THE COURT:  Mr. Hoppe?

22              MR. HOPPE:  Judge, we have asked for a

23    variance.

24              THE COURT:  Yes.  Let's hear from you.

25              I've read your memo several times.  I've

1    looked at all the materials. I've looked at the letters.

2    I have struggled with this case.  I've got to tell you,

3    I have struggled with this case, but I want to hear you

4    fully as to your argument, sir.

5              MR. HOPPE:  Your Honor, I'm going to rely on

6    my sentencing memo for a lot of my arguments, but I do

7    want to address a few things.

8              Judge, I'll start with the nature of the

9    offense.  I think everyone would agree it's a terrible

10   offense. I would point to some of the specifics of it.

11             The most serious thing that we're talking

12   about is the production and the contact offenses on the

13   child and that's what I address in my sentencing memo. I

14   really didn't get into what was found on his computer,

15   what he had downloaded.  I think just objectively, I

16   think we can all agree that the more serious is the

17   production.

18             Judge, the production, the actual, I guess,

19   conduct of underlying the production occurred during a

20   couple weeks.  Mr. Cobler, when the police executed a

21   search warrant at his grandparents' house, he admitted

22   to the investigators that he had done this, that he had

23   --

24             THE COURT:  The basis for the search warrant

25   in all that didn't come out of anything with regard to

38

1    this four-year old.  It came out of something from
2    someplace else.
3              MR. HOPPE:  Right, Judge.
4              The images of the child were not in a shared
5    folder.  The investigators couldn't access it.  No one
6    could have accessed it.
7              Judge, when he was interviewed by the
8    investigators at that time, he expressed remorse and
9    said he wanted help. He said, "I think I've got a
10   problem."  He said a lot of things.  Those are some of
11   the things. I think the very act of confessing shows
12   some remorse right from the get-go.
13             Your Honor, because it was one instance, and
14   I've called this a series of instances involving one
15   child in a pretty discrete time -- I've called this a
16   crime of opportunity and I think that's accurate.  Mr.
17   Cobler had some friends who had a four-year old child
18   and they asked him to babysit sometime in August or
19   September.  He did that and apparently, there were no
20   problems until at least February, maybe even as late as
21   April when these contact offenses happened.  Your Honor,
22   I think what that shows, he didn't take this babysitting
23   job -- or really, he wasn't paid so I hesitate to call
24   it a job, but he didn't take this with the intent of
25   doing what he did.

```
 1              He had, you know, some problems, I guess
 2    some mental health problems, some proclivities that
 3    ended up resulting in his conduct.  You know, I think he
 4    struggles with why it happened.  He doesn't understand
 5    really why this happened and I think he'll tell you that
 6    in his allocution.
 7              So Your Honor, moving on from that, I think
 8    that pretty well encompasses the nature of the offense.
 9              Judge, there are a couple things that I
10    talked about in my sentencing memo regarding deterrence
11    and sentencing disparity that I bring up just in case
12    the Court wants to have a discussion about that.
13              As far as deterrence, I know the government
14    thinks the study that I attached really doesn't have any
15    application to sex offenders, but I think it has
16    universal application and there are a couple principles
17    in there that I think do have this universal
18    application.
19              One, I think people commit --
20              THE COURT:  This is the study that you
21    attached to a number of your --
22              MR. HOPPE:  Right.
23              THE COURT:  This is the one that focuses on
24    certainty rather than severity.
25              MR. HOPPE:  That's correct, Judge.
```

```
 1            THE COURT: I've read that a couple different
 2   times.
 3            MR. HOPPE: Deterrence is a factor we have to
 4   consider in every sentencing, so it's something I plan
 5   on attaching -- I hope I'll improve on my argument, but
 6   it's something I plan on attaching because we have to
 7   address it.
 8            THE COURT:  The point that I took away from
 9   the study was that what matters principally in
10   deterrence, specific deterrence, is if a defendant knows
11   the defendant will be caught and certainly will be
12   punished as opposed to -- and in fact, the study seems
13   to suggest that the length of the sentence actually may
14   have a negative correlation to deterrence; right?
15            MR. HOPPE:  That's correct.
16            Your Honor, I think there's one other
17   important component to that study and it's that for
18   deterrence to have any effect, the offender has to have
19   sort of a rational cost-benefit analysis:  Should I
20   engage in this conduct and know that I could be facing
21   20 years or life imprisonment or whatever?  I think the
22   study shows a lot of defendants don't engage in this
23   cost-benefit analysis, whether it's because of substance
24   abuse or I'd put to the Court, mental health.  Those are
25   all things that contribute to an offense.
```

1          In this case, we've asked for a sentence of

2    no more than 20 years.  As far as deterrence goes, I

3    just have to think if someone actually rationally does

4    --

5          THE COURT:  Here's what I need to know.  In

6    this case, with a guideline range of 1440 months, which

7    is 120 years, in this case, where's the basis for a

8    variance? That's what I need you to tell me.  Why should

9    this Court, based on the factors in 3553(a), in this

10   case, based on the evidence in this case, vary from the

11   guidelines? That's what I need to know.

12         MR. HOPPE:  Judge, I think the two primary

13   things are Mr. Cobler's history and his current

14   situation.  I think the medical situation makes a

15   20-year, something no more than 20 years sufficient, but

16   not greater than necessary to protect the public, to

17   punish, to specifically deter him.  I don't think you

18   lose anything in general deterrence with a 20-year

19   sentence because that is a long time.  Anybody, assuming

20   they think about something rationally, who says, okay

21   it's worth it for me to molest a child and film it,

22   knowing I may get a 20-year sentence, I would submit to

23   the Court isn't thinking rationally.

24         Quite frankly, I think that -- well, Judge,

25   the other thing is I think there's a real practical --

1    well, we also argue for a departure/variance on Mr.

2    Cobler being particularly susceptible to prison abuse

3    due to his really frail stature and his particular

4    naivety.  He's led a sheltered life.  Then, even the

5    nature of this offense makes someone more susceptible to

6    prison abuse.

7              Your Honor, where that comes in, the Court

8    can give him less than 15 years. Obviously, I'm not

9    asking for that, so it's not a question of prison or the

10   safety of his own home.  It's what sort of prison

11   facility is he going to go to and why I've keyed on the

12   20 years is that the Bureau of Prisons has these

13   sentencing factors and if somebody gets a life sentence

14   or 120 years, the Bureau of Prisons says you go to a

15   maximum security prison.  If they get something less

16   than -- well, between 20 and 30 years, you go to a

17   medium security.  And these are rough places. But if

18   it's 20 years or less, you go to a low-security facility

19   and I think that's ample to address the other 3553

20   factors that are present. Really, it shows some

21   compassion for Mr. Cobler and really, I think, the

22   tragic life that he has had and it doesn't diminish the

23   other 3553(a) factors and that's why we've asked for a

24   20-year sentence.

25              We'd also ask for a recommendation to a

1    medical facility like Butner.

2              THE COURT:  Thank you, Mr. Hoppe.

3              Let me ask the United States to address Mr.

4    Hoppe's argument for a variance/departure, particularly

5    with regard to his argument that if the Court were to

6    sentence him to a guideline sentence or something in

7    that range, something more than 20, he would go to a

8    prison, a type of prison facility that, at least

9    according to Mr. Hoppe, he would be more suspect to,

10   would not be as well-suited to who he is based on his

11   naivety and sheltered life and Mr. Hoppe argues he is

12   particularly susceptible to prison abuse and therefore,

13   he's arguing for a 20-year sentence, which would qualify

14   him to a minimum prison security as opposed to a longer

15   term, which would put him in a maximum or medium

16   security.  What does the United States have to say about

17   that?

18             MS. HEALEY:  I know the Court hadn't yet

19   asked if we had any evidence to present to the Court,

20   but I do think that's important before the Court decides

21   whether to vary or not.

22             THE COURT: I'll be happy to hear whatever

23   evidence you have to put.

24             Mr. Hoppe, I take it you don't have any

25   evidence to put on; is that right?

1              MR. HOPPE:  Judge, just that letter we sent

2      to the Court.

3              THE COURT:  I have the letter from -- I read

4      the letters you attached to your sentencing memo and I

5      read the one more recently from Mr. Lancaster.

6              MR. HOPPE: Judge, I would have ask that be

7      filed as an exhibit under seal because of what it

8      discusses.

9              THE COURT:  If I haven't done that, already,

10     I'll so order it.

11             MS. HEALEY:  Your Honor, we have discussed

12     the exhibits I would be handing up to the Court.

13             Before I do that, I do want to address the

14     issue of the BOP.

15             I've not spoken with the BOP. Given what I

16     know about the defendant, the defendant obviously filed

17     his memorandum under seal, which causes me concern for a

18     couple of reasons.  But what we know from the records

19     that were submitted under seal lead me to believe that

20     the defendant will be put in a full medical facility at

21     the BOP.  So I think if he's in a full medical facility,

22     both for his own safety and to prevent any other people

23     in that facility from having some type of contact that

24     could prove dangerous to the people in there, both the

25     staff and other inmates, I think it's highly unlikely

1    he's going to be placed in a population that's going to

2    make him subject to abuse.

3            I don't have that information.  I can

4    certainly get that information for the Court, but I

5    would ask the Court not to consider that as a reason to

6    depart or to vary because I think -- they'd have to, I

7    think, put him in a full medical facility or at least

8    soon, if not yet.  Yes, I'm sure there are levels of

9    classification, but I think he will be in a situation

10   that insulates him from contact with others.  That's my

11   first thing.

12           Before I put in some of the evidence I'd

13   like to put in, I would like to talk about the article

14   on deterrence.  That is, obviously deterrence is a

15   factor under 3553(a) and I know the Court referred to

16   both specific versus general deterrence.  But when I

17   looked at this particular Meta study or survey of

18   studies, I noted a couple of things that I don't know

19   whether they have relevance to our situation here.  So

20   one of the observations made in that particular study

21   was that half of all state prisoners were under the

22   influence of drugs or alcohol at the time of their

23   offense.  That is usually not the situation with sex

24   offenders. So that's a different type of population than

25   we're talking about in today's courtroom right now.

1            The other thing I noted, when they actually
2    started doing some analysis as to whether something was
3    more likely to deter because of the length of sentence
4    or not, it seemed to me that they focussed their
5    observations to sentences that would be significantly
6    less than any sentence that this defendant could face,
7    in any event. I think there was a -- one thing they
8    discussed was a sample of college students were to
9    assess the likelihood of drinking and driving.  That's
10   certainly not the case we have before this Court today.
11   We don't have college kids or drunk drivers coming
12   before the Court today.  We have a sex offender.  Sex
13   offenders are different.  The recidivism risks are
14   different.  There are studies out there that show they
15   are a risk to the community and they may have a much
16   higher likely risk to recidivate.  There are studies out
17   there and I think the Irey case that was cited both by
18   Mr. Hoppe and me -- I reread it.  It's a huge case. It
19   has a lot of things in there, but they noted studies
20   that showed that often, sex offenders don't complete
21   their treatment.  So there are a lot of things there
22   that distinguish, I think, sex offenders from some of
23   the more generalizations that were made in this
24   particular study.
25            I think one of the specific comparisons that

1   they made on page six of the study said offenders who

2   spent an average of 30 months in prison had a recidivism

3   rate of 29 percent compared to a 26 percent rate among

4   prisoners serving an average sentence of 12.9 months.

5           Again, we're talking about sentences that

6   are only as high as two-and-a-half years and as low as

7   almost one year or two years.  So I think there's some

8   differences there.  I don't know whether it can be

9   extrapolated to all populations.

10          The simple fact is, in cases like these, in

11  serious cases like these where a defendant has harmed

12  others in a grievous fashion, both by his other child

13  pornography offenses and of course by his contact

14  offenses, I don't think that this particular study has

15  much application or should be given as much

16  consideration as the other factors under 18 U.S.C. 3553.

17  I think this sentence in this case has to send a

18  message.  I think this Court is well aware, I see this

19  all the time in sex offense cases, that defendants jump

20  very quickly -- defense attorneys jump very quickly to

21  note in their memos where someone has varied.  It's of

22  concern to me that a lot of things are under seal here,

23  too.  It is a concern to the United States that if a

24  20-year sentence, which I think is tremendously low in

25  this case, were to be imposed, I can get bet that I will

1    hear about this sentence in the future.

2            This is a case that demands a heavy

3    sentence. I think the Irey case -- I know -- I looked at

4    Irey and he should have gone to jail for the rest of his

5    life.  Why he was sentenced or charged with only one

6    count, I don't know.  But when I read the Irey case, I

7    think the Eleventh Circuit was sending a clear signal

8    that it would have found that more was appropriate in

9    that case than the statutory maximum for one count. It

10   was a distinguishable case. I don't know even know how

11   you can compare one case to another.

12           THE COURT:  Every case must be evaluated on

13   the facts of that case.

14           MS. HEALEY:  Correct.

15           THE COURT:  Let's focus on these facts.

16           MS. HEALEY:  Absolutely.

17           So one thing I wanted to just step back from

18   -- there was one thing that one of my investigators was

19   sending me a bit of a note during Mr. Hoppe's discussion

20   and said "although he did disclose his activities with

21   the minor, he did not do that until he saw we were

22   seizing the computer." Obviously, the investigators at

23   that point had the evidence.  You know, one of the

24   things we do in forensic analysis is we definitely want

25   to find out, is there any evidence of production because

1  we know there's a live victim at that point.  So I did

2  want to make that point.

3          With respect to whether this was a crime of

4  opportunity, I think we have to step back for a minute

5  and realize what the defendant did, in full, what he did

6  as part of his other crimes against children.

7          First of all, we know from the statement

8  that was submitted to this Court that he acknowledged

9  having engaged in inappropriate conduct with a much

10  younger minor when he was a minor himself and I think

11  that's significant.  That was a clue that this defendant

12  might have been inappropriately attracted to children.

13  You don't punish a pedophile for having pedophilic

14  views. You have to punish their actions. Some pedophiles

15  are able to -- some may be limited -- don't take the

16  step of violating the law necessarily or acting on their

17  instincts.  But I think there is information before the

18  Court as to this defendant being a risk to children.

19          Besides that one act, there were two other

20  parts in his statement to the investigators that I think

21  are notable. I think these detract from the argument

22  that this was a crime of opportunity.  At one point, he

23  suggested to Investigator Galbreath, I believe, that he

24  looked at images of child pornography, children being

25  raped, basically, or images of child pornography, to

1    avoid raping children himself.

2                 THE COURT:  I saw that in your memo.

3                 MS. HEALEY:  Right.

4                 Then the other part I think I -- I don't

5    remember if I put this one in, in full, he acknowledged

6    after having had sexual contact with the known minor in

7    this case for the first time, he said he had researched

8    the risk of transmission of his medical condition and in

9    fact, looking at his computer searches, index.dat files,

10   that is true.  He did research.  There were searches

11   that were consistent with someone trying to find out

12   whether you are going to have a risk of transmitting.

13                But after that, he said, "I was concerned

14   because I realized what I did and I was hoping that

15   would have been the only day that I snapped and did

16   something like that."

17                So by that word "snapped," it sounds to me

18   like it's something that he just can't help.

19                He talked with the investigators further

20   about a babysitting service he was trying to get into.

21   So here's this man who was interested in and sexually

22   aroused by looking at children being raped, who now

23   wants to be a babysitter? So all right, yes, you could

24   say any crime is a crime of opportunity.  The

25   circumstances have to be right for you to commit a

1  crime.  But I would suggest he already knew he was

2  sexually attracted to children and he put himself in a

3  situation that he then knew was dangerous to him.  So

4  I'd like to just backtrack on that a little bit.

5          The other thing I think is notable, I know

6  that the most important thing that I focussed on and Mr.

7  Hoppe has focussed on importantly is the molestation of

8  the local boy.  But his other acts are acts that deserve

9  a serious punishment as well.  We have had significant

10 sentences imposed in child pornography trading cases,

11 possession cases, distribution cases. I just had a

12 sentence in Charlottesville to 14 years where the crimes

13 were transportation, distribution, possession, but no

14 contact offense crime.  We believed he was a contact

15 offender and tried to suggest that, but he got 14 years

16 for a non-contact offense.  So I think it's important to

17 know we do get significant sentences.

18          THE COURT:  What I'm interested in are the

19 facts of this case. I don't know what happened in that

20 case in Charlottesville.  I want to focus on the facts

21 in this case.

22          MS. HEALEY:  I understand.

23          But I'm just trying to say even regular

24 child pornography offenses that don't involve contact

25 offenses demand high sentences.

1          With that, I would like to hand up to the

2    Court as Government Exhibit 2 --

3          THE COURT:  Because of the number of images,

4    very often the guidelines in other cases are way up

5    there, in and of themselves.  I've sentenced in child

6    pornography, transportation, distribution cases.  I've

7    done that.  I understand.  I understand.  The grievous

8    aspect of this case and the thing that troubles the

9    Court the most is the molestation of this child and the

10   videotaping of that, combined with the risk to that

11   child of transmission of the defendant's disease.

12         That is -- that's what ramps this case up

13   and makes it so incredibly serious.  It's not only the

14   molestation, but it's the molestation, plus the

15   videotaping, plus the knowledge that under certain

16   circumstances, this disease could be transmitted to that

17   child by virtue of the act.  That's what makes this case

18   as, to use your word, grievous as it is. I'm not -- I am

19   not downplaying, nor should you hear me to do that, the

20   serious nature of folks who view child pornography, just

21   viewing of it, transporting, distributing it, sharing it

22   in and of itself because I understand and I appreciate

23   that these people provide a market for those people who

24   harm children and that's -- I understand that.

25         So I agree with you, Ms. Healey, that the

**149**

1   child pornography cases and just the downloading and the

2   sharing of that, in and of itself, is serious. It is not

3   a victimless crime.  It harms children.  But this one is

4   ramped up not just by the contact, not just by the video

5   of the contact, but by the risk to the child of the

6   transmission of this terrible disease.  This is almost

7   as bad as -- the only -- it's almost as bad as you can

8   get.  This is a very, very, very grievous case.

9           Go ahead.

10          MS. HEALEY:  Yes, Judge.

11          I do very much appreciate, so I will

12  truncate what I say about the other charges, but I do

13  have to address them in part.  I do think his search

14  terms and things that he used showed that this was not

15  an unlikely or unforeseen thing he might then take it to

16  the next level and actually reach out and touch a child.

17          I showed this to Mr. Hoppe this morning.

18  One of his index.dat or Internet history files or

19  searches had a search, and the way Google or the

20  forensic analysis keeps the terms, it has plus signs in

21  between the words.  So it says -- if I take the plusses

22  out, I can put the plusses back in if the Court wishes,

23  there's a plus between each word.  It says, "is it okay

24  to teach a five-year-old sex".  So that was a search

25  done on Google besides the searches that we know and I

1   can show them to the Court if the Court wishes, but I'm

2   trying to keep part of that kept clean.  I don't think

3   there's any dispute he did look up the risk of his own

4   particular condition when he was online.

5           That is something to me that indicates this

6   was done with some type of forethought, potentially,

7   that type of thing.

8           But I would also point out if the Court

9   looks at, and I would hand this up and ask this be

10  introduced as Government Exhibit 2 -- Mr. Hoppe has

11  this.  These are the Aries search key words.  If the

12  Court looks at the terms set forth on the left-hand

13  column, these are the searches that he would have

14  inputted during his Aries searches. I think they're

15  significant because they show he's looking for a young

16  age and remember, his victim --

17          THE COURT: I want to see counsel.  Come

18  here.

19          (Side bar discussion held off the record).

20          Go ahead, Ms. Healey.  You were showing me

21  Exhibit 2.

22          MS. HEALEY:  If the Court looks on the

23  left-hand side of that particular document, those would

24  be the words he would have put in.  As the Court sees,

25  he puts in the age of children or ages that include the

1    age of the child that he personally molested.

2            If you look at some of the search terms, and

3    I'm sorry to be blunt, but I've got used to doing this,

4    he's not only looking for 5 and 4-year old kids, he's

5    looking for "dick and mom;" "y-o," which is year-old

6    "boy;" "fucking son."  There's ages.  If the Court is

7    aware, PTHC is pre-teen hard core.  I see another "4

8    y-o" on that first page.  "Pain;" "toddler;" "crying;"

9    "five-month old."  "Kid rape;" "kid pees in mouth;"

10   "little butt."  Looks like a name of a file, PTSC, which

11   would be pre-teen soft core.  "Nine-year-old Tia

12   crying;" "7-month old;" "8-month old;" "4-year old;"

13   "raping my toddler;" "sucking little boy;" "sucking

14   boys;" and it goes on.  So that's some of them.

15           But to me, I think that's something the

16   Court needs to take into consideration.  Some of the

17   cases -- I think I cited these cases. It was either XXX

18   /TPWAR they ares, business line or Miller, some big

19   cases in the child pornography area, the Fifth, Sixth --

20   I think it's Fifth, Sixth and Seventh Circuit that have

21   talked about, you really can distinguish on the nature

22   of the images you're actually looking for and that's

23   important because that may be some type of indication as

24   to the harm someone poses. If someone is looking for a

25   16 or 17-year old girl who's naked, but not being raped

1    or molested or whatever, that's a far different type of

2    picture than a young child who's being anally sodomized

3    or sodomized or raped. It may be a type of thing that

4    leads to my prosecutorial discretion if I have,

5    depending on the age, if someone's looking for a 16 or

6    17-year-old, while illegal if it's lascivious exhibition

7    of the genitals, it may affect my decision whether to

8    take a case, depending on what happens. But when I see

9    someone actually doing these horrible searches, that's

10   it.

11          I think the Court has been provided with

12   victim impact statements. I think the Court has viewed

13   the victim impact statement both for the young boy in

14   this case and the other ones.

15          I would note --

16          THE COURT: I read them. I read them all.

17          MS. HEALEY: When I looked at them again

18   last night, I notice the name of the mother in one of

19   the series, and I'll tell the Court which series that

20   was in a minute, was somehow not redacted. I think

21   that's the Marine Land series. To the extent that's not

22   redacted, I would like to hand a copy of the mother's

23   impact statement up to the Court to substitute the

24   mother's name. We're very careful under 18 U.S.C. 3509

25   not to reveal any information that might lead to the

```
 1   identification of the minor.
 2              THE COURT:  Let me direct the clerk --
 3   you're telling me one of the ones you filed previously
 4   had the name of the mother on it?
 5              MS. HEALEY:  When I looked at it, it looked
 6   like the mother's name had not been redacted.  It's part
 7   of -- all of these victim impact statements have been
 8   identified by series name and it would be under the
 9   Marine Land series.
10              THE COURT:  This was attached to your
11   sentencing memo?
12              MS. HEALEY:  I think it was attached by Mr.
13   Sheffield.  That was our office's fault.
14              THE COURT:  Attached to the PSR.  That's not
15   been filed in the public record yet.
16              MS. HEALEY:  No.
17              THE COURT: Let me direct the clerk to
18   substitute this page with the redacted name of the
19   mother for that one.
20              Any objection, Mr. Hoppe?
21              MR. HOPPE:  No, Judge.
22              MS. HEALEY:  Your Honor, with respect to the
23   victim impact statements, I think it's important -- he
24   is charged with two non-contact offenses.  I would just
25   like to just highlight a couple statements in there.
```

```
 1              The Vickie series, I will tell you from past
 2    experience, Vickie is, of course, a pseudonym, but
 3    Vickie and Vickie's attorney has indicated they want her
 4    victim impact statement read essentially at every
 5    sentencing proceeding. I don't know if this Court has
 6    ever had it before because she wants it out there.  I've
 7    dealt with the officer who investigated the case. He
 8    testified at a trial.  It's a very impactful impact
 9    statement and I'd like the Court's indulgence to be able
10    to read her victim impact statement on the record since
11    this is a public proceeding.
12              THE COURT:  I've already read it, but you
13    can.  Go ahead.
14              MS. HEALEY:  Before I do that, I would point
15    out that the local victim, as the Court may have seen,
16    filed the victim impact statement via the mother and
17    talked about the crime crumbling the family.  Have
18    developed trust issues, overprotective tendencies and
19    she believes the defendant would be a threat to the
20    community, if released.
21              I have found out, thankfully, that the child
22    has received the child's final test to see if he ended
23    up with the same condition and that has thankfully
24    turned out negative.  I did want to let the Court know
25    that.
```

1           THE COURT:  That's what the Court

2  understood.

3           MS. HEALEY:  Also, as I understand, they are

4  making some progress in terms of his behavior.  He was

5  saying inappropriate things in public and acting in

6  certain ways that is not inconsistent with other

7  sexually abused children.  So there is some progress.

8  They're making progress, which is a good thing.

9           With respect to the victim impact statement

10  for Vickie, she states the following.  This is dated

11  December of 2011.  She has filed other ones in the past.

12  It says:  "I live every day with the horrible knowledge

13  that many people somewhere are watching the most

14  terrifying moments of my life and taking grotesque

15  pleasure in them.  I am a victim of the worst kind of

16  exploitation: Child porn.  Unlike other forms of

17  exploitation, this one is never ending.  Every day

18  people are trading and sharing videos of me as a little

19  girl being raped in the most sadistic ways. They don't

20  know me, but they have seen every pat of me.  They are

21  being entertained by my shame and pain.

22           My world came crashing down the day I

23  learned that pictures of me being sexually abused had

24  been circulated on the Internet.  Since then, little has

25  changed except my understanding that the distribution of

1    these pictures grows bigger and bigger by the day and

2    there is nothing I can do about it.  The enormity of

3    this has added to my grief and pain and given me a

4    paranoia. I wonder if the people I know have seen these

5    images.  I wonder if the men I pass in the grocery store

6    have seen them.  I feel totally out of control.  They

7    are trading around my trauma like treats at a party and

8    it feels like I am being raped all over again by every

9    one of them.  It sickens me to the core, terrifies me

10   and makes we want to cry. So many nights, I have cried

11   myself to sleep thinking of a stranger somewhere staring

12   at their computer with images of a naked me on the

13   screen. I have nightmares about it often.  I can never

14   feel safe so long as my images are out there.  Every

15   time they are downloaded, I am exploited again, my

16   privacy is breached and I feel in danger again.  I fear

17   that any of them may try to find me and do something to

18   me.

19          I have a right to know who has my pictures

20   and who is trading them.  While it hurts to know, not

21   knowing makes me feel more in danger.  To be criticized

22   for wanting to know what is going on with the

23   humiliating pictures of me, to exercise the few rights I

24   have under the law, only makes the hurt that much worse.

25   How can such people not understand or care?

1           I am justified in my paranoia.  Some of

2   these perverts have contacted me.  I have received

3   e-mails suggesting making porn with these strangers. One

4   has stalked me.  Another created a slide show of me on

5   YouTube.

6           As I go on with my life, the effects of

7   these crimes still hurt me and I hope the Court and

8   every one involved will understand this and how serious

9   it is. While the abuse from my biological father was

10  awful, as time goes on, that is further and further away

11  from me. That is over.  He is in jail and can never hurt

12  me.  That is over. The men that download my pictures are

13  all around me for all I know and it will keep going on

14  forever.  I have no control over it at all.  This is

15  frightening beyond belief.

16           I still have nightmares that come from

17  knowing that pictures of me are spread around the

18  Internet by people with perverted interests in my pain.

19  I have panic attacks and flashbacks.  I can't sleep a

20  lot of nights, no matter how early I go to bed or how

21  early I wake up in the morning.  Even if I barely slept

22  for days and I'm exhausted, sleep doesn't come easy. I

23  take afternoon naps just to function, but something

24  about the nighttime puts my mind on alert and after all

25  these years and going to different counselors, I still

1  haven't learned the trick to let my mind rest.  When I

2  do sleep, my dreams are vivid and I remember them for

3  weeks.  A common theme is finding myself naked in front

4  of a crowd of people or in an enclosed space and I can't

5  escape or run away fast enough.

6          Most days I can put away the thoughts of the

7  previous night and function okay, but some days I get

8  stuck and zone out.  When this happens, I sit in the

9  same spot, motionless for a long time.  My mind will

10  come back sometime later in the day, maybe 30 minutes

11  later or maybe six hours later.  I can't remember what I

12  did during that time, but I look around my apartment for

13  clues. This happens a few days out of the month, more

14  frequently if I'm under a lot of stress.

15          I've left my home in this zoned out state of

16  mind a few times.  Friends and family who've seen me in

17  this state describe me as loopy and tell me that they

18  can talk me out of it by pointing out my odd behavior

19  and talking me through some deep breaths.  They've told

20  me my personality changes when this happens. I can't

21  remember things I've said in that state and when they

22  repeat them back to me, it's really surprising.

23          I have struggled off and on with this, which

24  I now know is called dissociating. This last year, I

25  felt under such stress, I started zoning out or

1  dissociating a few times a week and having the

2  personality issues so bad that my friends were really

3  concerned about me.  They kept telling me I wasn't

4  acting normal, especially at night.  I had missed a lot

5  of the first two weeks of school, so I had the added

6  stress of trying to catch up.  I felt like I couldn't

7  control it.  I never knew when I was going to zone out

8  and I kept missing classes and appointments.  It seems

9  crazy, but it took me a long time to recognize what was

10 going on and to get myself to start working on my coping

11 skills again.

12          School has been a struggle.  I have had to

13 quit two different times.  I cannot attend a regular

14 college away from home due to my paranoia. Over the last

15 year, I have been dissociating and missing classes. This

16 puts me behind and hurts my grades. I'm doing my best to

17 salvage my grade and do all the extra credit I can to

18 compensate.  My struggles with sleep due to the fear of

19 unknown people watching my images and coming after me

20 compounds all the other problems.  It frustrates me

21 because I hate the feeling of being out of control, yet

22 these effects can get triggered when I least expect it.

23          My paranoia about pornography and panic

24 attacks have so far made a serious relationship beyond

25 my capabilities.  The paranoias of knowing people are

1    viewing videos of me messes with my mind and adds a back

2    burner type of stress to my life constantly that is

3    brought to the front of my mind by unexpected situations

4    and still throws me for a loop, the episodes of

5    dissociation and personality change, and stress

6    management.  Many of my PTSD symptoms have gotten

7    better.  One thing that has gotten worse is that the

8    stress affects my health and makes me sick.  I sometimes

9    stress out to the point of not being able to keep food

10   down for days.  It also seems to wear down my immune

11   system because I seem to be getting sick more often.  In

12   my efforts to counteract this, I try to work on doing

13   regular exercise, eating healthy and taking vitamins

14   every day.

15            I want you to know that dealing with the

16   effects of the stress of random men looking at pictures

17   of my sex abuse as a child is like a full time job that

18   wears me down and colors every aspect of my life.

19   Please think of me and what I am going through."

20            That's her statement.  I won't read all of

21   the statements, but I think as the Court sees, you have

22   parents talking about the effect they've seen on their

23   children, the fear, the worry that people will come

24   after them and the inability to form natural

25   relationships or really to function in life and that's

```
 1   why regular child pornography -- I guess regular is not
 2   the word, but non-production offenses are serious
 3   offenses. They're not pictures. I think sometimes the
 4   public gets the thought that these are just Playboy with
 5   a 16-year-old child instead of a child being sexually
 6   abused, raped, sodomized, hurt in so many ways.
 7              The ones that put it on the Internet --
 8   thankfully, we have not found the images the defendant
 9   has made put on the Internet, but he did have these
10   other ones on the Internet and there is a huge effect on
11   these children which is why prosecutors ask for
12   guideline sentences in these cases, because the effects
13   are just gigantic.  They're just enormous.
14              The defendant obviously pled straight up, so
15   he has obviously retained his right to appeal anything
16   in this case.  With that in mind, I would ask and I
17   would like to place in the record under seal, they are
18   open now, two envelopes.  One has just a few pictures,
19   four pictures of the pictures or screen shots that the
20   defendant took of the local boy.  That will be the first
21   one. We showed these to Mr. Hoppe this morning.
22              The second envelope, the top three pictures
23   will be the pictures that Investigator Wagner was able
24   to download.  And then there's other pictures showing
25   extremely young children being penetrated by adult
```

1    males.  Also sadistic types of images that show sort of

2    the nature and seriousness of this offense and I think

3    that's important.  There's one or two that appear to

4    show the child is in some way bound.

5              These are the pictures that he was

6    downloading, that he found sexual arousal to.  That's

7    why the crime of opportunity defense in this case

8    doesn't go far for me.  This is what he was interested

9    in.  He was looking at that.

10              So I would ask the first envelope -- I'll

11   hand them up to the Court and if the Court would look at

12   them, I think it's important to understand the nature of

13   the offense.  The first envelope, Government's

14   Exhibit 3, will be the pictures of the local boy.  It's

15   only, I think, four images in there.

16              THE COURT:  Any objection to the Court's

17   consideration of these images, Mr. Hoppe?

18              MR. HOPPE:  No, Judge.

19              (Government Exhibits #3 and #4 were marked

20   for identification and admitted into evidence).

21              MS. HEALEY:  The second one being the first

22   three if you take them out with the face up, are the

23   pictures that were downloaded by the investigator and

24   the rest being other images that would have been in his

25   collection or a shared file or something that would have

67

1    been recovered from his computer at the time.

2            With respect to, I know I said the search

3    terms.  I think the only other evidence -- again, Mr.

4    Hoppe -- I have discussed with him doing this.  The

5    forensic analysis, when forensic exams are done,

6    sometimes they do a search for most recent documents and

7    so there's a list in the forensic report provided by the

8    registry viewer that indicates files that were the most

9    recently accessed known child pornography, with Windows

10   Media Player in this particular case. I would just note

11   the title of a couple of them just so the Court knows

12   it's not just the search terms.  This is what he's

13   looking at.

14           The full file path would be c:/documentsand

15   settings/jcobler/desktop/mysharedfolder/rapingmytoddler,

16   and in parentheses, goodcopy.asf.

17           Another one would be same beginning file

18   path with documents and settings and my shared folder.

19   Then the name would be "2011 PTHC underscore 04,

20   underscore, fuck, 204.abi."

21           Then one other one would be, again,

22   documents and settings, my shared folder.  Then in

23   brackets, "boy fuck man" and then "boy fucked by

24   dad302.avi."

25           There's others as well, of course.  So those

1   are his most recent viewed.  There are others consistent

2   with hard core child pornography that is in that list.

3           Then looking at the forensic report as to

4   what was actually on the Compaq Presario laptop, for

5   example, one of the files that was found had "documents

6   and settings/JCobler/loc, underscore, DOC/hermit

7   files/new folder/!!new, pthc, baby J-private, in

8   parentheses, anal fuck 7yr" and new parentheses "map"

9   and then in separate parentheses, the numbers 1, 2 and

10  3.wmv, wmvb," movie type of file.

11          Baby J is also a well known name in the

12  child pornography trading area.

13          I'll just read one more.  There's another

14  one that's documents and settings, J Cobler.  Again,

15  same type of file path.  New folder/babyshive,"

16  b-a-b-y-s-h-i-v-e; "slave play 4 y-o cries, squirms,

17  resists, toddler series", in parentheses.mpeg."

18          There's just -- I could go on and on and if

19  the Court wishes to look at the forensic report to see

20  the other names, they're pretty consistent.  Mr. Hoppe

21  has seen them.  I can give more examples, but a lot of

22  them are extremely disturbing, hard core child

23  pornography involving the rape, sodomy and otherwise

24  young children and children who are obviously not

25  enjoying what is going on to them.  So I would just

1  point that out as some examples.  The file names are

2  consistent with some of the search terms he's used and

3  is obviously consistent with what he did with this

4  particular child.

5           I'm trying to see if there's anything in

6  terms of the variance, again.

7           THE COURT:  Is the forensic report in

8  evidence?

9           MS. HEALEY:  No, but I can certainly provide

10  a copy of it. It's the written report.  There are no

11  images in that.

12           THE COURT:  You want to mark that as an

13  exhibit, it will be exhibit, I believe, 5.

14           (Government Exhibit #5 was marked for

15  identification and admitted into evidence).

16           MS. HEALEY:  If the Court wants the file

17  names I was just referring to --

18           THE COURT:  If you've done it on the record,

19  that's fine.

20           MS. HEALEY:  If the Court wishes to review

21  it, the Court can review it.  I only picked two out of

22  many, many, many files listed.  I'm more than happy to

23  read more of the book marked images.

24           Otherwise, this is the forensic report from

25  the Secret Service.  I don't know whether it's proper to

1    put under seal or not.  It obviously has some graphic

2    language in there.  I think that would be a judgment

3    call by the Court.  There are no images.

4              THE COURT:  I'm going to mark --

5              MS. HEALEY:  I'm sorry.  I didn't mean to

6    interrupt.  There is the name of the known victim.

7              THE COURT:  I'm going to mark --

8              MS. HEALEY:  It should go under seal.

9              THE COURT:  3, 4 and 5 will be marked under

10   seal.

11             Is there any reason to put 1 or 2 under

12   seal, Ms. Healey?

13             MS. HEALEY:  One was the Aries search terms.

14             THE COURT:  I'm putting all these exhibits

15   under seal.  I'm just doing it, putting them all under

16   seal.  I'll admit them all without objection, all under

17   seal.

18             (Government Exhibits #1, #2, #3, #4 and #5

19   were marked for identification and admitted into

20   evidence).

21             MS. HEALEY:  Judge, I think I've said most

22   of what I believe on the variance. I think the cases

23   make it clear, the greater the variance, the greater the

24   justification in this case and this case, the guidelines

25   call for 120 years.  20-year sentence would be, I

71

```
 1    haven't done the math, but an extreme variance from that
 2    particular guideline section.  There's a reason why
 3    child pornography cases carry high statutory penalties
 4    and high guideline sentences.  The Fourth Circuit has
 5    not adopted some of the circuits like the Second
 6    Circuit's and Third Circuit's questioning of the
 7    validity of the guidelines.  In fact, they have
 8    suggested otherwise.  Other cases make clear there's
 9    many cases that have been upheld under the regular child
10    pornography guideline under 2G2.2. Many guideline
11    sentences have been upheld under 2G2.2 as well and I
12    think some of the cases I cited in my sentencing memo
13    show why these cases demand serious attention. The
14    government does not agree with the premise that these
15    guidelines were not empirically based.
16              Every time Congress acts in this area, they
17    up the ante. In fact, even in December of this past
18    year, they raised, in the possession statute, so
19    possession now carries up to ten years for any
20    possession offenses, but now as of December -- I forget
21    what day it is, 15th, maybe -- now possession of an
22    image that depicts a prepubescent minor engaged in
23    sexually explicit conduct now carries 15 years.
24              With respect to -- is the Court wanting me
25    to do my whole final pitch now?
```

72

```
 1              THE COURT:  I don't know -- I'm going to
 2    give Mr. Hoppe a chance to say in response whatever he
 3    wants to say.  If you want to say whatever it is you
 4    want to say now, we obviously haven't had -- the only
 5    other thing is, we need to talk about forfeiture and
 6    restitution.
 7              MS. HEALEY:  Yes.
 8              THE COURT:  And fine and we need to -- if
 9    you want to say whatever it is you want to say in the
10    government's position and then I'll hear from Mr. Hoppe
11    and then I'll hear from Mr. Cobler.  Then the Court will
12    impose sentence in this case.
13              Why don't you, while you're standing up
14    there, tell me everything you want to tell me.
15              MS. HEALEY:  Thank you, Your Honor.
16              Let me just address the restitution issue.
17    I've spoken with Mr. Sheffield a couple times and also
18    spoken with Mr. Hoppe.
19              Due to the way these images got sent to the
20    National Center for Missing and Exploited Children and
21    the timing, we only recently got back some of the
22    information as to the identified minors. I would request
23    this Court to allow for a 90-day continuance on the
24    restitution issue.  That being said, I've also told Mr.
25    Hoppe I'm fully aware the defendant is on disability and
```

1    doesn't have any money.  One of the victims, the Vickie

2    series does actively -- her attorney often actively

3    seeks restitution, but I have talked with her in the

4    past personally when I know a victim is represented by

5    the public defender or has no means to pay anything and

6    she has withdrawn restitution claims.  However, she has

7    to make that decision.

8            The other reason I would ask for a

9    continuance as well, the department actually last night

10   or late yesterday has sent out new guidance materials

11   for prosecutors to follow in restitution cases that I

12   have not had an opportunity to look at. I think this

13   would give me time to found out whether what I'm going

14   to espouse is consistent with department policy and with

15   the new case law or varying case law that has come out.

16   I've told Mr. Hoppe I think it's --

17           THE COURT:  There is a bunch of varying case

18   law that has come out on this issue that I've dealt with

19   a couple different times.

20           There's some issues with regard to

21   causation.  That's what the rub is in a lot of these

22   cases.

23           Mr. Hoppe, do you have any objection to

24   continuing the issue as to restitution for no more than

25   90 days?

```
1              MR. HOPPE:  Judge, I do.
2              There's a rule that says -- and this is
3   3664(d)(5), and it says:  "If the victim's losses are
4   not ascertainable by the date that is ten days prior to
5   the sentencing, the attorney for the government or
6   probation officer shall so inform the Court."  Of
7   course, ten days is passed.
8              The revised pre-sentence report was
9   submitted on January --
10             THE COURT:  I'm sorry, 36 --
11             MR. HOPPE:  3664(d)(5).  This is how you
12  implement restitution.
13             Judge, it goes on to say unless for good
14  cause. If there's some sort of good cause, I suppose
15  that can be extended. This case was scheduled for
16  sentencing last week and we ended up continuing it at
17  the government's request. I didn't object.  But the
18  pre-sentence report was submitted less than nine days or
19  less than ten days before the original sentencing and it
20  says they requested or asked if there's any restitution
21  and it says no.  They haven't received any request for
22  restitution.
23             THE COURT:  Have you received any request
24  for restitution yet?
25             MS. HEALEY:  Not yet, Your Honor, but I
```

1  would point out the victims' statutes also give a right

2  to the victim to demand a new hearing if they're not

3  heard on certain issues.  So they could demand a new

4  hearing to be heard on things that apply to them.

5          As I've stated, Your Honor, restitution, if

6  it is proximately found, is mandatory in this case. I'm

7  suggesting to the Court that if I get any request, I

8  will try to see if I can talk with those lawyers about

9  the possibility of taking back or withdrawing their

10 claims for restitution.  But I do think it's mandatory

11 and I do think this is worthy of consideration.  By the

12 time we got the information about the specific victims,

13 it was only in the last couple of weeks for us to go and

14 figure out which ones we had to notify.  So I think that

15 would be good.  I know Mr. Sheffield and I talked about

16 it even earlier than that and we talked about the

17 possibility of coming back later and asking for a

18 hearing on that. It may be I can come back and just

19 notify the Court we don't need another hearing.

20          THE COURT:  Especially given the fact that

21 this defendant doesn't have any ability to pay

22 restitution even if restitution was imposed.  I guess

23 the concern is that if we put off the restitution

24 hearing, that would delay -- I'm going too to recommend

25 that he go to a federal medical center.  What would

```
1    concern me is a delay that Mr. Cobler would go to a
2    hospital setting.  With his condition, he needs a
3    hospital setting, based on everything I know. That's
4    what you're asking for.
5              MR. HOPPE:  Right, Judge.
6              THE COURT:  What would concern me, this
7    might delay him going to a hospital.
8              MR. HOPPE:  Judge, he can waive his right to
9    be at a restitution hearing.  I haven't spoken to him
10   about it because the first thing I heard about
11   restitution was yesterday afternoon. This is something
12   that was a consideration I didn't think was going to be
13   present today.
14             THE COURT:  It seems to me to be a moot
15   point because Mr. Cobler is not going to be able to --
16   he doesn't have any money to pay restitution anyway.
17             I'm going to give the government up to 90
18   days to allow for restitution and what I'd ask the
19   United States is to let us know whether you need to even
20   have such a hearing.  I'll do that.
21             MS. HEALEY:  I will do that, Your Honor, and
22   see if there's any way our victim witness coordinator
23   can reach out to these folks more proactively to get a
24   final reading on it.
25             THE COURT:  I don't want to delay Mr. Cobler
```

1  going to a hospital setting.  I don't want to do that.

2           MS. HEALEY:  Your Honor, I did mean this in

3  all sincerity in our supplemental memo. I know the

4  defendant was dealt a bad hand, through no fault of his

5  own.

6           THE COURT:  Through no fault of his own, Mr.

7  Cobler has suffered his whole life with a disease that

8  is no fault of his own and he's -- the Court is going to

9  recommend he be sentenced to a federal medical center

10  where he can receive appropriate treatment.

11           MS. HEALEY:  That's correct, Your Honor.

12           With respect to anything else I would say,

13  one of the things that came up in our memoranda was

14  unwarranted disparities. One thing my state counterparts

15  have informed me, if we're talking about sentencing

16  disparities, I often see state sentences put in.

17  Granted, this was a couple months after he was arrested,

18  but the statute legislature is actually now, under

19  18.2-67-1 now has a forcible sodomy statute in place

20  where if the victim is under 13 and doesn't require

21  force for the under 13 victim and the defendant is an

22  adult, it's a mandatory life sentence, under the

23  Virginia Code.  That's as of July of last year.

24           THE COURT:  Are we going to be hearing

25  defendants in drug cases arguing that unwarranted

1    disparity in drug cases requires that the Court apply a

2    state drug penalty?  Because, you know, it seems to me

3    if the shoe fits --

4               MS. HEALEY:  I understand.

5               THE COURT:  I understand that the Virginia

6    General Assembly may have done that.  What controls this

7    Court is what the United States Congress has done and

8    the Sentencing Commission and all of that.  I appreciate

9    that, but it seems to me the flip side would argue that

10   every drug penalty be reduced.

11              MS. HEALEY:  I understand.  But I say that

12   because I have had Mr. Hoppe's colleagues put state

13   sentences into sentencing memos when they're talking

14   about disparities. He did not do that.

15              MR. HOPPE:  Judge, the Fourth Circuit said

16   you can't do that.  We've had that issue come up about

17   six months ago in a (C)(1)(c) case where the government

18   was forcing a client to plead to an unreasonable

19   sentence and they said they were doing it because of the

20   state penalty and the government ended up withdrawing

21   that argument because the Fourth Circuit said you can't

22   make it.

23              MS. HEALEY:  I withdraw it, but --

24              THE COURT:  I disregard it categorically.

25   It's not appropriate.

1           MS. HEALEY:  All right.

2           In other words, if I can just wrap up on

3    this stuff, I know the Court mentioned forfeiture.

4    There are a list of items --

5           THE COURT:  There's no dispute as to that,

6    Mr. Hoppe, as to forfeited items?

7           MR. HOPPE:  Judge, there's no dispute, but

8    some of the computers -- we've talked to the government

9    about this -- didn't have any child pornography and

10   weren't involved at all and the government has agreed to

11   return those.

12          MS. HEALEY:  I've talked to the

13   investigators about making sure if there are computers

14   that have no contraband on it, that they can be returned

15   to the family.  That's fine.

16          I think that takes care of that.

17          In terms of just sort of doing a final

18   pitch, I know I've been doing that through these

19   arguments here, as I stated, bottom line, these cases

20   are extraordinarily serious. In this case, there was not

21   only harm to the local victim, but harm to many children

22   depicted in those images. Unfortunately, I have to see

23   more than anybody else in my office of images that

24   demonstrate the depravity of people in terms of getting

25   pictures that nobody should be sexually aroused by and

80

1   it's unfathomable besides getting the sexual arousal

2   that somebody would want to see those images knowing

3   those children are being hurt.  These are extremely

4   serious cases. I advocate for the victims on them.

5           As this Court is well aware, I think the

6   Court has noted this case sticks out in some ways from

7   other cases.  One, by the tender age of the victim.

8   This is a young victim.  I've had other young victims,

9   but I've had older victims.  But this is an awfully

10  young victim, who was vulnerable, was in the defendant's

11  care, custody and control and that's why the guidelines

12  were, in part, as they were, and also the risk of

13  transmission. I know we've discussed that quite a bit.

14  So this is a risk that he took with a young, vulnerable

15  child.

16          THE COURT:  A risk that he took with the

17  transmission of the HIV, knowing, after researching on

18  the Internet, of the possibility of transmission.

19          MS. HEALEY:  And by his own admission, his

20  first act of molestation on that child occurred before

21  he even looked up the risk, which he said that he found

22  was fairly low in terms of what he did to that child.

23  But it was still a risk.  It was still there.  As the

24  medical records demonstrate, he certainly does have

25  conditions that are of concern to another person and

1  that could potentially be transmitted via sexual contact

2  or exchange of certain body fluids or things like that.

3           So in this case, we know that this is

4  serious.  We know that this is a case -- I would argue

5  there's nothing in this case -- the only mitigating

6  factor I find is I have no evidence he ever transmitted

7  those images. But the abuse itself reaches such a level,

8  given the age of the child and the risk that the United

9  States cannot see a situation where the Court should

10 considering varying in this case.

11          We've talked about his history.  We've

12 talked about his statements to investigators that I

13 think are telling. He said he snapped.  That shows a

14 risk of danger.  If this defendant gets out of jail, he

15 will be a risk to others and even if he's an old person

16 when he gets out of jail, he will be a risk to others.

17 There are plenty of cases out there and I think the Irey

18 Court cited a bunch of cases that had older defendants.

19 These defendants commit crimes when they are very, very

20 old.  So I think a guideline sentence is important,

21 especially to protect the community from further crimes

22 of this defendant and whether or not you buy the general

23 deterrence argument or not, I think that this case needs

24 to send a clear message to others and other defendants

25 who would come before the Court for sentencing that

82

 1  these defendants will be sentenced with an appropriate
 2  sentence that is within a range that Congress has found
 3  is appropriate and the Sentencing Commission has stated
 4  was appropriate.
 5          There's one comment I wanted to respond to
 6  from Mr. Hoppe.  I think he said he expressed remorse to
 7  the investigators. I don't think when I read this it was
 8  necessarily an expression of remorse.  It was sort of a
 9  progressive confession.  Started out sort of saying "I'd
10  like to create a virus to get rid of all pornography."
11  Then it went to, "well, I was looking for pictures of
12  18-year olds."  Then eventually, he started
13  acknowledging, due to the good questioning of the
14  investigators, he acknowledged more.  He said, "maybe I
15  need help."  He kept saying, "am I going to go to jail
16  today? Am I going to go to jail today?"  But I don't
17  recall seeing something in that transcript, "I'm really,
18  really, really, sorry for what I did." I don't remember
19  and I hope Mr. Hoppe will correct me if I'm wrong, if
20  it's in the record.  But I didn't see that.  Defendants
21  are frequently sorry when they get caught, but I just
22  didn't see there was an expression of remorse in this
23  particular case.  Maybe he is remorseful and maybe we'll
24  hear that when he allocutes.
25          The other thing I would point out, too,

**179**

83

1    while he was dealt, obviously, the worst hand he could

2    have been dealt with at birth, he at least had the

3    opportunity of being in a loving home.  I think he

4    should be very grateful he had grandparents.  I'm sorry

5    his grandmother died. I'm sorry for his grandfather. I

6    read his letter. I always feel sorry for the families.

7    It's not their fault and they often try to do whatever

8    they can to provide a loving home.  He should be

9    commended for having dealt with his medical situation

10   and other things in terms of trying to get this

11   defendant as good a life as he could have.

12           He was able to actually go to college.  Mr.

13   Hoppe has told me it took him six years to get a degree,

14   but he did get a degree.  So he was able to do some

15   things that normal people are able to do.

16           All this being said, I think the 3553(a)

17   factors are there for the Court to sentence him to a

18   guideline sentence.  All the offenses have a real

19   impact, as you've seen by the victim impact statements

20   and what we know happened in this case. We know we need

21   to protect the community. We know that this sentence

22   needs to reflect the seriousness of the offense, promote

23   respect for the law and just punishment.  The just

24   deserts concept.  This is a serious case and needs to be

25   justly punished.

1          With the unwarranted disparities things,

2    sometimes I do have to laugh with some of the arguments

3    that I see made. The reason why we had the original

4    mandatory guidelines was to make sure we had no

5    unwarranted sentences. Everybody was sentenced to the

6    same thing basically back then.  But defense attorneys

7    weren't happy with the guidelines and obviously, the

8    Court was not happy with the mandatory guidelines.  But

9    actually, that did at lease assure some type of

10   uniformity in sentencing. But I think as my memo shows,

11   there's a lot of cases where people got sentences that

12   are way past what you would be expected to live,

13   depending on the age of the person.  Even the Irey case,

14   he got 30 years.  He was 50 years old at the time he got

15   sentenced to those 30 years.

16          THE COURT:  Is that argument applicable to

17   the guideline sentence in this case? The guideline

18   sentence in this case is 120 years.

19          MS. HEALEY:  Yeah.

20          THE COURT:  I don't know anybody who lives

21   that long.

22          MS. HEALEY:  It's a life sentence.  It can

23   amount to a life sentence, but I think the cases have

24   fully endorsed that type of sentence.  The sentences are

25   50, 60, 70, 80 years, over 100 years.  The various cases

I cited out of Florida or Eleventh Circuit, the victim, I think, was 13 years old.  I think there were multiple occasions of abuse, the images were on the Internet, but the Court affirmed a 100-year sentence.  That's a life sentence.

          I think the Court is within its right and should sentence this defendant to the guidelines. I think anything else would send the wrong message in this case.  This was egregious conduct, an egregious risk no child should ever have to experience.

          The only final thing I have to say, I appreciate the Court's discussion on the sex offender notification issues.  These are tough cases. It's an evolving area.  I know this District is reconsidering what it's going to do on its standing orders and my office and federal public defender's office and probation have been involved in looking at some of those things. I think most of the provisions that are recommended are fully appropriate because we know sex offenders think differently.  Even bands on adult pornography, there's literature out there and I've seen some presented on this that shows that these guys don't look at adult images the same way. It still could cause them to engage in deviant behavior so there's reasons for doing that as well.

86

```
 1              I would ask that regardless of whatever
 2    sentence is imposed --
 3              THE COURT:  What is sufficient but not
 4    greater than necessary in this case?
 5              MS. HEALEY:  I think in this case a
 6    guideline sentence.  That's what I think in this case.
 7    If you look at the 3553(a) factors as a whole, which
 8    also has the just deserts concept, I think this Court
 9    should impose the guideline sentence. I know it's a life
10    sentence.  I think it's appropriate and I think this
11    message has to get out there, that this type of conduct
12    results in a sentence -- there's no reason for a
13    variance.  I have not seen anything that would justify a
14    variance.  If the Court is going to depart, obviously,
15    there hasn't been any notice.  I know the Court hasn't
16    discussed a departure, but I do think in this case that
17    this has to send a clear message and a guideline
18    sentence is appropriate.
19              Is 80 years the same as 120 years?  Yeah,
20    perhaps in this case, even a lower sentence, but there
21    is no legal reason or justification for a variance in
22    this case. The factors there are egregious.
23              That is what I have to say.
24              THE COURT:  Thank you, Ms. Healey.
25              Mr. Hoppe, what do you have to say in
```

**183**

1  response?

2          (Counsel conferred).

3          Mr. Hoppe, you may take as long as you want.

4          MR. HOPPE:  Judge, the Court's question,

5  what is sufficient but not greater than necessary and

6  there are thee factors that inform that decision.  The

7  first, needs to reflect the seriousness of the offense,

8  promote respect for the law and provide just punishment.

9          The Court has stated that this is a very

10  serious offense, and it is.  The government has argued

11  for what is effectively a life sentence.

12          Your Honor, is 120 years necessary to

13  achieve that? Is 80 years necessary? Who knows? Who

14  knows? But to punish the defendant -- and these are all

15  -- these factors have to apply to the unique case.

16  Every case is different.  This is a unique case in every

17  sense and really with every consideration.  Is 20 years

18  enough punishment for Mr. Cobler as opposed to somebody

19  else? Yes.

20          THE COURT:  History and characteristics of

21  the defendant is a factor the Court must consider.

22          MR. HOPPE:  20 years is enough to punish him

23  for this offense.

24          To afford adequate deterrence.  To him,

25  20 years is enough.

1          The general deterrence, I argued that.  The

2    courts that deal with these child pornography offenses

3    have lamented that they wish it were that easy to just

4    lock people up forever to get rid of this. I think just

5    looking at the evidence objectively, penalties have been

6    going through the roof for the last 10 or 15 years.

7    Unfortunately, so has the child pornography industry.

8    Are these lengthy sentences having this deterrent

9    effect?

10          THE COURT:  The general deterrence effect.

11          MR. HOPPE:  Specific deterrence, 20 years is

12    adequate.

13          Protect the public from further crimes of

14    the defendant; Mr. Cobler.  20 years is adequate.

15          Then the final consideration, provide the

16    defendant with needed or other kind of correctional

17    treatment in the most effective manner.  Judge, this is

18    where, one, I think the designation of the medical

19    facility is so key.

20          THE COURT:  I'm going to do that.

21          MR. HOPPE:  I know --

22          THE COURT:  I'm going to designate.  I'm

23    going to recommend to the Bureau of Prisons that given

24    his precarious health situation that he be designated to

25    FMC Butner.  I'm going to do it.  That will be up to the

1    Bureau of Prisons, but I believe given what I know about

2    all I've read about Mr. Cobler's health situation and

3    what he struggled with since the day he was born that a

4    medical center is the appropriate setting for him.

5              MR. HOPPE:  Judge --

6              THE COURT:  I don't think anybody disagrees

7    with that.

8              MR. HOPPE:  I don't think anyone in this

9    courtroom disagrees with it.  I've had other cases, one

10   not that long ago with Ms. Healey, where everyone in

11   this courtroom agreed with a medical designation.  And

12   there are four different designations of medical care

13   provided at the prisons, one being the lowest and four

14   being the medical center.  Judge Wilson actually found a

15   violation, but deferred sentencing because he wanted to

16   hear from the Bureau of Prisons whether they were going

17   to send him to a medical facility and they said no,

18   we're going to send him to a level two.  He said, okay,

19   I'm going to recommend medical, and he wrote a paragraph

20   about why and he said I'm really putting my faith in the

21   Bureau of Prisons, I think they're going to do the right

22   thing.  They sent him right where they said they were

23   going to.  They ignored what Judge Wilson said.  It took

24   the judge going back to the Bureau of Prisons and

25   saying, "U.S. Attorney's office, you tell the Bureau of

1  Prisons this upsets me and I want this guy to go to a
2  medical facility."  They looked at it again and ended up
3  redesignating him to a three, not a full medical
4  facility, but a three was pretty good.  I wish I had
5  more faith in the Bureau of Prisons to do what's right,
6  given someone's medical history.
7        What that goes to is even if someone is
8  going to a medical facility, they're still categorized
9  low, medium, high security.  They're kept with other
10 inmates of that security level.  High security.  These
11 are violent people that have lengthy criminal histories.
12       This offense, I think would be regarded as
13 probably a crime of violence, but I think it's different
14 than what some other people would be in there for long
15 violent offenses. So it matters. The length of his
16 sentence matters, as far as his designation, what the
17 rest of his life is going to be like.
18       Your Honor, that is another consideration I
19 think really informs this 20 years.
20       MS. HEALEY:  Judge, can I say one thing
21 about the medical? I'm sorry.  I don't mean to beat a
22 dead horse, but I think given what the medical records
23 say in this case, combined with the fact he's a sex
24 offender, we've been dancing around some of this issue,
25 it's not been put on the record, but I would really

```
1   think that the medical records would scream for a
2   medical facility in this case.  We could have brought in
3   a BOP official if this was going to be a big deal in
4   this particular sentencing, but I can't imagine that
5   won't be given serious consideration.
6           The one thing, we're concerned about the
7   quality of life of the defendant in jail? Where was that
8   concern for the victim, given what he did?
9           THE COURT:  Thank you, Ms. Healey.
10          I take it there are no victims here.
11          MS. HEALEY: No, Your Honor.
12          THE COURT: I've read the victim statements.
13          Mr. Cobler, you've heard a lot of people
14  talking about you.  I've read a lot of things about you
15  in the written materials.  Spent some time here today
16  talking about you.
17          What would you like to tell me by way of
18  allocution that would be helpful in me trying to decide
19  an appropriate sentence in this case? What would you
20  like to say, sir?
21          THE DEFENDANT:  I'd like to say to the Court
22  and to the child's parents, my friends and most of all,
23  the child, I'm truly and deeply sorry for my actions.
24          Hold on one second.
25          THE COURT:  Take your time.
```

92

1          If it's easier for you, you can sit down and

2     do that, if that would be easier.

3          THE DEFENDANT:  The next line is really hard

4     to say.

5          THE COURT:  Take your time.

6          THE DEFENDANT:  It has been tearing me up

7     inside and I cry every day about what I've done.  I had

8     (inaudible) best friends and a good life and I never

9     thought what happened to me at a young age had affected

10    me mentally and could cause me to do something like that

11    to a child.  I really cared about the child and I wish I

12    could take it back.  I don't really understand why I did

13    it.  I want counselling and treatment so I know

14    100 percent, it would never happen again because I care

15    about children.

16          I hope that some day I can prove that I'm

17    not a sex offender and to get home with my grandpa.

18          Again, I'm truly and deeply sorry for what

19    I've done and I hope I can be trusted again.

20          That's it.

21          THE COURT:  Thank you, Mr. Cobler.

22          The United States argues in this case for a

23    guideline sentence. The guideline sentence is a sentence

24    of 120 years, 1400 months.  The United States argues

25    that there is -- that this crime is not simply a crime

```
1   of opportunity.  There was prior -- the record reflects

2   prior conduct involving inappropriate contact with

3   children.

4            Defendant made statements to the agents that

5   he looked at these images to avoid engaging in this kind

6   of conduct himself, that he was babysitting this child.

7   The defendant has -- was, through no fault of his own,

8   subjected to the HIV virus since birth and the risk of

9   transmission of this disease to the child was researched

10  by the defendant on the computer after the first

11  episode.  The defendant went back and repeated the

12  conduct.

13           The United States argues that the -- in

14  addition to the contact offenses, that the images that

15  were on the defendant's computer, the child porn graphic

16  images, represent the dangers and are serious in and of

17  themselves and every time they're viewed, they propagate

18  this industry that harms children.  I get that.

19           The Court's reviewed the evidence, including

20  the images that have been provided, both of the images

21  that were taken by the defendant of his contact with

22  this young child and the images of others downloaded,

23  found on his computer.

24           The United States argues for a guideline

25  sentence based on the seriousness of the offense;
```

190

1   affording just punishment; general deterrence to others

2   who might be out there engaged in such conduct; and to

3   protect the public.

4         The defendant argues that a guideline

5   sentence is a sentence of life and is not appropriate in

6   the circumstances of this case, given what Mr. Cobler

7   has struggled with, his health situation for his whole

8   life, what he has faced, what he has dealt with, what he

9   is facing.

10         Defendant argues that because of the way

11   Bureau of Prisons classifies defendants and because of

12   the specific history and characteristics of this young

13   man, the nature of his life, his naive character is

14   reflected in the letters I've written that he's written

15   -- read that he's written, the nature of his life, the

16   way he has lived his life.  Spent much of it on the

17   computer where his friends and relationships have been,

18   that he is particularly susceptible to prison abuse and

19   therefore, the Court should consider a sentence that

20   would put him in a facility that is better suited to his

21   particular circumstance, his particular life.

22         Defendant argues that 20 years for this

23   defendant reflects the seriousness of the offense,

24   provides adequate deterrence, will protect the public,

25   while giving him the appropriate classification.

1          I have thought about this case a lot.  It

2   strikes me about this case, and my views on it are this.

3   There are the child pornography offenses that in and of

4   themselves warrant a prison sentence because these child

5   pornography crimes constitute continuing harm to

6   children.  Until we as a society -- we as a society have

7   an obligation as reflected in the laws that Congress has

8   passed to do everything we can to eliminate this curse

9   upon young children that's people raping and molesting

10  in the most violent manner, as reflected in some of

11  those images I just saw; the youngest and most

12  vulnerable in our society.

13          In and of itself, I agree with Ms. Healey.

14  Child pornography offenses are serious and justify a

15  serious penalty.

16          This case just doesn't pose that.  This case

17  involves molestation of a young, vulnerable

18  four-year-old boy who was being babysat by this

19  defendant and as bad and as sympathetic as the Court may

20  be to what the defendant was dealt with when he was born

21  and the health struggles he's had in his life, the loss

22  of his mother and unfortunate loss of his grandmother,

23  I'm having a really, really hard time seeing why I

24  should vary from the guidelines in this case because

25  this case has not only one-time molestation of a

1    four-year-old, and it's videoed and the defendant goes

2    home and looks at the risk of transmission of HIV to

3    this child and goes back and does it again and again.

4    It's the combination of the contact offense, the

5    videoing of it, for whatever reason, and the risk of the

6    transmission of what defendant knew he had to this child

7    that takes this case into a category that I've not seen

8    before.  I simply can't imagine a situation where I can

9    allow the defendant back into the public.

10             3553(a)(2)(C) requires me to impose a

11   sentence that is sufficient, but not greater than

12   necessary to protect the public from further crimes of

13   the defendant. I think the evidence outlined by the

14   government, the prior conduct, the looking at the

15   images, the repeated nature of this, combined with the

16   risk of transmission requires me to impose a life

17   sentence, a sentence of 1440 months, a guideline

18   sentence, to protect the public from further crimes of

19   the defendant.

20             I believe it also is sufficient to afford

21   deterrence to others.  This is the most serious and

22   egregious conduct.  It must be dealt with seriously.

23             So the Court is going to impose a sentence

24   in this case, a guideline sentence in this case, of

25   1440 months.  I simply think in this case there is no

reason to vary from the guidelines in this case.  I just do not see it.  There's nothing that has been given me. Not only is there no reason to vary from the guidelines, but this particular case presents egregious circumstances of harm to a child and risk to a child and to the other children present in those videos.

Now, pursuant to the Sentencing Reform Act of 1984 and having considered the factors noted in 18 United States Code Section 3553(a) and having consulted the Advisory Sentencing Guidelines, it is the judgment of the Court that the defendant, James Robert Cobler, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a total term of 1440 months.

The term consists of 360 months on each of Counts 1 through 3; 240 months on Count 4; and 120 months on Count 5, all to be served consecutively.

The Court recommends to the Bureau of Prisons that the defendant receive appropriate mental health treatment while in prison.

The Court recommends to the Bureau of Prisons that the defendant receive appropriate sex offender treatment while in prison.

Upon release from imprisonment, the defendant shall be on supervised release for a term of life.

1              That's a term of life on each of Counts 1

2     through 5, all such terms to run concurrently.

3              I'm going to impose the standard terms and

4     conditions of supervision, although -- you must report

5     to the probation within 72 hours of release.

6              You shall not commit another state, federal

7     or local crime or possess a controlled substance. You

8     cannot use drugs.  You cannot possess a firearm.  You

9     shall cooperate in the collection of DNA and all the

10    other standard conditions of supervision, as well as all

11    of the conditions of supervision, as noted in part D of

12    the pre-sentence report, which defendant is aware of.

13             I've reviewed those conditions and the

14    factors under 3553(a), his history and characteristics

15    and the circumstances of the offense and each of those

16    conditions will serve to protect the community and

17    assist in the rehabilitative efforts of the defendant.

18             Special assessment of $500, which is due and

19    payable immediately.

20             Restitution is deferred for a period not to

21    exceed 90 days from the date of this judgment.

22             That seems to me that's a moot issue, but

23    we'll deal with that later.

24             I find the defendant has no ability to pay a

25    fine and I waive the fine.

```
1                  I'm going to require the criminal monetary
2       penalties be paid in equal monetary sums of $25 or
3       50 percent of the defendant's income, whichever is
4       greater, starting 60 days after the date of this
5       judgment.
6                  The defendant shall forfeit to the United
7       States the defendant's interest in the property listed
8       in the preliminary order of forfeiture filed in this
9       case.
10                 I hereby advise the defendant he has a right
11      to appeal this sentence. A notice of appeal must be
12      filed within 14 days of the entry of judgment or within
13      14 days of a notice of appeal by the government.
14                 If requested, the clerk will prepare and
15      file a notice of appeal on behalf of the defendant.
16                 I advise the defendant of the right of a
17      person who is unable to pay the cost of an appeal to
18      apply for leave to appeal without pre-payment of such
19      cost.
20                 Is there anything further the Court needs to
21      do from the perspective of the United States?
22                 MS. HEALEY:  Your Honor, I know it's --
23                 THE COURT:  I'm going to recommend that the
24      defendant be housed at the federal medical center in
25      Butner, North Carolina, and I will do what I can, Mr.
```

1  Hoppe, in my judgment order to reflect that.

2           MS. HEALEY:  I know you adopted all the

3  special conditions.

4           THE COURT:  I did.

5           MS. HEALEY:  Can you state on the record

6  orally that he also -- one of those conditions is

7  requiring him to register as a sex offender? That's the

8  one we do like to have on the record, if we can have

9  that.

10          Thank you.

11          THE COURT:  The sex offender conditions that

12  are set forth in paragraph 82 of the pre-sentence report

13  that the defendant indicated he read and he was aware of

14  and that I have imposed, include the defendant shall

15  register with the state sex offender registration agency

16  where he will reside and work and carry on a vocation or

17  attend school.

18          Following initial registration, he shall

19  re-register as required by such state agency.  Should

20  defendant move, he shall notify such state agency of any

21  change in address.

22          Again, given the fact I've imposed

23  120 years, 1440-month term, although I'm required to

24  read these conditions out, it seems rather moot to me.

25          Mr. Hoppe, anything further from you?

```
1              MR. HOPPE:  No, Your Honor.

2              THE COURT:  Mr. Sheffield?

3              MR. SHEFFIELD:  No, Your Honor.

4              THE COURT:  Madam Clerk?

5              The clerk advises me no forfeiture order has

6   been filed.  The government needs to take care of that.

7              MS. HEALEY:  We'll do that.

8              THE COURT:  Mr. Hoppe, anything further from

9   you?

10             MR. HOPPE:  No, Judge.

11             THE COURT:  Ask the Marshal to declare a

12  recess.

13

14

15  "I certify that the foregoing is a correct transcript

16  from the record of proceedings in the above-entitled

17  matter.

18

19

20  /s/ Sonia Ferris               April 12, 2013"

21

22

23

24

25
```

AO 245B    (Rev. 9/11 - VAW Additions 6/05) Judgment in a Criminal Case
Sheet 1

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

# UNITED STATES DISTRICT COURT
## Western District of Virginia

FEB 2 5 2013

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

UNITED STATES OF AMERICA

V.

JAMES ROBERT COBLER

**JUDGMENT IN A CRIMINAL CASE**

Case Number: DVAW512CR000026-001

Case Number:

USM Number: 16722-084

Joel Christopher Hoppe
_____
Defendant's Attorney

## THE DEFENDANT:

☒ pleaded guilty to count(s)    1, 2, 3, 4, 5

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty,

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §§ 2251(a) & 2251(e) | Production of Child Pornography | May 2012 | 1 |
| 18 USC §§ 2251(a) & 2251(e) | Production of Child Pornography | May 2012 | 2 |
| 18 USC §§ 2251(a) & 2251(e) | Production of Child Pornography | May 2012 | 3 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____    ☐ is    ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

February 14, 2013
_____
Date of Imposition of Judgment

/s/ Michael F. Urbanski
_____
Signature of Judge

Michael F. Urbanski, United States District Judge
_____
Name and Title of Judge

02-25-2013
_____
Date

**199**

AO 245B    (Rev. 9/11 - VAW Additions 6/05) Judgment in a Criminal Case
           Sheet 1A

DEFENDANT:      JAMES ROBERT COBLER
CASE NUMBER:    DVAW512CR000026-001

Judgment-Page __2__ of __7__

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §§ 2252(a)(1) & 2252(b)(1) | Transportation of Child Pornography | April 20, 2012 | 4 |
| 18 USC §§ 2252(a)(4)(B) & 2252(b)(2) | Possession of Child Pornography | May 3, 2012 | 5 |

**200**

AO 245B    (Rev. 9/11 - VAW Additions 6/05) Judgment in Criminal Case
      Sheet 2 - Imprisonment

| | Judgment – Page | 3 | of | 7 |

**DEFENDANT:** JAMES ROBERT COBLER
**CASE NUMBER:** DVAW512CR000026-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

Total term of 1,440 months. This term consists of 360 months on each of Counts 1-3, 240 months on Count 4, and 120 months on Count 5, all to be served consecutively.

☒ The court makes the following recommendations to the Bureau of Prisons:

Through no fault of his own, defendant has struggled with a life threatening disease his entire life. Defendant contracted HIV from his mother at birth, and he has been treated since early childhood at the National Institute of Health in Bethesda, Maryland. The Presentence Investigation Report indicates that defendant takes twelve medications a day, and that the side effects from these medications contribute to his ongoing serious health problems. (Continued on Page 3A - Recommendation)

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall *surrender to the United States Marshal for this district:*

    ☐ at _____ ☐ a.m. ☐ p.m.   on _____

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before_____ on _____

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

 

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**201**

DEFENDANT:  JAMES ROBERT COBLER
CASE NUMBER:  DVAW512CR0000026-001
DISTRICT: Western District of Virginia
Attachment: (Page 3A) – Recommendation


Due to defendant's dire condition and the complications associated with his course of treatment, the court strongly recommends that defendant be housed in a hospital setting such as the Federal Medical Center at Butner, N.C.

AO 245B    (Rev. 9/11 - VAW Additions 6/05) Judgment in a Criminal Case
           Sheet 3 — Supervised Release

|  |  | Judgment—Page | 4 | of | 7 |
|---|---|---|---|---|---|

DEFENDANT:    JAMES ROBERT COBLER
CASE NUMBER: DVAW512CR000026-001

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :
Life on each of Counts 1-5, all such terms to run concurrently.

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☒   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☒   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☒   The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☒   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐   The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 9/11 - VAW Additions 6/05) Judgment in a Criminal Case
             Sheet 3C - Supervised Release

DEFENDANT:    JAMES ROBERT COBLER
CASE NUMBER: DVAW512CR000026-001

Judgment-Page ___5___ of ___7___

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall pay any special assessment and restitution that are imposed by this judgment.

The defendant shall reside in a residence free of firearms, ammunition, destructive devices, and dangerous weapons.

The defendant shall submit to warrantless search and seizure of person and property as directed by the probation officer, to determine whether the defendant is in possession of firearms, illegal controlled substances and pornography.

The defendant shall have no direct or indirect contact with the victim(s).

The defendant shall not associate with children under the age of eighteen (18) except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense, and who has been approved by the probation officer. Should the defendant have incidental contact with a child, the defendant is required to immediately remove himself from the situation and notify his/her probation officer within twenty-four (24) hours of this contact.

The defendant shall participate in a mental health and/or sex offender treatment program as directed by the probation officer. The defendant shall comply with all recommended treatment which may include psychological and physiological testing, i.e., a polygraph, a plethysmograph, and/or an ABEL assessment. The defendant shall maintain use of all prescribed medication.

The defendant shall have all residences and employment pre-approved by the probation officer five (5) days prior to any such change.

The defendant shall not reside in or visit any residence where minor children also reside without the approval of the probation officer.

The defendant shall not view, purchase, or possess any images depicting minors engaged in sexual activity, or actors representing themselves to be under the age of eighteen (18).

The defendant shall not be employed in any position or participate as a volunteer in any activity that involves contact with children under the age of eighteen (18), except as approved by the probation officer.

The defendant shall submit to a search of his person, property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects at any time, with or without a warrant, by any law enforcement or probation officer (in the lawful discharge of the officer's supervision functions) with reasonable suspicion concerning unlawful conduct or a violation of a condition of probation or supervised release. Failure to submit to such search may be grounds for revocation. The defendant shall warn any other residents or occupants that their premises or vehicles may be subject to search pursuant to this condition.

The defendant shall submit to unannounced examination of the defendant's computer equipment by the probation officer, which may include retrieval and copying of all data from the computer to ensure compliance with this condition. In addition, the defendant shall consent to the removal of such equipment for the purpose of conducting a more thorough investigation and shall allow, at the discretion of the probation officer, installation on the defendant's computer any hardware or software system to monitor the defendant's computer use.

As required, the defendant shall register with the state sex offender registration agency where the defendant will reside, work, carry on a vocation, or attend school. Following initial registration, the defendant shall re-register as required by such state agency, and should the defendant move, he shall notify such state agency of any change in address.

The defendant is not to loiter within 100 feet of any school property, playgrounds, arcades, childcare facilities, swimming pools, or other places primarily used by children under the age of eighteen (18).

The defendant shall not form a romantic interest or sexual relationship with a person with physical custody of any child under the age of eighteen (18).

The defendant shall consent to third party disclosure to any employer or potential employer, concerning any computer-related restrictions that are imposed upon the defendant.

AO 245B    (Rev. 9/11 - VAW Additions 6/05) Judgment in a Criminal Case
         Sheet 5 - Criminal Monetary Penalties

| | |
|---|---|
| DEFENDANT:   JAMES ROBERT COBLER | Judgment - Page ___6___ of ___7___ |
| CASE NUMBER: DVAW512CR000026-001 | |

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 500.00 | $ | $ |

[X] The determination of restitution is deferred until __90 days__ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

[ ] The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $0.00 | $0.00 | |

[ ] Restitution amount ordered pursuant to plea agreement $ _____

[ ] The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

[ ] The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    [ ] the interest requirement is waived for the    [ ] fine    [ ] restitution.

    [ ] the interest requirement for the    [ ] fine    [ ] restitution is modified as follows:

\*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 13, 1996.

**205**

AO 245B    (Rev. 9/11 - VAW Additions 6/05) Judgment in a Criminal Case
Sheet 6 - Schedule of Payments

DEFENDANT:  JAMES ROBERT COBLER
CASE NUMBER:  DVAW512CR000026-001

Judgment - Page  7  of  7

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, the total criminal monetary penalties are due immediately and payable as follows:

**A**  ☒  Lump sum payment of $ 500.00 _____  immediately, balance payable

  ☐  not later than _____ , or
  ☐  in accordance  ☐ C,  ☐ D,  ☐ E,  ☐ F or,  ☐ G below); or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D,  ☐ F, or  ☐ G below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  During the term of imprisonment, payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ , or _____ % of the defendant's income, whichever is greater, to commence _____ (e.g., 30 or 60 days) after the date of this judgment; AND payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ during the term of supervised release, to commence _____ (e.g., 30 or 60 days) after release from imprisonment.

**G**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Any installment schedule shall not preclude enforcement of the restitution or fine order by the United States under 18 U.S.C §§ 3613 and 3664(m).

Any installment schedule is subject to adjustment by the court at any time during the period of imprisonment or supervision, and the defendant shall notify the probation officer and the U.S. Attorney of any change in the defendant's economic circumstances that may affect the defendant's ability to pay.

All criminal monetary penalties shall be made payable to the Clerk, U.S. District Court, P.O. Box 1234, Roanoke, Virginia 24006, for disbursement.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

  Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☒  The defendant shall forfeit the defendant's interest in the following property to the United States:
  See attached forfeiture order.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**206**

AO 245C    (Rev. 9/11 - VAW Additions 6/05) Amended Judgment in a Criminal Case                              (NOTE: Identify Changes with Asterisks (*))
Sheet 1

# UNITED STATES DISTRICT COURT
## Western District of Virginia

| | |
|---|---|
| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| V. | Case Number:  DVAW512CR000026-0 |
| JAMES ROBERT COBLER | Case Number: |
| | USM Number:  16722-084 |

Date of Original Judgment: _____2/25/13_____        Joel Christopher Hoppe
(Or Date of Last Amended Judgment)                  Defendant's Attorney

**Reason for Amendment:**

☐ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))
☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))
☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))
☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c))
☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))
☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))
☐ Direct Motion to District Court Pursuant  ☐ 28 U.S.C. § 2255 or  ☐ 18 U.S.C. § 3559(c)(7)
☒ Modification of Restitution Order (18 U.S.C. § 3664)

**THE DEFENDANT:**

☒ pleaded guilty to count(s)  1, 2, 3, 4, 5
☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.
☐ was found guilty on count(s) _____ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §§ 2251(a) & 2251(e) | Production of Child Pornography | May 2012 | 1 |
| 18 USC §§ 2251(a) & 2251(e) | Production of Child Pornography | May 2012 | 2 |
| 18 USC §§ 2251(a) & 2251(e) | Production of Child Pornography | May 2012 | 3 |

The defendant is sentenced as provided in pages 2 through _____7_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____
☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

February 14, 2013
Date of Imposition of Judgment

/s/ Michael F. Urbanski
Signature of Judge

Michael F. Urbanski, United States District Judge
Name and Title of Judge

06-06-13
Date

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

JUN 07 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

AO 245C    (Rev. 9/11 - VAW Additions 6/05) Amended Judgment in a Criminal Case
Sheet 1A

(NOTE: Identify Changes with Asterisks (*))

DEFENDANT:    JAMES ROBERT COBLER
CASE NUMBER:  DVAW512CR000026-001

Judgment-Page ___2___ of ___7___

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §§ 2252(a)(1) & 2252(b)(1) | Transportation of Child Pornography | April 20, 2012 | 4 |
| 18 USC §§ 2252(a)(4)(B) & 2252(b)(2) | Possession of Child Pornography | May 3, 2012 | 5 |

AO 245C    (Rev. 9/11 - VAW Additions 6/05) Amended Judgment in Criminal Case    (NOTE: Identify Changes with Asterisks (*))
Sheet 2 - Imprisonment

| | Judgment - Page 3 of 7 |

DEFENDANT:    JAMES ROBERT COBLER
CASE NUMBER:  DVAW512CR000026-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

Total term of 1,440 months. This term consists of 360 months on each of Counts 1-3, 240 months on Count 4, and 120 months on Count 5, all to be served consecutively.

☒ The court makes the following recommendations to the Bureau of Prisons:

Through no fault of his own, defendant has struggled with a life threatening disease his entire life. Defendant contracted HIV from his mother at birth, and he has been treated since early childhood at the National Institute of Health in Bethesda, Maryland. The Presentence Investigation Report indicates that defendant takes twelve medications a day, and that the side effects from these medications contribute to his ongoing serious health problems. (Continued on Page 3A - Recommendation)

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m.  ☐ p.m.  on _____

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before_____ on _____

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**209**

DEFENDANT: JAMES ROBERT COBLER
CASE NUMBER:  DVAW512CR0000026-001
DISTRICT: Western District of Virginia
Attachment: (Page 3A) – Recommendation


Due to defendant's dire condition and the complications associated with his course of treatment, the court
strongly recommends that defendant be housed in a hospital setting such as the Federal Medical Center
at Butner, N.C.

AO 245C    (Rev. 9/11 - VAW Additions 6/05) Amended Judgment in a Criminal Case
Sheet 3 — Supervised Release                                    (NOTE: Identify Changes with Asterisks (*))

|  |  | Judgment—Page | 4 | of | 7 |

DEFENDANT:    JAMES ROBERT COBLER
CASE NUMBER: DVAW512CR000026-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :
Life on each of Counts 1-5, all such terms to run concurrently.

      The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☒    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☒    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☒    The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☒    The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐    The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

      If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

      The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an  informer  or  a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245C    (Rev. 9/11 - VAW Additions 6/05) Amended Judgment in a Criminal Case
Sheet 3C - Supervised Release

(NOTE: Identify Changes with Asterisks (*))

DEFENDANT:    JAMES ROBERT COBLER
CASE NUMBER: DVAW512CR000026-001

Judgment-Page    5    of    7

# SPECIAL CONDITIONS OF SUPERVISION

The defendant shall pay any special assessment and restitution that are imposed by this judgment.

The defendant shall reside in a residence free of firearms, ammunition, destructive devices, and dangerous weapons.

The defendant shall submit to warrantless search and seizure of person and property as directed by the probation officer, to determine whether the defendant is in possession of firearms, illegal controlled substances and pornography.

The defendant shall have no direct or indirect contact with the victim(s).

The defendant shall not associate with children under the age of eighteen (18) except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense, and who has been approved by the probation officer. Should the defendant have incidental contact with a child, the defendant is required to immediately remove himself from the situation and notify his/her probation officer within twenty-four (24) hours of this contact.

The defendant shall participate in a mental health and/or sex offender treatment program as directed by the probation officer. The defendant shall comply with all recommended treatment which may include psychological and physiological testing, i.e., a polygraph, a plethysmograph, and/or an ABEL assessment. The defendant shall maintain use of all prescribed medication.

The defendant shall have all residences and employment pre-approved by the probation officer five (5) days prior to any such change.

The defendant shall not reside in or visit any residence where minor children also reside without the approval of the probation officer.

The defendant shall not view, purchase, or possess any images depicting minors engaged in sexual activity, or actors representing themselves to be under the age of eighteen (18).

The defendant shall not be employed in any position or participate as a volunteer in any activity that involves contact with children under the age of eighteen (18), except as approved by the probation officer.

The defendant shall submit to a search of his person, property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects at any time, with or without a warrant, by any law enforcement or probation officer (in the lawful discharge of the officer's supervision functions) with reasonable suspicion concerning unlawful conduct or a violation of a condition of probation or supervised release. Failure to submit to such search may be grounds for revocation. The defendant shall warn any other residents or occupants that their premises or vehicles may be subject to search pursuant to this condition.

The defendant shall submit to unannounced examination of the defendant's computer equipment by the probation officer, which may include retrieval and copying of all data from the computer to ensure compliance with this condition. In addition, the defendant shall consent to the removal of such equipment for the purpose of conducting a more thorough investigation and shall allow, at the discretion of the probation officer, installation on the defendant's computer any hardware or software system to monitor the defendant's computer use.

As required, the defendant shall register with the state sex offender registration agency where the defendant will reside, work, carry on a vocation, or attend school. Following initial registration, the defendant shall re-register as required by such state agency, and should the defendant move, he shall notify such state agency of any change in address.

The defendant is not to loiter within 100 feet of any school property, playgrounds, arcades, childcare facilities, swimming pools, or other places primarily used by children under the age of eighteen (18).

The defendant shall not form a romantic interest or sexual relationship with a person with physical custody of any child under the age of eighteen (18).

The defendant shall consent to third party disclosure to any employer or potential employer, concerning any computer-related restrictions that are imposed upon the defendant.

AO 245C    (Rev. 9/11 - VAW Additions 6/05) Amended Judgment in a Criminal Case
Sheet 5 - Criminal Monetary Penalties                                    (NOTE: Identify Changes with Asterisks (*))

| | |
|---|---|
| DEFENDANT: JAMES ROBERT COBLER | Judgment – Page  6  of  7 |
| CASE NUMBER: DVAW512CR000026-001 | |

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 500.00 | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $0.00 | $0.00 |
|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

\*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 13, 1996.

AO 245C   (Rev. 9/11 - VAW Additions 6/05) Amended Judgment in a Criminal Case
Sheet 6 - Schedule of Payments

DEFENDANT:   JAMES ROBERT COBLER                                    Judgment - Page  7  of  7
CASE NUMBER: DVAW512CR000026-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, the total criminal monetary penalties are due immediately and payable as follows:

A  ☒  Lump sum payment of $ 500.00 _____   immediately, balance payable

    ☐  not later than _____ , or

    ☐  in accordance   ☐ C,  ☐ D,  ☐ E,  ☐ F or,  ☐ G below); or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D,  ☐ F, or  ☐ G  below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  During the term of imprisonment, payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ , or _____ % of the defendant's income, whichever is  greater , to commence _____ (e.g., 30 or 60 days) after the date of this judgment; AND payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ during the term of supervised release, to commence _____ (e.g., 30 or 60 days) after release from imprisonment.

G  ☐  Special instructions regarding the payment of criminal monetary penalties:

Any installment schedule shall not preclude enforcement of the restitution or fine order by the United States under 18 U.S.C §§ 3613 and 3664(m).

Any installment schedule is subject to adjustment by the court at any time during the period of imprisonment or supervision, and the defendant shall notify the probation officer and the U.S. Attorney of any change in the defendant's economic circumstances that may affect the defendant's ability to pay.

All criminal monetary penalties shall be made payable to the Clerk, U.S. District Court, P.O. Box 1234, Roanoke, Virginia 24006, for disbursement.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

Any obligation to pay restitution is joint and several with other defendants, if any, against whom an order of restitution has been or will be entered.

☐ Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☒ The defendant shall forfeit the defendant's interest in the following property to the United States:

    See attached Order of Forfeiture.

Payments shall be applied in the following order:  (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**214**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Harrisonburg Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:12cr26** |
| | ) | |
| **JAMES ROBERT COBLER,** | ) | |
|     **Defendant.** | ) | |

**NOTICE OF APPEAL**

James Robert Cobler, Defendant in the above-styled case, gives notice that he hereby appeals to the Court of Appeals for the Fourth Circuit from the Judgment entered in this action on February 25, 2013, by the District Court.

Respectfully submitted,

JAMES ROBERT COBLER

s/ Joel C. Hoppe
Virginia State Bar No. 48395
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market Street, Suite 106
Charlottesville, VA 22902
Telephone: (434) 220-3380
Fax: (434) 220-3390

Certificate of Service

I hereby certify that a true copy of the foregoing document was electronically filed and will be forwarded to Nancy Healey, Assistant United States Attorney, this 4th day of March 2013.

s/ Joel C. Hoppe
Assistant Federal Public Defender